# UNITED STATES BANKRUPTCY COURT
## EASTERN DISTRICT OF MICHIGAN
### SOUTHERN DIVISION

In re:

John Frederick Shastal, Jr.
Kimberly Ann Shastal,

    Debtors.

_____/

SAMUEL D. SWEET, Chapter 7
Trustee for the Estate of Debtors,
John Frederick Shastal Jr. and
Kimberly Ann Shastal, and
JOHN FREDERICK SHASTAL,
an individual, and KIMBERLY
ANN SHASTAL, an individual,

    Plaintiffs,

v.

MAJORS LAW, PLLC,
a Professional Limited Liability
Company, SHEENA L. MAJORS,
an individual, DESIRAE BEDFORD,
an individual and RECOVERY LAW GROUP,
a Professional Corporation,

    Defendants.

_____/

Case No. 20-31468-jda
Chapter 7
Hon. Joel D. Applebaum

Adv. No. 24-3033

## <u>OPINION DENYING MOTION TO DISMISS ADVERSARY PROCEEDING FILED BY RECOVERY LAW GROUP AND DESIRAE BEDFORD</u>

This matter is before the Court on Recovery Law Group's and Desirae Bedford's (the "Movants") Motion to Dismiss Adversary Proceeding ("Motion") filed by Debtors and the chapter 7 Trustee (the "Plaintiffs"). For the following reasons, the Motion is DENIED.

## I.

## FACTUAL BACKGROUND

A. <u>Parties</u>

Recovery Law Group is a domestic corporation formed in Nevada with offices and/or attorneys located throughout the country. (Dkt. Nos. 229, 230, ¶¶ 8, 10, 21).[1] The managing partner of Recovery Law Group is Nicolas Wajda, who is also the owner of Recovery Law Group and the managing partner of the Los Angeles Office. (Dkt. Nos. 229, 230, ¶ 30).

Recovery Law Group maintains a website which states the following:

> With our in-depth legal understanding and years of experience, we have built our full arsenal of tools to assist you with your unique case.

> Your case is safe in the hands of our dedicated and experienced attorneys. Throughout our years of practice, we have understood the legal system and laws to the core, and we have brought together the strategies and legal systems in a way that helps us to protect consumers and resolve the problems of our clients, uniquely.

> We can help you find the right option for preventing foreclosure, fighting for your home, making the payments due from the mortgage in a Chapter 13 Bankruptcy, or walking away for a fresh start.

---

[1] All docket numbers refer to entries in case no. 20-31468, unless otherwise indicated.

Build your better and safer future with us. We connect you with reliable lawyers to help with foreclosure or bankruptcy depending on what situation is right for you.

We believe that each foreclosure case is unique from others. To find the most suitable solution for you, we need to learn about your case and situation to read between the lines and create a plan. With our solid guidance and appropriate legal presentation, you can save your beloved home or build a new one, as suitable for you and your family.

(Dkt. Nos. 229, 230, ¶ 26). The website further indicates that Recovery Law Group has two locations in Michigan; one is a PO Box in Ann Arbor and the other is a private home in Sterling Heights. (Dkt. Nos. 229, 230, ¶ 22).[2] Recovery Law Group is a "debt relief agency" as that term is defined in 11 U.S.C. § 101(12A). (Dkt. Nos. 229, 230, ¶ 12).

Sheena Majors is the principal of her own law firm, Majors Law, PLLC. On July 24, 2020, she was hired as a non-voting, non-equity partner/member of Recovery Law Group (Dkt. No. 205, Ex. 1, "Employment Agreement"). On August 24, 2020, Recovery Law Group, by Majors, filed John and Kimberly Shastals' chapter 7 bankruptcy.

---

[2] Recovery Law Group states that it is located in Royal Oak, Michigan (Adv. Proc. No. 24-3033, Dkt. No. 9, ¶ 13). According to an internet search, Recovery Law Group has a location at 418 North Main, 1st & 2nd Floors, Royal Oak, MI 48067. That address appears to contain shared workspace, co-working spaces, and virtual office space.

Desirae Bradford is also a partner/member of Recovery Law Group. She filed a Notice of Appearance for Recovery Law Group in this case which became effective on January 5, 2022 (Dkt. 89).

John Shastal, age 73, and Kimberly Shastal, age 60 (together, the "Shastals" or "Debtors"), owned and resided in a three-bedroom, two-bath residence located at 4228 Mill St, North Branch, MI 48461 ("Residence"). The Shastals' 26-year-old son, his fiancé, and their 3-year-old granddaughter lived with them at their Residence. The Shastals sought legal assistance from Recovery Law Group on how best to respond to the collection efforts of New Home Plate Lounge, Inc. ("New Home Plate") on a state court judgment it obtained against the Shastals in the amount of $99,950. Upon retaining Recovery Law Group, the Shastals became "assisted persons" as that term is defined by 11 U.S.C. § 101(3). (Dkt. Nos. 229, 230, ¶ 161).

Samuel Sweet ("Sweet") is the chapter 7 trustee for this case.

B. The Retainer Agreement

The Shastals initially sought assistance from Recovery Law Group by communicating by telephone and email with Karen Kisch ("Kisch") (Dkt. Nos. 229, 230, ¶ 62).[3] Kisch advised them that Recovery Law Group could aid the Shastals with debt relief.

---

[3] Karen Kisch is also known as Karen Kealy.

The Shastals hired Recovery Law Group by executing a Retainer Agreement on August 19, 2020, via Ms. Shastal's electronic signature (Dkt. 205, Ex. 1, "Retainer Agreement"). The Retainer Agreement sets forth the fees as a "fully-earned, non-refundable flat fee of $1,835, which includes your filing fee of $335." The flat fee includes:

> the preparation of the bankruptcy petition and schedules and the handling of creditor communication . . . [and] all usual, ordinary and necessary services in a bankruptcy case such as yours, such as filing of the Petition, contact with the Chapter 7 Trustee, monitoring of the Court docket, and appearing with you at one 341(a) Meeting of Creditors hearing.

*Id.* at p.1, ¶ 3.

The Retainer Agreement excludes the following from the nonrefundable flat fee paid:

> litigation brought by a creditor or trustee to determine the dischargeable nature of a debt, objections to discharge, objections to claimed exemptions, representation in adversary proceedings, or other motions or hearings of any type, including, but not limited to, those to avoid liens on exempt property, actions undertaken by the Trustee with regard to your claimed exemptions or nonexempt assets, or examinations pursuant to Bankruptcy Rule 2004, unless said Motion or Hearing is being brought or scheduled directly as a result of an error or omission of this firm. Our representation of you in any said extraordinary matter will [be] done [] pursuant to a separately agreed upon fee arrangement between you and this firm.

*Id.* at ¶ 4.

The Retainer Agreement provides that any assistance with reaffirmation agreements will result in an extra charge, stating:

If we assist in the preparation of a reaffirmation agreement, which does not change the terms of your underlying security agreement with the creditor and there is no court appearance required for the approval of that agreement, our fee will be $150. If the Court requires a hearing on the issue, the fee is $250. If we assist in the preparation of a reaffirmation agreement on a personal property (not real estate) and we negotiate a better deal for you, our fee is $400.

*Id*. at p. 2 , ¶ 5.

The Retainer Agreement also requires that all of Recovery Law Group's fees must be paid in full before the case will be filed  (*Id*. at p. 1, ¶ 3) and provides the option for debtors to pay the attorneys' fees by debit or credit card. *Id*. at p. 12.

C.  <u>Events Leading to the Bankruptcy Filing</u>

Shortly after the Shastals signed the Retainer Agreement, Kisch gathered intake information from the Shastals and prepared drafts of the Shastals' chapter 7 petition, schedules, and motion to extend the deadline to file schedules (Dkt. Nos. 229, 230, ¶ 64).  These drafts contained the following relevant entries:

-the Debtors live at 9228 Mill Street, North Branch, MI 48461 (Petition, Question 5);

-the value of Debtors' assets total "$0-$50,000" (Petition, Question 19);

-the value of Debtors' Mill Street Residence is $146,000 (Schedule A/B, question 1);

-the Debtors' claim an exemption of $60,725 for their Residence (Schedule C, question 2);

-the Debtors' mortgage of $23,241 is held by ELGA Credit Union (Schedule D, question 2.1); and

-the Debtors had $122,759 in equity in the Mill Street Residence as of the petition date (Schedule D).

Kisch also obtained a credit report on behalf of the Debtors on August 21, 2020 (Dkt. Nos. 229, 230, ¶ 67). The credit report listed the Debtors' Mill Street address and their mortgage with Elga Credit Union (Dkt. Nos. 229, 230, ¶ 69). According to the credit report, the mortgage had a current balance of $23,241, a high balance of $30,000, and a monthly payment of $605 with no monies past due (Dkt. Nos. 229, 230, ¶ 70).

Recovery Law Group then assigned the Shastals' case to Recovery Law Group's Michigan-based counsel, Sheena Majors, who had been hired approximately one month prior. Recovery Law Group also provided Majors with the documents drafted by Kisch so that Majors could file the Shastals' bankruptcy petition (Dkt. Nos. 229, 230, ¶ 65, 82).

