## UNITED STATES BANKRUPTCY COURT
## EASTERN DISTRICT OF MICHIGAN
## SOUTHERN DIVISION

In re:

John Frederick Shastal, Jr.                  Case No. 20-31468-jda
Kimberly Ann Shastal,                        Chapter 7
                                             Hon. Joel D. Applebaum
　　　Debtors.
_____/

SAMUEL D. SWEET, Chapter 7
Trustee for the Estate of Debtors,
John Frederick Shastal Jr. and
Kimberly Ann Shastal, and
JOHN FREDERICK SHASTAL,
an individual, and KIMBERLY
ANN SHASTAL, an individual,

　　　Plaintiffs,

v.                                           Adv. No. 24-03033-jda

MAJORS LAW, PLLC,
a Professional Limited Liability
Company, SHEENA L. MAJORS,
an individual, DESIRAE BEDFORD,
an individual and RECOVERY LAW GROUP,
a Professional Corporation,

　　　Defendants.
_____/

## **OPINION AND ORDER DENYING MOTION FOR STAY OF PROCEEDINGS PENDING APPEAL FILED BY RECOVERY LAW GROUP AND DESIRAE BEDFORD**

This matter is before the Court on the Motion for Stay of Proceedings Pending Appeal ("Motion for Stay") filed by defendants Recovery Law Group and Desirae Bedford (the "Movants"). For the following reasons, the Motion for Stay is DENIED.

## I.     INTRODUCTION

The gravamen of the instant Motion for Stay has twice been addressed at length, first in the Court's Opinion Denying Motion to Dismiss Adversary Proceeding (A.P. Dkt. No. 44) and, again, in the Court's Opinion and Order Denying Amended Motion for Reconsideration (A.P. Dkt. No. 60). Movants' argument is simply this: the legal malpractice claim filed by Plaintiffs in this adversary proceeding accrued post-petition and, therefore, it is not property of the estate. Because the legal malpractice claim is not property of the estate, it necessarily follows that Plaintiffs lack standing[1] to pursue it and this Court lacks jurisdiction to adjudicate it. According to Movants, therefore, they meet the standard to obtain a stay of this adversary proceeding pending appeal. *See* Fed. R. Bankr. P. 8007(a)(1)(D) ("the suspension or continuation of proceedings in a case . . . .") As discussed in more detail below, however, Movants cannot meet the standard for obtaining a stay pending appeal for two reasons. First, Movants are appealing a denial of a motion to dismiss adversary

---

[1] In the Motion for Stay, Movants claim the "Trustee lacks jurisdiction and standing to bring a legal malpractice action" (Motion for Stay, ¶ 6), but this is a misnomer. Jurisdiction is a concept affecting a court, not a party.

proceeding which is not a final order appealable as of right. Movants' appeal, therefore, is interlocutory, but Movants have utterly failed to satisfy the requirements for seeking or obtaining leave to appeal. 28 U.S.C. § 158(a)(3); Fed. R. Bankr. P. 8004(a)(2) and (b). Second, as explained at length in the Court's Opinion Denying Motion to Dismiss, this Court has two bases for asserting jurisdiction over the legal malpractice claim, *neither of which are impacted by when the claim arose*: "arising in" jurisdiction and, if that is lacking, "related to" jurisdiction. Because this Court has jurisdiction over the legal malpractice claim, Movants cannot show a likelihood of success on the merits or, indeed, any of the other factors that might support a stay of proceedings.

## II. THE APPEAL OF THE DENIAL OF A MOTION TO DISMISS IS INTERLOCUTORY AND LEAVE TO APPEAL HAS NEITHER BEEN SOUGHT NOR GRANTED

As previously noted, Movants are appealing this Court's Opinion and Order denying their Motion to Dismiss Adversary Proceeding (A.P. Dkt. Nos. 44, 45). An order denying a motion to dismiss, even one allegedly involving subject matter jurisdiction, is not a final order appealable as of right. *Simon v. Lis (In re Graves)*, 483 B.R. 113, 115-116 (E.D. Mich. 2012) (Rosen, C.J.). Taking an interlocutory appeal requires leave of the court, 28 U.S.C. § 158(a)(3), which, in turn, requires a motion for leave to appeal in compliance with Fed. R. Bankr. P. 8004(a)(2) and (b).