### D. Recovery Law Group's Relationship with Sheena Majors

As previously noted, on July 24, 2020, Sheena Majors entered into an employment agreement with Recovery Law Group (Dkt. No. 205, Ex. 1, "Employment Agreement"). The Employment Agreement states that "[t]he Employee [Majors] will serve as a *non-equity, non-voting partner/member* of [Recovery Law Group]" (Employment Agreement, ¶ 2, emphasis added) in "a part-

7

time, contract position" (Employment Agreement, ¶ 3). Majors agreed "to be subject to the general supervision of and report to [a]ttorney, Nicholas Wajda, Owner and Managing Partner of the Los Angeles office" and "receive case direction from [a]ttorneys, Lindsay Kyser (LA); Michael Reid (Managing Partner of the San Diego Office); and Travis Davis (SD)" (collectively, with Nicholas Wajda, "Supervising Attorneys")(Employment Agreement, ¶ 9).[4] According to Recovery Law Group, Majors "acknowledged and understood she was an employee of the firm serving as a non-voting partner/member of RLG and not an independent contractor, appearance counsel or outside counsel and her employment with RLG commenced upon the execution of the Employment Agreement." (Doc. No. 79, p.2).

As specified in the Employment Agreement, Majors' duties included:

- Final preparation of Bankruptcy petitions, preparing and filing motions and managing Chapter 7 and Chapter 13 client cases;

- Working collaboratively with Managing Attorney and staff;

-Managing client caseload, while producing high quality work product;

- Managing deadlines and overseeing client cases independently;

- Acclimating quickly to company software and technology;

 -Communicating with clients via telephone, email and in-person meetings;

---

[4] At this point in time, none of Recovery Law Group's Supervising Attorneys were licensed to practice in Michigan or admitted to practice before the United States District Court for the Eastern District of Michigan (Dkt. No. 229, 230, ¶ 32).
.

- Appearing, or scheduling reliable appearance counsel, at all required meeting of creditors, motion hearings, and/or confirmation hearings on cases Employee files;

- Communicating with trustees and court officials via court-call, email, phone conferences and in-person;

- Other duties as required by the managing attorney;

- Maintain admission to all districts where Employee will be practicing law in Michigan, and maintain an active ECF filing account within each district.

(Employment Agreement, ¶ 11)(capitalization and punctuation as in original).

The Employment Agreement provided that Majors was to be paid $300 for each chapter 7 case filed, $350 for each chapter 13 case filed, $350 for chapter 13 cases subsequently confirmed, 75% of any supplemental and/or additional fees awarded in a chapter 7 or chapter 13 case, and $700 for any personal referral of a client to Recovery Law upon the filing of a bankruptcy case (Employment Agreement, ¶ 14).

E. Debtors' Chapter 7 Filing

On August 24, 2020, Recovery Law Group, by Sheena Majors, filed the Shastals' chapter 7 bankruptcy petition but did not include all of the required documents and schedules (Dkt. No. 1). Majors signed the Debtors' petition affirming that:

I, the attorney for the debtor(s) named in this petition, declare that I have informed the debtor(s) about eligibility to proceed under Chapter

9

7, 11, 12, or 13 of title 11, United States Code, and have explained the relief available under each chapter for which the person is eligible. I also certify that I have delivered to the debtor(s) the notice required by 11 U.S.C. § 342(b) and, in a case in which § 707(b)(4)(D) applies, certify that I have no knowledge after an inquiry that the information in the schedules filed with the petition is incorrect.

Sheena Majors signed all of the pleadings she filed in the Shastals' bankruptcy case as "Sheena Majors, Majors Law PLLC."[5] Recovery Law Group was not listed as a signatory on these pleadings. Because Debtors' bankruptcy case was filed with incomplete documents, Debtors were given a deadline of September 8, 2020 to file schedules and other missing documents (Dkt. No. 1).

On September 7, 2020, Majors for Recovery Law Group filed a Motion to Extend Deadline to File Schedules or Provide Required Information. Recovery Law Group never filed a Certificate of Non-Response and, as a result, an order was never entered granting this motion (Dkt. No. 14). *See,* L.B.R. 9006-1 (E.D.M.).

On September 10, 2020, more than two weeks after the bankruptcy petition was filed, Kisch emailed Debtors asking if they could get a broker's price opinion

---

[5] Recovery Law Group states that filing the petition as "Sheena Majors, Majors Law PLLC" was improper and that Majors was not authorized the file the petition under her own name and firm. (Dkt. Nos. 229, 230, ¶ 46, 52). According to Majors, Recovery Law Group did not allow her access to their Best Case software so she had to use her own software which did not allow the use of outside attorney or firm names. Her software defaulted to the authorized user (herself). (Dkt. No. 54, hearing at 11:52-12:59). Majors states that she was not immediately aware of this issue but notified Recovery Law Group of this problem when she became aware of it.

for their Residence, advising "[w]e need it to come in as low as possible, right now it looks like you have to file a chapter 13[.]" In response, Mr. Shastal advised that "the value [of the Residence] is around $165k per the appraisal I had when I applied for an equity loan." Kisch responded, "Ok, we're going to have to go the Chapter 13 route . . . You have too much equity in your house." (Dkt. Nos. 229, 230, ¶ 87-90).[6] Recovery Law Group never amended the $146,000 value of Debtors' Residence on Debtors' Schedules A and D.

Albeit untimely, on September 30, 2020, Recovery Law Group, by Majors, filed Debtors' Schedules A-J (with the incorrect house valuation), Statement of Financial Affairs, Statement Pursuant to Rule 2016(b), Statement of Intention, and Means Test Calculation Form 122A-2 (Dkt No. 15). The Means Test Calculation Form was stricken by the Court on December 18, 2020 because an incorrect event code was used (Dkt Nos. 16, 35). No new Means Test Calculation Form was ever filed with the Court.

The Statement of Attorneys for Debtor(s) Pursuant to Fed. R. Bankr. P 2016(b) disclosed a flat fee of $3,810 for legal services (Dkt. No. 15, "2016(b) Statement"). It further indicated that Sheena Majors received $1,500 before the case was filed, leaving an unpaid balance of $2,310.  Despite this assertion on the 2016(b)

---

[6] While most of the emails referenced in this Opinion are not in the record, these emails are described in Dkt. No. 229 and admitted in Dkt. No. 330, ¶¶ 107, 108.

Statement, Debtors' Statement of Financial Affairs, ¶ 16, states that the Debtors paid Recovery Law Group $1,835 for attorney's fees and the bankruptcy filing fee in August 2020. Recovery Law Group indicates that it received this payment from Debtors and, consequently, paid Majors for her work on the file (Dkt. Nos. 229, 230, ¶ 50, 51).

The 2016(b) Statement further provided that the legal services for the disclosed fee include:

A. Analysis of the debtor's financial situation, and rendering advice to the debtor in determining whether to file a petition in bankruptcy;

B. Preparation and filing of any petition, schedules, statement of affairs and plan which may be required;

C. Representation of the debtor at the meeting of creditors and confirmation hearing, and any adjourned hearings thereof;

D. ~~Representation of the debtor in adversary proceedings and other contested bankruptcy matters;~~

E. Reaffirmations;[7]

F. Redemptions; and

G. Other.

(Dkt. No. 15)(language stricken in original).

The 2016(b) Statement, ¶ 7, states, "[t]he undersigned has not shared or agreed to share, with any other person, other than with members of the undersigned's law

---

[7] The inclusion of "Reaffirmations" in the Flat Fee services is in contravention of the Retention Agreement, at p. 2, which states that there is an extra charge for reaffirmations. *See*, *supra* at 5-6.

firm or corporation, any compensation paid or to be paid . . ."  Sheena L. Majors of Majors Law, PLLC signed the 2016(b) Statement directly below the affirmation set forth in ¶ 7.  The 2016(b) Statement does not mention Recovery Law Group.

On October 1, 2020, Majors filed a Motion to Convert Case to Chapter 13 (Dkt. No. 18).  The Motion to Convert was prepared by Kisch and sent to Majors for filing (Dkt. Nos. 229, 230, ¶ 97), although the document still indicated Sheena Majors by Majors Law as counsel.

On October 10, 2020, the Court issued a Notice of Requirement to File Financial Management Course Certificate requiring the Debtors to file Form 423 by November 30, 2020 (Dkt. No. 20). The Form 423 Notice states, "[f]ailure to file the certification will result in the case being closed without an entry of discharge."

On October 16, 2020, Trustee Sweet filed an objection to the Motion to Convert Case to Chapter 13 (Dkt No. 22), and the Motion to Convert was set for hearing on November 4, 2020 ("Conversion Hearing").  The Court held the Conversion Hearing on November 4, 2024, but had to adjourn that hearing, first to November 25, 2020 and then to December 16, 2020, because Trustee Sweet was unable to conduct the Debtors' 341 Meeting of Creditors (Dkt. No. 26).[8]

---

[8] Debtors' 341 Meeting of Creditors ("341 Hearing"), initially scheduled for October 1, 2020, was continued to October 15, October 29, November 12, November 24, and eventually held on December 16, 2020. Plaintiffs allege that continuations were necessary because Recovery Law Group was not present at these hearings.  Although the Court has no reason to question Plaintiffs' allegation, because 341 Hearings are

On October 27, 2020, Ms. Shastal sent an email to Kisch and Majors, respectively, requesting a link to allow Debtors to obtain their financial management course certifications. Ms. Shastal's email also inquired as to whether Majors or Kisch would appear at the Debtors' 341 meeting (Dkt. Nos. 229, 230, ¶ 107).

On October 28, 2020, Ms. Shastal sent a second email to Majors stating that they needed to complete the second half of the bankruptcy course and requesting a link to obtain copies of their financial management course certificates. Majors did not respond to Ms. Shastal's questions regarding the financial management course completion but did respond regarding Debtors' upcoming 341 meeting (Dkt. Nos. 229, 230, ¶ 108).

On December 16, 2020, Debtors' Motion to Convert Case from Chapter 7 to Chapter 13 was denied without prejudice because Recovery Law Group failed to appear at both the continued meeting of creditors and the adjourned Conversion Hearing (Dkt No. 31). Recovery Law Group never filed a renewed motion to convert to avoid the sale of Debtors' Residence.