Because Movants have failed to seek leave to appeal from an interlocutory order, the Motion for Stay must be denied.[2]

### III. MOVANTS HAVE NOT SATISFIED THE REQUIREMENTS FOR OBTAINING A STAY PENDING APPEAL

Notwithstanding that Movants are attempting to appeal an interlocutory order without seeking leave of the Court or complying with Fed. R. Bankr. P. 8004(a)(2) and (b), and the jurisdictional challenges that may pose for the District Court, this Court will address the substance of the Motion for Stay. In determining whether to grant a stay pending appeal, the Court must consider the same four factors that are traditionally considered in evaluating the granting of a preliminary injunction. *In re Skymark Properties II, LLC*, 597, 623 (Bankr. E.D. Mich. 2019). "These well-known factors are: (1) the likelihood that the party seeking the stay will prevail on the merits of the appeal; (2) the likelihood that the moving party will be irreparably harmed absent a stay; (3) the prospect that others will be harmed if the court grants the stay; and (4) the public interest in granting the stay. These factors are not prerequisites that must be met, but are interrelated considerations that must be balanced together." *Id*.

---

[2] For these reasons, among others, Plaintiffs have filed a motion to dismiss Movants' appeal which is currently pending before the District Court. The prospect that the appeal will be dismissed further militates against staying proceedings in this case.

## A. Movants are Unlikely to Prevail on the Merits.

As the *Skymark* court noted, the likelihood of success on the merits of the appeal is perhaps the most important factor.  To prevail, Movants must show a likelihood of reversal by demonstrating a likelihood that this Court lacks jurisdiction over the legal malpractice claim.  They attempt to do so by arguing that, under the Sixth Circuit's decision in *Church Joint Venture, L.P. v. Blasingame (In re Blasingame)*, 986 F.3d 633 (6th Cir. 2021), Plaintiffs' legal malpractice claim arose post-petition and is not property of the estate.  According to Movants, if the claim is not property of the estate, this Court lacks jurisdiction to adjudicate it.[3]

As explained in the Court's Opinion Denying Motion to Dismiss Adversary Proceeding, this Court has both "arising in" and "related to" jurisdiction over the legal malpractice claim, either of which is sufficient to allow this Court to adjudicate that claim.  *Giese v. Lexington Coal Co. (In re HNRC Dissolution Co.)*, 761 Fed.

---

[3] Movants also argue that Plaintiffs lack standing to pursue this claim.  However, at a constitutional minimum, standing requires "(1) an injury in fact—meaning the invasion of a legally protected interest that is (a) concrete and particularized, and (b) actual or imminent, not conjectural or hypothetical; (2) a causal relationship between the injury and the challenged actions—meaning that the injury is fairly traceable to the defendants' conduct; and (3) a likelihood that the injury will be redressed by a favorable decision—meaning that the prospect of obtaining relief from a favorable ruling is not speculative." *Williams v. Redflex Traffic Systems, Inc*, 582 F.3d 617, 620 (6th Cir. 2009), quoting *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560–61 (1992).  The elements to establish standing were more than adequately alleged in Plaintiffs' Amended Complaint and, because this appeal stems from a motion to dismiss, the Court may not consider matters beyond the complaint.  *Winget v. JP Morgan Chase Bank, N.A.*, 537 F.3d 565, 576 (6th Cir. 2008).

App'x 553, 559-60 (6th Cir. 2019) ("Because these three categories 'operate conjunctively to define the scope of jurisdiction' under § 1334(b), it is not necessary to distinguish between them for the purposes of determining jurisdiction and the court need only 'determine whether a matter is at least 'related to' the bankruptcy.'") (internal citations omitted).

As used in 28 U.S.C. § 1334(b), the term civil proceedings "arising in" a case under title 11 means proceedings that, by their very nature, could arise only in bankruptcy cases. These "arising in" proceedings "are not based on any right expressly created by title 11, but nevertheless, would have no existence outside of the bankruptcy." *In re Nu-Case Step & Supply, Inc.*, 639 B.R. 440, 446-447 (Bankr. E.D. Mich. 2021). As innumerable courts have held under similar facts, this Court has "arising in" jurisdiction over claims of legal malpractice arising from a defendant's representation during a bankruptcy proceeding because, among other reasons, such claims arise only because of the bankruptcy, they involve attorneys appointed by or under the supervision of the bankruptcy court, and they invoke a debtor's right to have their bankruptcy estate administered properly. *See, e.g., Murray v. Willkie Farr & Gallagher LLP (In re Murray Energy Holdings)*, 654 B.R. 469, 476 (Bankr. S.D. Ohio 2023)("Court has arising-in jurisdiction to hear and determine this matter under 28 U.S.C. § 1334(b). . . . Given that the Court has arising-in jurisdiction, this is a core proceeding. And because this dispute 'stems