On May 26, 2021, the Trustee filed a Motion to Approve Compromise of the Estate's Claim with the Debtors (Dkt. No. 42). Recovery Law Group, by Majors,

---

held by the chapter 7 trustee, the Court does not have independent knowledge regarding whether, or when, Recovery Law Group appeared on behalf of Debtors.

and the Trustee had negotiated a payment plan for Debtors' non-exempt equity so that Debtors could stay in their Residence.

On July 21, 2021, the Court held a hearing on the Motion to Approve Compromise, but the hearing was further adjourned to August 18, 2021 because Recovery Law Group did not attend the hearing.

On July 23, 2021, the Court filed an Order to Show Cause Why Debtors' Counsel Should Not Be Sanctioned For Failing To Appear At Hearing On Trustee's Motion to Approve Compromise and for Violating Fed. R. Bankr. P. 2016(b) (Dkt. No. 52). That Order to Show Cause reflects counsel's failure to appear and the Court learning for the first time of an undisclosed fee sharing agreement between Sheena Majors/Majors Law and Recovery Law Group. The Court scheduled a Show Cause hearing to be held on August 18, 2021.

On August 18, 2021, Majors, for Recovery Law Group, appeared for the Show Cause hearing. Majors requested further time to file a written response explaining her failure to adequately represent Debtors and to respond to allegations of potential violations of Fed. R. Bankr. P. 2016(b). Majors indicated at the hearing that she thought she had withdrawn as counsel sometime between April 12, 2021 and April 26, 2021. The Court granted Majors' request, adjourning both the hearing on the Motion to Approve Compromise and the Show Cause Hearing to September 8, 2021.

On September 1, 2021, Majors filed a Response to the Court's Order to Show Cause (Dkt. No 55). In her Response, Majors stated that Recovery Law Group had rescinded her Employment Agreement on or before March 21, 2021.[9] Majors also attached an Exhibit E to her Response listing all of the cases in the Eastern District of Michigan for which she received payment by Recovery Law Group.

On September 8, 2021, the Court issued an Amended Order to Show Cause Why Debtors' Counsel Should Not be Sanctioned For Failing To Appear At Hearing On Trustee's Motion to Approve Compromise and for Violating Fed. R. Bankr. P. 2016(b) (Dkt. No. 60). Majors appeared at the hearing but no representative of Recovery Law Group appeared. The Court adjourned the hearing because it was unclear if Recovery Law Group had notice of it. The Court sought Recovery Law Group's response to the issues raised in the Court's initial Order to Show Cause (Dkt. 52) and the answers to the following questions and/or the following information:

(i)      why Recovery Law Group's representation was not disclosed in this case or the other cases identified on Exhibit E to Ms. Majors' Response,

(ii)     the existence and terms of any engagement agreements with the debtors identified on Exhibit E to Ms. Majors' Response,

(iii)    the payment histories for each of the cases identified on Exhibit E to Ms. Majors' Response, and the amount of fees shared between Recovery Law Group and Ms. Majors,

---

[9] Majors references Dkt. No. 55, Exhibit B, as evidence that her Employment Agreement was rescinded. However, Exhibit B does not indicate that Majors' Employment Agreement was rescinded.

(iv)  why notices of withdrawal or substitution of counsel were not filed,

(v)  whether the clients identified on Exhibit E to Ms. Majors' Response were notified of the contractual relationship between Ms. Majors and Recovery Law Group or notified of the fee sharing arrangements in these cases, and

(vi)  whether sanctions should be assessed against Ms. Majors and/or Recovery Law Group and, if so, in what amount.

(Dkt. No. 60)(spaced for clarity). A hearing on these matters was set for October 13, 2024. Also on September 8, 2024, Trustee Sweet withdrew the Motion to Approve Compromise under Rule 9019. Trustee Sweet had indicated on the record at the August 18 hearing that he did not think the Shastals could meet their obligations under the settlement.

On October 6, 2021, the Court issued a Revised Amended Order to Show Cause Why Debtors' Counsel Should Not be Sanctioned For Failing To Appear At Hearing On Trustee's Motion to Approve Compromise And For Violating Fed. R. Bankr. P. 2016(b) (Dkt. No. 64). This order adjourned the hearing set for October 13, 2024 so the United States Trustee could correct a service error on the Amended Order to Show Cause.

On November 12, 2021, Trustee Sweet filed a Motion to Sell Debtors' Residence Free and Clear of Liens under Section 363(f) (Dkt. No. 67).

On November 17, 2021, the Court held a hearing on the Revised Amended Order to Show Cause (Dkt. No. 64). Majors did not appear at this hearing. Instead, Desirae Bedford appeared on behalf of Recovery Law Group and assured the Court that Recovery Law Group would: (1) produce documents requested by the United States Trustee ostensibly relating to allegations that Recovery Law Group did not comply with Fed. R. Bankr. P. 2016(b) and regarding Major's alleged withdrawal of from her Employment Agreement with Recovery Law Group, by December 8, 2021; (2) file a response to the Revised Amended Order to Show Cause by December 15, 2021; and (3) file an appearance as counsel of record for Debtors. This hearing was adjourned to January 26, 2022 to give Recovery Law Group an opportunity to provide all the documents previously requested and to file a written response to the Revised Amended Order.

On November 18, 2021, Desirae Bedford, for Recovery Law Group, filed a Notice of Substitution of Counsel (Dkt. No. 70). The Substitution states, in part:

> Subject to the approval of the court Desirae Bedford substitutes as counsel of record in place of Sheena L. Majors. Contact information for new counsel is as follows:
>
> Firm Name: Recovery Law Group, APC
> Address: 55 E. Monroe St., Ste 3800  Chicago, IL 60603
> Telephone: 847-250-1167
> Facsimile: 872-250-9797
> E-mail: dbedford@recoverylawgroup.com

This Notice of Substitution was stricken from the record by an order entered on November 19, 2021 because "the PDF does not match the docket text" (Dkt. No. 71).

On November 20, 2021, Mr. Shastal, *without the assistance of counsel*, wrote a personal letter to the Court asking that the Shastals be given until the end of December to pack their belongings and find a new home. Mr. Shastal explained that they could not afford to hire movers and, due to their advanced age, "our days of speed and strength are behind us." (Dkt. No. 73).

On December 9, 2021, the Court issued a Second Order to Show Cause Why Debtors' Counsel Should Not Be Sanctioned For Failing To Comply With Court Orders and/or Commitments Made On The Record In Open Court on November 17, 2021 because Recovery Law Group had not yet filed a valid substitution of counsel. The Show Cause hearing was scheduled for December 15, 2021 (Dkt. No. 77).

On December 14, 2021, Recovery Law Group finally filed a Response to the Order to Show Cause for failing to appear at the hearing on the Motion to Approve Compromise and for violations of Rule 2016(b), which was initially served six months earlier on July 23, 2021 and amended multiple times (Dkt. No. 79).

On December 15, 2021, the Court granted Trustee Sweet's Motion to Sell Property Free and Clear of Liens under Section 363(f) ("Sale Order") (Dkt. No. 80).

Under the Sale Order, the judgment lien of New Home Plate in the amount of $99,950 transferred to the proceeds of the sale.

On December 26, 2021, Recovery Law Group filed the Personal Financial Management Course Certificates for Debtors (Dkt. No. 83).[10]

On December 27, 2021, Debtors received an Order of Discharge (Dkt. No. 84).[11]

On December 30, 2021, Recovery Law Group, by Bedford, filed a Notice of Appearance and Request for Notice (Dkt. No. 86). Recovery Law Group received a Notice of Deficient Pleading regarding the Notice of Appearance on January 3, 2022 due to a missing signature (Dkt. No. 88). Recovery Law Group, by Bedford, refiled a Certificate of Service for the original Notice of Appearance on January 5, 2022 (Dkt. No. 89).

On January 5, 2022, Trustee Sweet filed the Report of Sale of Debtors' Residence (Dkt. No. 90). Debtors' Residence had sold for $168,000.

---

[10] As referenced on page 14, *supra*, Ms. Shastal had emailed her counsel about these forms in October 2020 out of concern that they be completed within the time frame specified on the form.

[11] Had Debtors received their discharge prior to the entry of the Sale Order, the New Home Plate judgment could have potentially been extinguished under MCL 600.2809(6)(d) and its lien would not have transferred to the proceeds of the sale. This delay was due to Debtors' counsel failure to timely file Personal Financial Management Course Certificates (Form 423) which the Shastals had requested 14 months earlier.

20

On January 14, 2022, Trustee Sweet filed the Trustee's Motion to Disburse Funds, requesting authority to distribute $156,086.80 in funds remaining from the sale of the Residence but without payment of Debtors' $60,725 claimed exemption ("Disbursement Motion") (Dkt. No. 95).

On January 26, 2022, the Court held a hearing on the Revised Amended Order to Show Cause which had been adjourned from November 17, 2021 so that Recovery Law Group could provide certain documents. There was a question regarding whether Recovery Law Group had provided a complete list of its cases which are, or were, filed in the Eastern District of Michigan. The January 26, 2022 hearing was adjourned another week, to February 2, 2022, to allow Recovery Law Group to provide any further information that it had in its possession.

As of January 28, 2022, the final day of the original 14-day objection period for the Disbursement Motion, Recovery Law Group had not yet filed a response. (Dkt. Nos. 229, 230, ¶121). Out of concern that Debtors were not being adequately represented, the United States Trustee asked Trustee Sweet to amend his Disbursement Motion to disclose information regarding the effect of the Disbursement Motion on Debtors' homestead exemption, thereby restarting the 14-day objection period so that Debtors could preserve their right to an exemption in their Residence (Dkt. Nos. 229, 230, ¶ 120).