from the bankruptcy itself,' the Court has the constitutional authority to enter a final order."); *Galloway v Bond, Botes & Stover, P.C.*, 597 F. Supp. 2d 676 (S.D. Miss. 2008)(legal malpractice claim against bankruptcy attorney for failing to amend bankruptcy schedules to include a personal injury suit that was an asset of the estate was a "core" proceeding "arising in" a case under title 11); *Tanamor v. Chang Law Group LLC* (*In re Tanamor)*, No. 13-00202, 2013 WL 3938978 (Bankr. D. Md., July 31, 2013)(court has "arising in" jurisdiction to hear legal malpractice claim); *Jackson v. Wessel* (*In re Jackson)*, 118 B.R. 243, 244–245 (E.D. Pa. 1990) (concluding that claim of malpractice against debtor's bankruptcy attorneys for advising the debtors to file bankruptcy when they had sufficient assets to cure the defaults, and for various additional acts of negligence in the course of the bankruptcy, qualified as "arising in" the bankruptcy case). In light of the great weight of authority holding that this Court has "arising in" jurisdiction over the legal malpractice claim, Movants cannot show a substantial likelihood of prevailing on the merits of their appeal and their Motion for Stay on the legal malpractice claim must be denied.

Moreover, even were this Court to lack "arising in" jurisdiction over the legal malpractice claim, this Court has "related to" jurisdiction over that claim and, again, the Motion for Stay must be denied.

The test for "related to" jurisdiction is "whether the outcome of that [civil] proceeding could conceivably have any effect on the estate being administered in bankruptcy. . . . In other words, there is 'related to' jurisdiction if the *outcome* of the proceeding could *conceivably* 'alter the debtor's rights, liabilities, options, or freedom of action (either positively or negatively)' or otherwise impact 'the handling and administration of the bankruptcy estate.'" *Giese v. Lexington Coal Co. (In re HNRC Dissolution Co.)*, 761 Fed. App'x at 559-60 (internal citations omitted, emphasis in original).

In this case, as part of a global settlement approved by this Court, the Trustee and Debtors entered into a settlement agreement whereby *any* net recoveries from the prosecution of the § 526 claim *and* the legal malpractice claim brought against Movants would be shared equally by Debtors and the bankruptcy estate (Dkt. No. 221). This sharing of the recovery renders any recovery on either claim an asset of the estate and confers "related to" jurisdiction on this Court. *Evangelista v. Silver (In re Silver)*, 649 B.R. 18, 24 (Bankr. E.D. Mich. 2023). The Court's conclusions in *Silver* were buttressed by the Sixth Circuit's decision in a different *Blasingame* opinion from the one relied upon by Movants. *Church Joint Venture, L.P. v. Blasingame (In re Blasingame)*, 920 F.3d 384 (6th Cir. 2019). There, the Trustee sold a cause of action outright to Church for a lump sum payment and a reduction of Church's claim against the bankruptcy estate. The Sixth Circuit recognized that, once

an asset is sold, "the proceeds of that sale increase the bankruptcy estate, but the sale also means that the bankruptcy trustee gives up its right to sue based on that cause of action. Thus, the cause of action can no longer affect the value of the bankruptcy estate, which means the bankruptcy court no longer has jurisdiction over it." *Id*. at 389. The Court went on to note that, in contrast, where the estate continues to hold an interest in the outcome of the litigation, the value of the bankruptcy estate can be affected, and "related to" jurisdiction is retained. *See Id.*

As explained in this Court's Opinion Denying Motion to Dismiss Adversary Proceeding, the situation in this case is substantially identical to that presented in *Silver*. Here, pursuant to the Court-approved settlement agreement (Dkt. No. 221), any net recoveries resulting from either the prosecution of the legal malpractice claim or the § 526 claim will be shared equally by Debtors and the estate and, therefore, any recoveries obtained on the legal malpractice claim will unquestionably alter Debtors' "rights, liabilities, options, or freedom of action (either positively or negatively) and will impact upon the handling and administration of the bankrupt estate." *Id.* For these reasons, and as *Church Joint Venture, L.P. v. Blasingame (In re Blasingame)*, 920 F.3d 384 (6th Cir. 2019) instructs, this Court, at the very least, has "related to" jurisdiction over Plaintiffs' legal malpractice claim and Movants are unable to demonstrate a substantial likelihood of prevailing on appeal.