On January 28, 2022, the Trustee filed an Amended Motion to Disburse Remaining Funds; Allow Surcharge Under 506(c) of the Bankruptcy Code; and Resolve Claims of Debtor (Dkt. No. 98, "Amended Disbursement Motion"). The Amended Disbursement Motion, like the original Disbursement Motion, requested authority to disburse all remaining funds from the sale without payment of Debtors' $60,725 exemption (Dkt. No. 98).

At the hearing held on February 2, 2022, the Court raised the Amended Disbursement Motion *sua sponte* to draw Debtors' counsels' attention to Debtors' need for competent and active representation to protect their $60,725 exemption. In response to the Court's inquiry, Recovery Law Group reassured the Court on the record that they would respond immediately to the Amended Disbursement Motion and mentioned filing a motion to avoid the lien. However, Recovery Law Group failed to object to the Amended Disbursement Motion to preserve the Debtors' exemption of $60,725.

On February 6, 2022, Recovery Law Group filed a Motion to Extend Time to File a Response to the Amended [Disbursement] Motion ("Motion to Extend") (Dkt No. 100). Recovery Law Group erroneously stated that the Amended Disbursement Motion provided 21-day notice although the actual response time for this type of motion is 14-days. Recovery Law Group did not request an expedited hearing on this matter, and the Court did not enter an order extending the time.

On February 11, 2022, the final day of the actual notice period for the Amended Disbursement Motion, the United States Trustee filed an objection to preserve Debtors' $60,725 exemption because Recovery Law Group failed respond to the Amended Disbursement Motion.[12] The Court set the Amended Disbursement Motion for hearing on March 9, 2022.

On March 8, 2022, the day before the hearing on the Amended Disbursement Motion, Recovery Law Group filed the Debtors' Motion to Avoid Lien and Allow Homestead Exemption ("Lien Avoidance Motion") (Dkt. No. 113). The Lien Avoidance Motion incorrectly stated Debtors' exemption as $60,000 even though Debtors listed their homestead exemption on Schedule C at $60,725 (Dkt. No. 15).

On March 22, 2022, Recovery Law Group and the United States Trustee filed a stipulation to extend the time for the United States Trustee to file a response to Debtors' Lien Avoidance Motion to April 13, 2022 (Dkt. No. 119).

On April 13, 2022, New Home Plate objected to the Lien Avoidance Motion ("Objection") (Dkt. No. 127). New Home Plate's Objection raised numerous issues under § 727 that the Court, the United States Trustee, Trustee Sweet, New Home Plate, and Recovery Law Group all agreed created a direct conflict of interest between the Debtors and Recovery Law Group. That same day, Recovery Law

---

[12] While Recovery Law Group did make some efforts to extend the time to file their Response to the Amended Disbursement Motion, these efforts were ineffective due to its failure to timely obtain an order granting their Motion to Extend Time.

Group (by Bedford and Peter Mulcahy), New Home Plate Lounge, the United States Trustee, and Trustee Sweet all stipulated to extend the time for the United States Trustee and Trustee Sweet to file their responses to the Lien Avoidance Motion to May 11, 2022 and to adjourn the Debtors' Lien Avoidance Motion to May 18, 2022 (Dkt. No. 130).

On April 27, 2022, Recovery Law Group filed a notice of Debtors' change of address and, later that day, an Amended Notice of Debtors' change of address (Dkt. Nos. 134, 135).

On May 11, 2022, the United States Trustee filed an objection to the Lien Avoidance Motion with the purpose of delaying any settlement of the issues raised until the Debtors had the benefit of unconflicted counsel to advise them in any negotiations impacting their homestead exemption in the Residence (Dkt. No. 136).

On May 13, 2022, New Home Plate filed an Adversary Complaint seeking the revocation of Debtors' discharge under 11 U.S.C. § 727 based on errors in Debtors' pleadings (Adv. No. 22-3013, Dkt. No. 1)(Dkt. No. 138). The Shastals, however, previously stated on the record that they had not seen or reviewed the bankruptcy petition and schedules, among other documents, prior to their being filed with the Court (Dkt. No. 61, Hearing Recording at 23:43- 24:50).

On May 18, 2022, the Court entered an order substituting David Brown as Debtors' attorney of record, replacing Recovery Law Group (Dkt. No. 140).

On August 10, 2022, New Home Plate, Trustee Sweet, and Debtors agreed, and the Court entered an Order finding, that Debtors are entitled to the exemption in their former marital Residence in the amount of $60,725.00 to be paid to Debtors from the remaining funds being held in trust by Trustee Sweet and that New Home Plate is entitled to its lien against the proceeds of the sale of the Residence in the amount of $145,784.12 to be paid from the assets of the estate (Dkt. No. 160).

On August 23, 2022, the United States Trustee, Debtors, Recovery Law Group, Majors, New Home Plate, and Trustee Sweet entered into a stipulation setting dates for 2004 examinations. (Dkt. No. 164). By agreement of the parties, the 2004 examinations were rescheduled to December 2022 (Dkt. No. 169), February 2023 (Dkt. 173), April 2023 (Dkt. 176) and were finally held on June 7, 2023.[13] Between August 2022 and August 2023, there were also numerous issues regarding the turnover of documents.[14]

_____

[13] The June 7, 2023 date is not indicated in the record, but Plaintiffs allege that this was the actual date of the 2004 examinations.

[14] On August 4, 2022, Brown filed a Motion to Turnover Client File (Dkt. No. 150). On August 18, 2022, Peter Mulcahy, General Counsel for Recovery Law Group, submitted an affidavit regarding Debtors motion for turnover of documents stating that all documents in his possession had been turned over to Debtors' new attorney. (Dkt. No. 162). On May 25, 2023, Majors filed an affidavit attesting that she had turned over all documents pertaining to this matter to both Peter Mulcahy for Recovery Law Group and Thomas Beadle, the attorney for New Home Plate (Dkt. No. 184). On June 14, 2023, Majors filed an amended affidavit stating that she had forwarded all text messages concerning the Shastals to Mr. Beadle (Dkt. No. 191).

On June 7, 2023, Peter J. Mulcahy filed a Notice of Appearance and Request for Notice (Dkt. No. 188) as counsel for Recovery Law Group.

On December 5, 2023, Trustee Sweet filed a Motion to Approve Compromise which would allow his office to pursue a malpractice action against Recovery Law Group. Under the terms of the Compromise Agreement, Trustee Sweet and Debtors agreed to share any net recoveries equally (Dkt. No. 203).

On December 26, 2023, the United States Trustee filed a Motion to Review the Conduct of Sheena Majors and Recovery Law Group, APC, to Cancel the Retention Agreement, to Disallow and Return Funds Paid, and for Other Relief as May Be Appropriate, Including Monetary Sanctions (Dkt. No. 205)("Motion for Sanctions"). In this Motion for Sanctions, the United States Trustee sought to cancel Recovery Law Group's retention agreement, to disallow and require the return of fees paid to Recovery Law Group, and to grant other relief as may be appropriate under 11 U.S.C. §§ 105(a), 329(b), and 526, Fed. R. Bankr. P. ("Rules") 2016 and 2017, including monetary sanctions.

---

On July 25, 2023, Mulcahy filed a declaration stating that he had turned over all documents relevant to this matter (Dkt. No. 201).

On December 29, 2023, Recovery Law Group, by Mulcahy, filed an Objection to the Motion to Approve Compromise (Dkt. No. 206),[15] denying any malpractice occurred and asserting that Trustee Sweet lacked standing to pursue recovery on a post-petition claim.

On January 9, 2024, the Court set a hearing on the Motion to Approve Compromise for January 17, 2024.

On January 10, 2024, New Home Plate filed a Response and Concurrence to Motion to Approve Compromise (Dkt. No. 210) and a Response to the Motion for Sanctions (Dkt. No. 211). On January 10, 2024, Recovery Law Group filed an Objection to the Motion for Sanctions. This pleading, however, was stricken because the electronic signature did not match the attorney's login information (Dkt. No. 212).

On January 11, 2024, Recovery Law Group successfully filed an Objection to Motion for Sanctions (Dkt. No. 215).

On January 11, 2024, the Court set a hearing on the Motion for Sanctions for January 17, 2024. That hearing was held and continued to April 3, 2024 (Dkt. No. 218).

---

[15] This objection is docketed as a Response to the Motion for Sanctions but is actually an Objection to the Motion to Approve Compromise.

On January 17, 2024, the Court held a hearing on Trustee Sweet's Motion to Approve Compromise, at which time the Court read into the record a lengthy bench opinion granting Trustee Sweet's Motion (Dkt. No. 218, Opinion beginning at 28:52).

On January 26, 2024, this Court entered its Order Approving Compromise (Dkt. No. 221) which stated, in part:

> IT IS HEREBY ORDERED that Trustee is authorized to settle with the Debtors wherein the Debtors and Trustee will bring forth an action against Recovery Law Group for attorney malpractice and any other potential claim naming Mr. and Mrs. Shastal first and foremost and then naming the Bankruptcy Estate as a tangential interest. The Bankruptcy Estate shall have standing to bring this malpractice and any other potential suit in Bankruptcy Court and name both the Estate and the Debtor as Plaintiffs.

> IT IS FURTHER ORDERED that should funds be awarded to the Debtors and Trustee from the malpractice and any other potential action then the costs of litigating this action will be paid in full first and any remaining proceeds shall be divided equally between the Debtor and the Bankruptcy Estate.

> IT IS FURTHER ORDERED that as part of this agreement, the Trustee acknowledges his previous determination that the Bankruptcy Estate holds no claims against the Debtors for denial of discharge.