**B. Denial of a Stay of Proceedings Will Not Irreparably Harm Movants**.

Movants argue that they will be irreparably harmed if a stay of the legal malpractice claim is not issued because Recovery Law Group:

> will face irreparable harm in the form of substantial financial penalties and damage to their professional reputation. RLG has steadfastly maintained any alleged malpractice that occurred in this matter, was due to the actions, inactions and individual incompetence of the co-defendant Sheena Majors, acting on her own accord. However, having to defend this adversary on its own as Majors has not even appeared will cause RLG to suffer significant costs of hours and related expenses and severe reputational harm as RLG represents hundreds of bankruptcy clients in Michigan . . . . The possible sanctions that could be imposed on RLG would be a devastating threat to their business operations and its existing client base.

Motion for Stay, Dkt. No. 82, p. 5.

It has long been held that the threat of irreparable harm "must be both certain and immediate, rather than speculative or theoretical." *Michigan Coalition of Radioactive Material Users, Inc. v. Griepentrog*, 945 F.2d 150, 154 (6th Cir. 1991). Here, the alleged irreparable harm, primarily reputational, assumes that Movants will be found liable for committing legal malpractice. Under that logic, no legal malpractice claim could ever be prosecuted. Moreover, the prospect of spending time (RLG is defending itself and so is not currently incurring legal fees) and expenses defending a colorable lawsuit is not irreparable harm. As the *Griepentrog* court noted, "[t]he key word in this consideration is irreparable. Mere injuries, however substantial, in terms of money, time and energy necessarily expended in the

absence of a stay, are not enough. The possibility that adequate compensatory or other corrective relief will be available at a later date, in the ordinary course of litigation, weighs heavily against a claim of irreparable harm." *Id.*, quoting *Sampson v. Murray*, 415 U.S. 61, 90 (1974).

Similarly, Movants' efforts to place the blame for any legal malpractice solely on Sheena Majors is insufficient to demonstrate irreparable harm. Ms. Majors was, by contract, a non-voting, non-equity partner/member of Recovery Law Group, who was subject to the general supervision of and reported to Nicholas Wajda, Owner and Managing Partner of the Los Angeles office, and took case direction supervision from Lindsay Kyser (Los Angeles office); Michael Reid (Managing Partner of the San Diego Office); and Travis Davis (San Diego office). In addition to Recovery Law Group's potential vicarious liability for the acts and/or omissions of Ms. Majors, Recovery Law Group's own conduct is squarely at issue in both the § 526 and legal malpractice claims. As detailed in the Court's Opinion Denying Motion to Dismiss Adversary Proceeding, there are issues of fact surrounding Recovery Law Group's direct acts and omissions including, but are not limited to the following:

- Recovery Law Group failed to amend the value of Debtors' Residence on Debtors' Schedules A and D, despite being apprised of the actual value of Debtors' Residence shortly after the bankruptcy filing.
- Recovery Law Group filed the Debtors' Mean Test Calculation Form, which was stricken by the Court on December 18, 2020 because an incorrect event code was used (Dkt No. 35).

Recovery Law Group never filed a corrected Means Test Calculation Form.

- Recovery Law Group failed to timely file Form 423, Certification About a Financial Management Course (Dkt. No. 20), despite two inquiries made by Ms. Shastal to Recovery Law Group (not to Ms. Majors) regarding the filing of this Form shortly after she learned of the necessity of this Form. Recovery Law Group did not file this form until fourteen months later on December 26, 2021.

- Recovery Law Group's failure to file Form 423 delayed Debtors' discharge, resulting in New Home Plate's lien attaching to the proceeds of the sale of Debtors' Residence and compromising Debtors' homestead exemption.

- Recovery Law Group failed to appear at both the continued meeting of creditors and the adjourned conversion hearing resulting in the denial of Debtors' Motion to Convert Case from Chapter 7 to Chapter 13. Recovery Law Group never filed a renewed motion to convert to avoid the sale of Debtors' Residence.

- Recovery Law Group failed to appear at the July 21, 2021 hearing on the Motion to Approve Compromise.

- Recovery Law Group failed to file an objection to the Trustee's Disbursement Motion which, if the Disbursement Motion were granted, would result in the loss of Debtors' homestead exemption.

- Recovery Law Group was given a second chance to object to the Disbursement Motion – the Trustee having filed an Amended Disbursement Motion so as to restart the deadline for objection – but again failed to effectively object despite Recovery Law Group's assurances to the Court at the hearing held on February 2, 2022 that it would respond immediately to the Amended Disbursement Motion and would perhaps also file a motion to avoid the lien.