That same day, the Court also entered an order approving the retention of special counsel to prosecute the malpractice actions (Dkt. No. 226) and a procedural order to treat the United States Trustee's Motion for Sanctions as an Adversary Proceeding under Fed. R. Bankr. P. 7001 (Dkt. No. 227). Consequently, on February 20, 2024, the United States Trustee filed its *Complaint* to Review the Conduct of

Sheena Majors and Recovery Law Group, APC, to Void the Retention Agreement, to Order the Return of Funds Paid, and for Other Appropriate Relief Including Injunctive Relief and Monetary Sanctions (Dkt. No. 229)("Complaint for Sanctions") which, in essence, mirrored the Motion of the same name (Dkt. No. 205).

On March 18, 2024, Recovery Law Group filed its *Answer* to the United States Trustee's Complaint for Sanctions and filed a Cross-Claim against Sheena Majors a/k/a Sheena L. Majors d/b/a Majors Law Center, PLLC for Damages and Other Appropriate Relief (Dkt. No. 230).[16]

On April 2, 2024, Debtors and Trustee Sweet ("Plaintiffs"), by their malpractice counsel, filed this adversary proceeding (Adv. Proc. No. 24-3033) against Majors Law, PLLC, Sheena Majors, Desirae Bedford, and Recovery Law Group ("Defendants"). After two deficiency notices resulting from non-matching signatures, an Amended Complaint was filed on April 5, 2024 (Adv. Dkt. No. 9). The Amended Complaint alleges two counts: Count I – Legal Malpractice and Count II – Violations of 11 U.S.C. § 526.

On April 3, 2024, the Court held the adjourned hearing on the Motion (now Complaint) for Sanctions. Despite proper notice, Recovery Law Group did not

---

[16] While Majors was properly served with Recovery Law Group Group's Answer and Cross-claim against her, Majors has not responded to the Cross-claim, and Recovery Law Group has not sought to default her.

appear at the April 3rd hearing.  On April 4, 2024, this Court entered an order imposing sanctions on Recovery Law Group in the amount of $1,000 for failing to appear at the April 3, 2024 hearing (Dkt. No. 234).[17]

On April 23, 2024, Recovery Law Group and Desirae Bedford ("Movants") filed this Motion to Dismiss the Adversary Proceeding (Adv. Dkt. No. 17).  Movants seek to have the Adversary Complaint dismissed for: (1) this Court's lack of subject matter jurisdiction; (2) Debtors' failure to state a claim because Debtors, by virtue of receiving their discharges, were not damaged by any alleged malpractice; and (3) Debtors' failure to timely file their malpractice claim.  While Movants seek the dismissal of the entire adversary proceeding, Movants only present arguments relating to the legal malpractice claim in their Motion to Dismiss.  Movants do not present any grounds in their Motion for the dismissal of the § 526 claims.

On April 24, 2024, a reissued summons was served on all Defendants, resetting the deadline for filing an answer to the instant Adversary Complaint to May 24, 2024.

On April 25, 2024, Majors filed an untimely Response to Complaint for Sanctions (which had been filed on February 20, 2024)(Dkt. No. 242).   This

---

[17] As of the date of this Opinion, Recovery Law Group has failed to pay the sanctions imposed despite the Sanctions Order requiring payment by April 24, 2024.  Nor has Recovery Law Group objected to or challenged the Sanctions Order, the time for which has passed.  Recovery Law Group's failure to comply with the Sanctions Order will be addressed by the Court in a separate Order.

Response did not address the Cross-Claim alleged in the Answer filed by Recovery Law Group (Dkt. No. 230).

On May 9, 2024, Debtors and Trustee Sweet filed a response to Movants' Motion to Dismiss the Adversary Proceeding (Adv. Dkt. No. 24).

On June 12, 2024, the Court heard lengthy oral argument on the instant Motion to Dismiss. During oral argument, counsel for Movants stated on the record that Movants were dropping their argument that the Complaint failed to state a claim, acknowledging that Debtors' discharges did not entirely obviate Debtors' damage claim. (Adv. Dkt. No. 29, Hearing Recording at 44:50-45:15). As a result, the Court will not address this issue in its Opinion.

At the conclusion of the hearing, the Court took this matter under advisement and authorized the parties to file supplemental briefs "on the limited issue of whether the legal malpractice cause of action of the adversary complaint is a 'non-core' issue and the practical effect on the Court's retaining subject matter jurisdiction thereof . . . ." (Adv. Dkt. No. 33). Movants timely filed their supplemental brief on June 28, 2024 (Adv. Dkt. No. 34) arguing that this action, or at least the legal malpractice count, is "non-core" because it concerns a post-petition legal malpractice claim and, therefore, this Court lacks subject matter jurisdiction over it. Specifically, Movants argue that this Court does not have "arising under" or "related to" jurisdiction over this case (Adv. Dkt. No. 34, ¶ 12). In the alternative, Movants argue that, should this

Court find that it has subject matter jurisdiction, it should abstain from hearing the malpractice action in the interest of administrative efficiency. In addition, Movants maintain their statute of limitations argument, even though the Court did not ask Movants to address it in their supplemental brief.

On July 2, 2024, a Clerk's Entry of Default was entered against Sheena Majors and Majors Law, PLLC (Adv. Dkt. No. 39) requiring an application for default judgment to be filed by July 16, 2024.

On July 12, 2024, Plaintiffs timely filed their Response to Movants' Supplemental Brief (Adv. Dkt. No. 40).

Plaintiffs filed their Application for Default Judgment on July 15, 2024, and a Default Judgment was entered against Majors on July 16, 2024 (Adv. Dkt. Nos. 41, 42).

## II.

## <u>ANALYSIS</u>

The two issues before the Court are (1) whether this Court has subject matter jurisdiction to hear this adversary proceeding and (2) whether Plaintiffs' malpractice claim was filed within the applicable statute of limitations.

### A. This Court Has Subject Matter Jurisdiction Over Plaintiffs' Complaint.

Federal bankruptcy jurisdiction is defined by 28 U.S.C. § 1334. Section 1334(a) confers upon district courts "original and exclusive jurisdiction of all cases

under title 11." Section 1334(b), in turn, confers upon the district courts "original but not exclusive jurisdiction of all civil proceedings arising under title 11, or arising in or related to cases under title 11."

As succinctly explained by the court in *In re Nu-Cast Step & Supply, Inc.*, 639 B.R. 440, 446-447 (Bankr. E.D. Mich. 2021):

> The meanings of the terms embedded in 28 U.S.C. § 1334 are well established. The term "cases under title 11" as used in 28 U.S.C. § 1334(a) means the bankruptcy petition itself filed pursuant to 11 U.S.C. §§ 301, 302, or 303—i.e., the umbrella under which all of the proceedings that follow the filing of the bankruptcy petition take place. *See, e.g., Michigan Employment Sec. Comm'n v. Wolverine Radio Co., Inc. (In re Wolverine Radio Co.)*, 930 F.2d 1132, 1140 (6th Cir. 1991). See also *Gupta v. Quincy Medical Ctr.*, 858 F.3d 657 (1st Cir. 2017). As noted above, 28 U.S.C. § 1334(a) gives federal district courts exclusive jurisdiction over cases under title 11.

> The term civil proceedings "arising under title 11" means those causes of action created or determined by a statutory provision of title 11 (e.g., preferential transfers under 11 U.S.C. § 547). *See, e.g., Wolverine Radio*, 930 F.2d at 1144. See also *Moyer v. Bank of America (In re Rosenberger)*, 400 B.R. 569, 572–73 (Bankr. W.D. Mich. 2008).

> The term civil proceedings "arising in" a case under title 11 means proceedings that, by their very nature, could arise only in bankruptcy cases. *See In re Bliss Technologies, Inc. v. HMI Indus., Inc. (In re Bliss Technologies, Inc.)*, 307 B.R. 598, 602 (Bankr. E.D. Mich. 2004) (quoting *Wolverine Radio*, 930 F.2d at 1144). These "arising in" proceedings "are not based on any right expressly created by title 11, but nevertheless, would have no existence outside of the bankruptcy." *New England Power & Marine, Inc. v. Town of Tyngsborough, Mass. (In re Middlesex Power Equip. & Marine, Inc.)*, 292 F.3d 61, 68 (1st Cir. 2002).

> Civil proceedings that are "related to" a case under title 11 might seem to include an expansive universe of jurisdiction but, in reality,

they do not. In *Wolverine Radio*, 930 F.2d at 1142, the Sixth Circuit adopted the Third Circuit's statement of "related to" jurisdiction as set forth in *Pacor, Inc. v. Higgins (In re Pacor, Inc.)*, 743 F.2d 984, 994 (3d Cir. 1984):

> The usual articulation of the test for determining whether a civil proceeding is related to bankruptcy is *whether the outcome of that proceeding could conceivably have any effect on the estate being administered in bankruptcy*. Thus, the proceeding need not necessarily be against the debtor or against the debtor's property. An action is related to bankruptcy if the outcome could alter the debtor's rights, liabilities, options, or freedom of action (either positively or negatively) and which in any way impacts upon the handling and administration of the bankrupt estate. [emphasis in original; citations omitted.]

*Id.* (emphasis in original, footnotes omitted).

The Court will address each of these jurisdictional bases in turn.

### a. *'Cases Under' Title 11*

As the *Nu-Cast* court notes, the term "cases under" title 11 as used in 28 U.S.C. § 1334(a) refers to the bankruptcy petition itself – "the umbrella under which all of the proceedings that follow the filing of the bankruptcy petition take place." *Id*. at 446. Movants do not contest the district court's (and by reference, this Court's) original and exclusive jurisdiction over the bankruptcy case itself.