- On February 6, 2022, Recovery Law Group filed a Motion to Extend Time to File a Response to the Amended [Disbursement] Motion which erroneously stated that the Amended Motion provided 21-day notice although the actual response time for this type of motion is 14 days.
- Recovery Law Group, in seeking to extend the time to file a response to the Amended Disbursement Motion, failed to request an expedited hearing on the matter, which was necessary to obtain an extension of time to object.
- On March 8, 2022, Recovery Law Group filed the Debtors' Motion to Avoid Lien and Allow Homestead Exemption ("Lien Avoidance Motion") which incorrectly stated Debtors' exemption as $60,000 even though Debtors listed their homestead exemption on Schedule C at $60,725.
- As a result of errors in Debtors' Schedules and Statement of Financial Affairs, among other documents, Creditor New Home Plate Lounge filed an adversary complaint seeking to revoke Debtors' discharges under 11 U.S.C. § 727. (Adv. No. 22-3013).

Even if the Court were to assume that Recovery Law Group has no vicarious liability for the conduct of Ms. Majors, having to defend against its own alleged malpractice in conducting the Shastals' underlying bankruptcy case is simply not irreparable harm. Any reputational injury that may be suffered by Recovery Law Group is, at present, speculative and dependent on the ultimate outcome of the litigation.

### C. Any Stay of Proceedings Will Necessarily Harm Debtors and Others.

Movants assert that "no identifiable harm will come to others if the stay is granted." Rather, Movants continue, "the real harm lies in allowing [this Court's]

decision to stand, as it risks creating confusion in bankruptcy proceedings and undermining the certainty needed for attorneys to provide effective legal counsel to debtors . . . . [and] create a chilling effect, deterring attorneys from accepting bankruptcy cases where they may feel, [sic] the legal boundaries of an alleged and potential malpractice can be manipulated." Motion for Stay, Dkt. No. 82, p. 6.

Movants' argument is just another way of saying that they are likely to prevail on appeal, a position this Court has already rejected. Moreover, it ignores the real and obvious harm delay will cause the Shastals and creditors of the Shastals' estate who have been embroiled in an admittedly mishandled bankruptcy proceeding for over four years. Moreover, the Court agrees with the concerns raised by Plaintiffs in their response to Movants' Motion for Stay that "[b]ecause memories fade and become less clear with time, any delay in proceeding with discovery relative to these issues will impair Plaintiffs' ability to prove their claim." Dkt. No. 95, p. 8.

### D. The Public Interest Does Not Favor a Stay in This Case.

Movants argue that the public interest favors a stay because "the public has a vested interest in ensuring access to competent bankruptcy attorneys." Motion for Stay, Dkt. No. 82, p. 6. The Court is confident that there are more than adequate competent bankruptcy counsel practicing in Michigan such that public access to them will not be impaired. In stark contrast, however, the public has a vital interest

in determining whether counsel handled an engagement competently, an issue that is at the center of this adversary proceeding.

Finally, Movants argue that their jury demand on the legal malpractice claim means this case will eventually have to be transferred to the District Court. The Court is not sanguine Movants are correct, particularly in light of the Court's holding that the legal malpractice claim is a core proceeding over which the Court has "arising in" jurisdiction. Even if Movants are correct, however, there is no motion to withdraw the reference pending and, as explained in the Court's Opinion Denying Motion to Dismiss, the District Court is unlikely to grant such a motion at this time. Generally, it is the practice of our District Court "to permit … the Bankruptcy Judge to manage the pre-trial phase of the litigation, with this [District] Court revisiting the matter of withdrawal if and when the case is ready for trial." *United Solar Ovonic v. Ontility (In re Energy Conversion Devices, Inc.)*, No. 12-04917, 2012 WL 5383165, *2 (E.D. Mich., October 26, 2012)(internal citation omitted)(Rosen, C.J.). Movants' quickest path to the District Court, assuming Movants are, in fact, entitled to a jury trial on the legal malpractice claim, is by denying the requested stay and proceeding promptly with pretrial discovery and related matters.

**ORDER DENYING MOTION TO STAY PROCEEDINGS**

Accordingly, for all of the above reasons,

IT IS HEREBY ORDERED that Movants' Motion for Stay of Proceedings Pending Appeal is DENIED.

Signed on October 7, 2024



/s/ Joel D. Applebaum

**Joel D. Applebaum**
**United States Bankruptcy Judge**