### b. *Civil Proceedings 'Arising Under' Title 11*

The term "arising under" title 11 means those causes of action *created or determined* by a statutory provision of title 11. *Id*. The *Nu-Cast* court gives the example of an action to recover preferential transfers under 11 U.S.C. § 547. In this

case, Plaintiffs assert a claim under § 526 of the Bankruptcy Code, which is another example of a cause of action *created or determined* by a statutory provision of title 11. It is clear, therefore, that the Court has subject matter jurisdiction over this § 526 claim arising under title 11. The legal malpractice claim, in contrast, is not a claim or cause of action created or determined by a provision of the Bankruptcy Code. Accordingly, the Court does not have "arising under" jurisdiction over Plaintiffs' legal malpractice claim. However, as discussed below, this Court has "arising in" or "related to" jurisdiction over this claim.

### c. Civil Proceedings 'Arising In' a Case under Title 11

As explained in *Nu-Cast*, *supra*, the term civil proceedings "arising in" a case under title 11 means proceedings that, by their very nature, could arise only in bankruptcy cases. These "arising in" proceedings "are not based on any right expressly created by title 11, but nevertheless, would have no existence outside of the bankruptcy." *Id*. at 446 (internal citations omitted).

As innumerable courts have held under similar facts, this Court has "arising in" jurisdiction over claims of legal malpractice arising from a defendant's representation during a bankruptcy proceeding because, among other reasons, such claims arise only because of the bankruptcy, they involve attorneys appointed by or under the supervision of the bankruptcy court, and they invoke a debtor's right to have their bankruptcy estate administered properly. *See e.g. Murray v. Willkie Farr*

& *Gallagher LLP (In re Murray Energy Holdings)*, 654 B.R. 469, 476 (Bankr. S.D. Ohio 2023)("Court has arising-in jurisdiction to hear and determine this matter under 28 U.S.C. § 1334(b). . . . Given that the Court has arising-in jurisdiction, this is a core proceeding. And because this dispute 'stems from the bankruptcy itself,' the Court has the constitutional authority to enter a final order."); *Galloway v Bond, Botes & Stover, P.C.*, 597 F. Supp. 2d 676 (S.D. Miss. 2008)(legal malpractice claim against bankruptcy attorney for failing to amend bankruptcy schedules to include a personal injury suit that was an asset of the estate was a "core" proceeding "arising in" a case under title 11); *Tanamor v. Chang Law Group LLC* (*In re Tanamor*), No. 13-00202, 2013 WL 3938978 (Bankr. D. Md., July 31, 2013)(court has "arising in" jurisdiction to hear legal malpractice claim); *Jackson v. Wessel* (*In re Jackson)*, 118 B.R. 243, 244–245 (E.D. Pa. 1990) (concluding that claim of malpractice against debtor's bankruptcy attorneys for advising the debtors to file bankruptcy when they had sufficient assets to cure the defaults, and for various additional acts of negligence in the course of the bankruptcy, qualified as "arising in" the bankruptcy case).

Moreover, in its original motion to dismiss signed by its counsel of record, Recovery Law Group admitted that *"[t]his is a core proceeding* under 28 U.S.C § 157(B)(2)(A) and (O) *as it arises in a case under title 11* and concerns the administration of the estate." (Adv. Dkt. No. 17, ¶ 1) (emphasis added). Recovery Law Group's supplemental brief also contains the same assertion (Adv. Dkt. No. 34,

¶ 1).  This Court relies on these admissions to further establish that this Court has "arising in" jurisdiction over Plaintiffs' legal malpractice claim.  *See* Fed. R. Bankr. P. 9011 adopting Fed. R. Civ. P. 11(b)(a signature is a certification that to the best of the signor's knowledge, information, and belief, formed after a reasonable inquiry, the factual contentions have factual support); *Epixtar Corp. v. McClain & Co*. (*In Re Epixtar Corp*.), 414 B.R. 813, 817-18 (S.D. Fla. 2009) ("Having taken the position at earlier stages of the bankruptcy that this is a core proceeding, the Defendants are hard-pressed to argue otherwise at this juncture. Accordingly, the Court concludes this is a core proceeding.")

### d.  Civil Proceedings 'Related To' Case Under Title 11

Finally, even if Plaintiffs' legal malpractice claim is not a civil proceeding "arising in" a case under title 11, this Court nevertheless has subject matter jurisdiction over this claim based on "related to" jurisdiction.  The test for "related to" jurisdiction is "whether the outcome of that [civil] proceeding could conceivably have any effect on the estate being administered in bankruptcy. . . . In other words, there is 'related to' jurisdiction if the *outcome* of the proceeding could *conceivably* 'alter the debtor's rights, liabilities, options, or freedom of action (either positively or negatively)' or otherwise impact 'the handling and administration of the bankruptcy estate.'" *Giese v. Lexington Coal Co. (In re HNRC Dissolution Co.)*, 761

Fed. App'x 553, 559-60 (6ᵗʰ Cir. 2019) (internal citations omitted, emphasis in original).

In this case, as part of a global settlement supported by New Home Plate, Debtors' largest creditor, and approved by this Court, the parties entered into a settlement agreement whereby *any* net recoveries from the prosecution of the § 526 claim *and* the legal malpractice claim brought against Movants would be shared equally by Debtors and the bankruptcy estate (Dkt. No. 221). This sharing of the recovery renders any recovery an asset of the estate and confers "related to" jurisdiction on the Court. *Evangelista v. Silver (In re Silver)*, 649 B.R. 18, 24 (Bankr. E.D. Mich. 2023). In *Silver*, this Court stated:

> Great Lakes was granted derivative standing to pursue all of the claims in the Trustee's complaint, including the conversion claims, under an agreement whereby Great Lakes would fund and prosecute the litigation and a percentage of any net recoveries in the case would inure directly to the benefit of the bankruptcy estate. Adv. P. Dkt. No. 205, at 8 (Exhibit A). In this way, any recoveries obtained by Great Lakes on the conversion claims will unquestionably "alter the debtor's rights, liabilities, options, or freedom of action (either positively or negatively) and which in any way impacts upon the handling and administration of the bankrupt estate . . . ."
>
> Moreover, because Jason Silver guaranteed the obligations of Silver's Jewelry and Loan to Great Lakes, and Great Lakes obtained a non-dischargeable judgment against Jason Silver personally, Great Lakes is the largest unsecured creditor in Jason Silver's bankruptcy. To the extent that Great Lakes receives the remaining net recoveries after payments to the Trustee, such net recoveries will reduce Great Lakes' claims against the estate resulting in greater distributions to other creditors. Great Lakes' receipt of a portion of the net recoveries will again "alter the debtor's rights, liabilities, options, or freedom of action (either

positively or negatively) and which in any way impacts upon the handling and administration of the bankrupt estate . . . ." For these reasons, this Court has "related to" jurisdiction over the remaining conversion claims.

The Court's conclusion that it has "related to" jurisdiction is buttressed by the Sixth Circuit's decision in *Church Joint Venture, L.P. v. Blasingame (In re Blasingame)*, 920 F.3d 384 (6th Cir. 2019). There, the Trustee sold a cause of action outright to Church for a lump sum payment and a reduction of Church's claim against the bankruptcy estate. The Sixth Circuit recognized that, once an asset is sold, "the proceeds of that sale increase the bankruptcy estate, but the sale also means that the bankruptcy trustee gives up its right to sue based on that cause of action. Thus, the cause of action can no longer affect the value of the bankruptcy estate, which means the bankruptcy court no longer has jurisdiction over it." *Id*. at 389. The court went on to note that, in contrast, where the estate continues to hold an interest in the outcome of the litigation, the value of the bankruptcy estate can be affected, and "related to" jurisdiction is retained. *See Id.*

*Id.* at 24.

The situation in this case is substantially identical to that presented in *Silver*. Here, pursuant to the Court-approved settlement agreement (Dkt. No. 221), any net recoveries resulting from either the prosecution of the legal malpractice claim or the § 526 claim will be shared equally by Debtors and the estate and, therefore, any recoveries obtained on the legal malpractice claim will unquestionably alter Debtors' "rights, liabilities, options, or freedom of action (either positively or negatively) and will impact upon the handling and administration of the bankrupt estate." *Id.*  For these reasons, and as *Church Joint Venture, L.P. v. Blasingame (In re Blasingame)*,

920 F.3d 384 (6th Cir. 2019)("Blasingame I")[18] instructs, this Court, at the very least, has "related to" jurisdiction over Plaintiffs' legal malpractice claim.[19]

In their Motion to Dismiss, Movants argue that this Court lacks subject matter jurisdiction over Plaintiffs' legal malpractice claim because it is not property of the estate, although Movants apparently concede that the Court has subject matter jurisdiction over Plaintiffs' claim under § 526 of the Bankruptcy Code. According to Movants, whether a legal malpractice claim is property of the bankruptcy estate depends on when it accrues under state law and, under Michigan law, such a claim accrues when the attorney's representation ends. *Kremer v. Dailey*, No. 358978, 2022 WL 12084957 (Mich. Ct. App., October 20, 2022). Because Recovery Law Group's representation ended post-petition, Movants contend that Plaintiffs' legal malpractice claim also accrued post-petition and, therefore, any recovery on this claim is not property of the estate, citing *Church Joint Venture, L.P. v. Blasingame (In re Blasingame)*, 986 F.3d 633 (6th Cir. 2021)*("Blasingame II")*. Consequently,

---

[18] This Court notes that there are two separate *Blasingame* cases referenced in this opinion: the one cited in the *Silver* case, 920 F.3d 384 *("Blasingame I")* and the one cited by Defendants, 986 F.3d 633 *("Blasingame II")*.

[19] "Because these three categories 'operate conjunctively to define the scope of jurisdiction' under § 1334(b), it is not necessary to distinguish between them for the purposes of determining jurisdiction and the court need only 'determine whether a matter is at least 'related to' the bankruptcy.'" *HNRC Dissolution*, 761 Fed. App'x at 559-60 (internal citations omitted). Further, because the Court finds that it has 'arising in' and 'related to' jurisdiction, it is unnecessary to consider whether the Court also has supplemental jurisdiction pursuant to 28 U.S.C. § 1367.

Movants conclude that this Court lacks subject matter jurisdiction over the legal malpractice claim because it is not part of the bankruptcy estate (Adv. Dkt. No. 17, Motion to Dismiss, p. 4-5).

This Court finds that Movants' reliance on *Blasingame II* is misplaced as the *Blasingame* opinion does not address a bankruptcy court's subject matter jurisdiction over a legal malpractice claim at all. Rather, *Blasingame II* addressed only when a malpractice claim accrues under Tennessee law, holding that the malpractice claim at issue accrued post-petition when the injury was discovered. *Blasingame II*, 986 F.3d at 641. Here, as explained above, this Court has "arising under" jurisdiction over Plaintiffs' § 526 claim and "arising in" and/or "related to" jurisdiction over Plaintiffs' legal malpractice claim. The Court's jurisdiction is not dependent on when the Plaintiffs' legal malpractice claim accrued and *Blasingame II* does not instruct otherwise.

Movants further argue that "[a] legal malpractice action does not 'arise under' the Bankruptcy Code, and it is not 'related to' a bankruptcy case merely because the attorney represented debtors in connection with a bankruptcy case." (Adv. Dkt. No. 34, ¶ 12.) According to Movants, "the fact is the malpractice claim of the Plaintiffs is in fact a 'non-core' matter and the bankruptcy court therefore lacks subject matter jurisdiction to render a final ruling on the crux of the plaintiffs' adversary complaint." (Adv. Dkt. No. 34, Supplemental Brief, p. 3). For this argument,

Movants' rely on *Hart v. Logan (In re Hart)*, 326 B.R. 901 (BAP 6th Cir. 2005)(table) No. 05-8001, 2005 WL 1529581 (BAP 6th Cir., June 24, 2005), an unpublished decision by the Sixth Circuit Bankruptcy Appellate Panel.  In *Hart*, the court held that:

> "[C]laims will be considered 'related to' the ... bankruptcy proceeding if 'the outcome of that proceeding could *conceivably* have any effect on the estate being administered in bankruptcy'" "Stated another way, a claim is 'related to' the bankruptcy proceeding if it would have affected the debtor's rights or liabilities."  A legal malpractice action does not "arise under" the Bankruptcy Code, and it is not "related to" a bankruptcy case *merely* because the attorney represented debtors in connection with a bankruptcy case.

*Id*. at *4 (citations omitted)(emphasis added).

This Court finds Movants' reliance on *Hart* misplaced as well.  First, the Court finds that it has "arising in" jurisdiction over the legal malpractice claim for the reasons set forth in the myriad opinions cited above.  Moreover, as also detailed above, the Court has "related to" jurisdiction over the malpractice claim.  Again, as part of a global settlement previously approved by this Court, the Trustee and Debtors entered into a settlement agreement whereby any net recoveries from the prosecution of the § 526 claim *and* the legal malpractice claim brought against Movants would be shared equally by Debtors and the bankruptcy estate (Dkt. No. 221).  This sharing of the recovery renders any recovery an asset of the estate and also confers "related to" jurisdiction on the Court.  Simply put, unlike *Hart*,

Plaintiffs' legal malpractice claim is based on much more than the *mere* fact that Movants represented Debtors in connection with their bankruptcy case.

Finally, Movants' insistence that the Court somehow lacks subject matter jurisdiction over the legal malpractice claim because it is "non-core" is simply wrong. The distinction between "core" and "non-core" proceedings under 28 U.S.C. § 157 determines a bankruptcy court's statutory authority to enter final judgments: final judgments in most "core" proceedings can be entered by a bankruptcy court while final judgments in "non-core" proceedings, absent consent, must be entered by the district court. *HNRC Dissolution*, 761 F. App'x at 561; *see also Wellness Int'l Network, Ltd. v. Sharif*, 575 U.S. 665, 670 (2015). "*That allocation does not implicate questions of subject matter jurisdiction.*" *HNRC Dissolution,* 761 F. App'x at 560, quoting *Stern v. Marshall*, 564 U.S. 462, 480 (2011) (emphasis added). Moreover, as previously explained, the legal malpractice claim is a claim "arising in" a case under title 11 and, for this reason, the legal malpractice claim is a "core" claim. *Murray v. Willkie Farr & Gallagher LLP*, 654 B.R. at 476.

### B. Abstention is Not Appropriate in this Case.

Although Movants did not file a formal motion to abstain, the Court will nevertheless address the abstention request in Movants' Supplemental Brief as a

motion seeking permissive abstention under 28 U.S.C. §1334(c)(1).[20] Having

considered Movants' arguments concerning abstention, this Court finds that

abstention is not appropriate in this case.

Section 1334(c)(1) permits a bankruptcy court to abstain from hearing a

proceeding over which the court has subject matter jurisdiction, based on any one or

more of the following grounds: (1) "in the interest of justice;" or (2) "in the interest

of comity with State courts;" or (3) "in the interest of ... respect for State law."

*Hoffman v. Ondrajka (In re Ondrajka)*, 657 B.R. 217, 227 (Bankr. E.D. Mich. 2024).

As described in *Ondrajka*, the decision whether to abstain is aided by an analysis of

13 non-exclusive decisional criteria:

> 1) the effect or lack of effect on the efficient administration of the
> estate if a court abstains; 2) the extent to which state law issues
> predominate over bankruptcy issues; 3) the difficulty or unsettled
> nature of the applicable state law; 4) the presence of a related
> proceeding commenced in state court or other non-bankruptcy court;
> 5) the jurisdictional basis, if any, other than 28 U.S.C. § 1334; 6) the
> degree of relatedness or remoteness of the proceeding to the main
> bankruptcy case; 7) the substance rather than form of an asserted
> "core" proceeding; 8) the feasibility of severing state law claims
> from core bankruptcy matters to allow judgments to be entered in
> state court with enforcement left to the bankruptcy court; 9) the
> burden of the bankruptcy court's docket; 10) the likelihood that the
> commencement of the proceeding in bankruptcy court involves
> forum shopping by one of the parties; 11) the existence of a right to
> a jury trial; 12) the presence in the proceeding of nondebtor parties;
> and 13) any unusual or other significant factors.

---

[20] Mandatory abstention is not applicable here because, among other reasons, there
is no pending state court action. *Palltronics, Inc. v. PALIoT Solutions, Inc. (In re
Lightning Technologies, Inc.)*, 647 B.R. 76, 100 (Bankr. E.D. Mich. 2022).

*Id.* at 228. This non-exclusive list does not require a mechanical application of each factor. Rather, it provides a starting point for a permissive abstention analysis. *Id.*

After considering the *Ondrajka* factors, this Court finds that these factors militate strongly against abstention. More specifically, the negative effect on the efficient administration of this estate if the court abstains, the absence of any related state court proceeding, the close degree of relatedness of this adversary proceeding to the main bankruptcy case, the substance of the related "core" § 526 count, and the infeasibility of severing the malpractice claim from the core § 526 claim to allow judgments to be entered in state court with enforcement left to the bankruptcy court all convince the Court that abstention would be inappropriate here. There is also the consideration that dismissing the complaint could jeopardize Plaintiffs' ability to bring a legal malpractice claim in state court due to the possible expiration of the applicable statute of limitations.

In addition to the instant adversary proceeding, the United States Trustee filed a Motion for Sanctions against Movants as well as other defendants in the main bankruptcy case (Case No. 20-31468) alleging, *inter alia*, multiple, repeated violations of § 526 of the Bankruptcy Code, and multiple, repeated violations of §329 of the Bankruptcy Code. A significant aspect of the United States Trustee's Motion includes allegations of negligence and legal malpractice (Dkt. No. 205). Responses to the United States Trustee's Motion were filed by Movants and other

defendants in this adversary proceeding (Dkt. Nos. 206, 211). Because there are many overlapping legal and factual issues in the United States Trustee's Motion for Sanctions and this adversary proceeding, and in an effort to give Defendants all of the robust protections afforded defendants in adversary proceedings under the Federal Rules of Civil Procedure, incorporated into bankruptcy adversary proceedings by the Federal Rules of Bankruptcy Procedure, the Court entered an order directing that the United States Trustee's Motion for Sanctions be governed by Fed. P. Bankr. P. 7001, *et seq.* The United States Trustee thereafter revised its Motion for Sanctions and, although it is still part of the main bankruptcy case, filed it as a "complaint" with separate numbered paragraphs pursuant to the Court's direction. *See* Fed. R. Civ. P. 10; Fed. R. Bankr. P. 7010. Given the overlapping nature of the United States Trustee's and Plaintiffs' Complaints, it remains the intention of this Court to jointly administer these two cases for discovery, pretrial, and trial purposes.[21]

_____

[21] Because the Court finds that the legal malpractice claim is a "core" claim arising in a case under title 11, the Court has the authority to enter a final judgment in connection with this claim. Movants may disagree, but they have not filed a motion to withdraw the reference with respect to Plaintiffs' legal malpractice claim, and the District Court is unlikely to grant such a motion at this time. Generally, it is the practice of our District Court "to permit…the Bankruptcy Judge to manage the pre-trial phase of the litigation, with this [District] Court revisiting the matter of withdrawal if and when the case is ready for trial." *United Solar Ovonic v. Ontility (In re Energy Conversion Devices, Inc.)*, No. 12-04917, 2012 WL 5383165, *2 (E.D. Mich., October 26, 2012)(citation omitted)(Rosen, C.J.).

The actions of Movants throughout this almost five-year saga are at the very heart of both the United States Trustee's and Plaintiffs' Complaints, and, as noted, both contain substantial, overlapping issues of law and fact. This Court has gained a familiarity with this case and the legal and factual issues underlying this adversary proceeding which a state court simply will not have. And while there is overlap in the relief sought in both Complaints, Plaintiffs have the right to prosecute their own case and cannot be forced to rely on an unrelated third-party, here the United States Trustee, to prosecute that claim for them. Therefore, this Court would have to retain Plaintiffs' § 526 count even were the Court inclined to dismiss Plaintiffs' legal malpractice count.

Other factors similarly militate against abstention. The myriad overlapping issues of law and fact create a significant risk of inconsistent rulings between this Court and any state court adjudicating only the legal malpractice claim. And even with respect to the legal malpractice claim, substantive issues of bankruptcy law and procedure will have to be considered in determining the elements of a legal malpractice action against Debtors' bankruptcy attorneys. While bankruptcy issues are generally foreign to state courts, they are issues which this Court and our District Court have specialized knowledge and familiarity. From an administrative efficiency perspective, the sole basis for Movants' abstention request, it makes no

sense to dismiss this adversary proceeding in favor of an as-yet unfiled state court action.

In addition to the absence of any administrative efficiencies, dismissal of the complaint could seriously prejudice Plaintiffs' ability to prosecute the legal malpractice claim in another venue. If Plaintiffs are forced to file a new complaint in state court, Movants will almost certainly argue in state court that the statute of limitations has expired on the legal malpractice claim. Whether the pendency of this adversary proceeding would toll the statute of limitations for bringing a legal malpractice action in state court is an uncertain, fact specific, and unnecessary road to travel. *See Farrell v. Automobile Club of Michigan*, 870 F.2d 1129 (6th Cir. 1989). As discussed below, Plaintiffs' legal malpractice claim was timely filed in this Court. There is no justification for jeopardizing Plaintiffs' malpractice claim in favor of an as yet unfiled state court action, especially when the alleged benefits of abstention are, at best, ephemeral, or more likely, non-existent.

### C. Plaintiffs' Legal Malpractice Claim is Not Barred by the Statute of Limitations.

The Movants' second argument is that Debtors' legal malpractice claim should be dismissed because the statute of limitations for malpractice claims expired prior to the filing of this adversary complaint.

Under Michigan law, the applicable period of limitations for professional malpractice claims, including legal malpractice, is two years from the accrual of the claim. MCL § 600.5805(1) and (8). A legal malpractice action accrues for statute of limitations purposes "at the time the [attorney] discontinues serving the plaintiff in a professional or pseudoprofessional capacity as to the matters out of which the claim for malpractice arose, regardless of the time the plaintiff discovers or otherwise has knowledge of the claim." MCL 600.5838(1).

Courts have found that an attorney "discontinues serving the plaintiff in a professional . . . capacity" for purposes of the accrual statute when: (1) the court or the client dismisses the attorney or the client retains substitute counsel; or (2) if no such dismissal/replacement occurs, the task the attorney was hired to perform is completed. *Beckett Family Rentals, LLC v. David & Wierenga, PC*, No. 316658, 2014 WL 6954144, *1 (Mich. Ct. App., December 9, 2014). Specifically, the *Beckett* court states:

> In general, an attorney's representation continues "until the attorney is relieved of that obligation by the client or the court." *Id*. Retention of replacement counsel is sufficient to prove that a client intended to terminate an attorney's representation. *Mitchell v. Dougherty*, 249 Mich. App 668, 684; 644 NW2d 391 (2002). Nevertheless, termination of an attorney-client relationship by implication based on retention of replacement counsel requires a finding that the intent of the plaintiff was to in fact to terminate his or her relationship with the defendant. *Id*. at 684–685. In addition, an attorney can effectively discontinue an attorney-client relationship by "completion of a specific legal service that the lawyer was retained to perform." *Kloian*, 272 Mich. App at 238 (citation omitted).

*Id.; See also, Kloian v. Schwartz*, 725 N.W.2d 671, 676 (Mich. Ct. App. 2006)("when an attorney is not dismissed by the court or the client, and substitute counsel is not retained, the attorney's service discontinues 'upon completion of a specific legal service that the lawyer was retained to perform.'"); *Maddox v. Burlingame*, 517 N.W.2d 816, 818 (Mich. Ct. App. 2006) (citations omitted)(an attorney discontinues service to a client "when relieved of the obligation by the client or the court . . . or upon completion of a specific legal service that the lawyer was retained to perform.").

In this case, Movants were contractually obligated to represent Debtors in their bankruptcy proceedings (Adv. Dkt. No. 9, ¶¶ 16, 24, 25) and, by virtue of their filing Debtors' bankruptcy petition, filing notices of appearance, and filing of documents on behalf of Debtors (Dkt. Nos. 1, 70, 79), became Debtors' attorneys of record. Movants were therefore obligated to continue to represent Debtors in their bankruptcy proceedings until they were relieved of that obligation by either Debtors or the Court or they completed the task for which they were hired. In this case, Movants were Debtors' counsel until May 18, 2022, when David W. Brown was retained to represent the Debtors as a result of Movants' apparent conflict of interest (Dkt. Nos. 139, 140). Consequently, Plaintiffs' malpractice claim accrued on May

18, 2022 and the legal malpractice count in the adversary proceeding filed on April

4, 2024 was timely filed within the applicable two-year statute of limitations.

Movants argue that a legal malpractice claim accrues on the attorney's "last

day of professional service" and that date may precede a formal dismissal of the

attorney. *Kremer v. Dailey*, 2022 WL 12084957, \*2 (Mich. Ct. App., Oct. 20, 2022)

*citing Gebhardt v. O'Rourke*, 510 N.W.2d 900, 903-4 (Mich. 1994) (although debtor

Kremer did not formally terminate his attorneys' representation, debtor's action

supported a finding that attorneys were no longer representing him); *See also, Ruff

v. Reising, Ethington, Barnes, Kisselle, P.C.,* 2012 WL 4475709, \*8 (Case No. 11-

CV-11110) (E.D. Mich., Sept. 27, 2012).  Movants argue that their "last day of

professional service" was March 22, 2022 when Recovery Law Group, by Bedford,

filed a Stipulation Extending Time to respond to Debtors' Motion to Avoid Lien

(Dkt. No. 120).  Movants argue that, after this date, neither Recovery Law Group

nor Bedford engaged in any further direct representation of Debtors.  Because this

date is more than two years before the adversary complaint was filed, Plaintiffs' legal

malpractice claim is time-barred.

This Court rejects Movants' argument, finding it disingenuous for two

reasons.  First, as a matter of law, while the "last day of professional service" is the

date used for determining the accrual of a malpractice claim, *Kremer* is clear that

courts consider the date the attorney is dismissed by the court or the client as the

primary date for the accrual of a malpractice claim. Only when the circumstances require that some other date be used does the attorney's service end "upon completion of a specific legal service that the lawyer was retained to perform." *Kremer v. Dailey*, 2022 WL 12084957, *2 (Mich. Ct. App., Oct. 20, 2022) *citing Maddox v. Burlingame*, 517 N.W.2d at 818. In this case, Recovery Law Group was dismissed by the client and the Court on May 18, 2022 when David Brown was substituted in as Debtors' counsel. The legal services Recovery Law Group had been hired to perform -- the filing of Debtors' bankruptcy and bringing the bankruptcy case to its conclusion – simply had not been completed.

This Court also finds that Movants' reliance on the *Ruff* case is misplaced because the facts of *Ruff* are very different from case at bar. In *Ruff*, the attorney provided his last professional service for his client when he settled an intellectual property matter in April 2008. The attorney-client relationship, however, was never formally terminated. In November 2008, the attorney sent his client a closure letter which confirmed that the attorney-client relationship had ended with the settlement. The court found that the letter did not qualify as a "professional service" so as to extend the accrual date of the statute of limitations. In this case, however, Movants continued to file pleadings for Debtors until about a month prior to their being formally replaced as Debtors' counsel, and Recovery Law Group had not completed

its representation of Debtors, as Debtors are, and have been, in an active bankruptcy case.

Second, Movants' factual argument is equally disingenuous. Even if this Court were to accept Movants' legal assertion, Movants were clearly representing Debtors subsequent to the March 22, 2022 date they reference. By way of example only, Movants were representing Debtors on April 13, 2022 when they executed the Stipulation to Adjourn Hearing on Debtors' Motion to Avoid Lien and Extend Time for Office of the United States Trustee and Chapter 7 Trustee to Respond to Debtors' Motion to Avoid Lien (Dkt. No. 130). On April 20, 2022, Recovery Law Group, by Bedford, appeared at a hearing in this Court and specifically stated on the record that she was appearing "on behalf of the Debtors." (Dkt. No. 133, Hearing Recording, 00:19-00:23). The Court docket also shows that Movants filed a notice of Debtors' change of address and an Amended Notice of Debtors' change of address on April 27, 2022 (Dkt. No. 134, 135). Further, Recovery Law Group had not yet completed its representation of Debtors prior to May 18, 2022, when new counsel was appointed. For example, Recovery Law Group's Lien Avoidance Motion (Dkt. No. 113), filed on behalf of Debtors, was still pending at that time. Filing documents in a case and pursuing filed motions is evidence of representation and demonstrates Debtors' reliance on Movants to represent them until Movants were dismissed as

counsel. For these reasons, Movants' representation clearly continued within the two-year lookback period.

## III.

## CONCLUSION

Accordingly, for the reasons set forth above, the Motion to Dismiss Plaintiff's Complaint is DENIED.

**Signed on August 9, 2024**

/s/ Joel D. Applebaum

**Joel D. Applebaum**
**United States Bankruptcy Judge**