# UNITED STATES BANKRUPTCY COURT
## EASTERN DISTRICT OF MICHIGAN
### SOUTHERN DIVISION

In re:

John Frederick Shastal, Jr.
Kimberly Ann Shastal,

    Debtors.

_____/

SAMUEL D. SWEET, Chapter 7
Trustee for the Estate of Debtors,
John Frederick Shastal Jr. and
Kimberly Ann Shastal, and
JOHN FREDERICK SHASTAL,
an individual, and KIMBERLY
ANN SHASTAL, an individual,

    Plaintiffs,

v.

MAJORS LAW, PLLC,
a Professional Limited Liability
Company, SHEENA L. MAJORS,
an individual, DESIRAE BEDFORD,
an individual and RECOVERY LAW GROUP,
a Professional Corporation,

    Defendants.

_____/

Case No. 20-31468-jda
Chapter 7
Hon. Joel D. Applebaum

Adv. No. 24-3033

## OPINION GRANTING PLAINTIFFS' MOTION FOR PARTIAL SUMMARY JUDGMENT AS TO LIABILITY OF THE RECOVERY LAW GROUP FOR LEGAL MALPRACTICE

This matter is before the Court on Plaintiffs' Motion for Partial Summary Judgment as to the liability of Defendant Recovery Law Group for legal malpractice. Although the Complaint also named Majors Law PLLC, Sheena Majors, Desirae Bedford and Recovery Law Group, this Motion for Partial Summary Judgment was brought against Recovery Law Group only. (Dkt. 110, Motion, ¶ 1).[1]

This motion was set for hearing on February 26, 2025. The Court has determined that a hearing is unnecessary and the hearing is, therefore, canceled. E.D. Mich. LBR 9014-1(e). For the following reasons, Plaintiffs' Motion is GRANTED.

---

[1] All docket numbers refer to docket entries in the main bankruptcy case, Case No. 20-31468, unless otherwise indicated.

# I.

## FACTUAL BACKGROUND[2]

### A. Parties

Recovery Law Group is a domestic corporation formed in Nevada with offices and/or attorneys located throughout the country. (Dkt. Nos. 229, 230, ¶¶ 8, 10, 21). The managing partner of Recovery Law Group is Nicolas Wajda, who is also the owner of Recovery Law Group and the managing partner of its Los Angeles Office. (Dkt. Nos. 229, 230, ¶ 30).

Recovery Law Group maintains a website which states the following:

> With our in-depth legal understanding and years of experience, we have built our full arsenal of tools to assist you with your unique case.

> Your case is safe in the hands of our dedicated and experienced attorneys. Throughout our years of practice, we have understood the legal system and laws to the core, and we have brought together the strategies and legal systems in a way that helps us to protect consumers and resolve the problems of our clients, uniquely.

---

[2] Plaintiffs and Defendant each adopted the facts as set forth in this Court's Opinion Denying Defendants' Motion to Dismiss. (See, Adv. Proc. 24-3033, Dkt. Nos. 110, Brief, p. 2; 113, Brief, p. 2 ¶1 "Plaintiff has foregone a narration of the procedural history of this case, and accordingly, Defendants will do the same and proceed directly to the issues at hand.")(Henceforth, citations to Adv. Proc. 24-3033 will be referred to as "Adv.", unless otherwise indicated.) The facts in the Opinion Denying Defendants' Motion to Dismiss were set forth chronologically. However, as presented in this Opinion, they are organized in a fashion more suited to the issues raised Plaintiffs' Motion for Partial Summary Judgment. This Opinion also contains facts that have come to light since this Court's Opinion Denying the Motion to Dismiss was issued.

We can help you find the right option for preventing foreclosure, fighting for your home, making the payments due from the mortgage in a Chapter 13 Bankruptcy, or walking away for a fresh start.

Build your better and safer future with us. We connect you with reliable lawyers to help with foreclosure or bankruptcy depending on what situation is right for you.

We believe that each foreclosure case is unique from others. To find the most suitable solution for you, we need to learn about your case and situation to read between the lines and create a plan. With our solid guidance and appropriate legal presentation, you can save your beloved home or build a new one, as suitable for you and your family.

(Dkt. Nos. 229, 230, ¶ 26). The website further indicates that Recovery Law Group has two locations in Michigan; one is a PO Box in Ann Arbor and the other is a private home in Sterling Heights. (Dkt. Nos. 229, 230, ¶ 22).[3] Recovery Law Group is a "debt relief agency" as that term is defined in 11 U.S.C. § 101(12A). (Dkt. Nos. 229, 230, ¶ 12).

Sheena Majors ("Majors") is the principal of her own law firm, Majors Law, PLLC ("Majors Law"). On July 24, 2020, she was hired as a non-voting, non-equity partner/member of Recovery Law Group (Dkt. No. 205, Ex. 1, "Employment Agreement"). On August 24, 2020, Recovery Law Group, under Majors Law, filed John and Kimberly Shastals' chapter 7 bankruptcy.

---

[3] Recovery Law Group states that it is located in Royal Oak, Michigan (Adv. Proc. No. 24-3033, Dkt. No. 9, ¶ 13). According to an internet search performed on February 3, 2025, Recovery Law Group has a location at 418 North Main, 1st & 2nd Floors, Royal Oak, MI 48067, but that address is shared workspaces and a virtual office address.

Desirae Bradford is also a partner/member of Recovery Law Group. She filed a Notice of Appearance for Recovery Law Group in this case which became effective on January 5, 2022 (Dkt. No. 89).

John Shastal, now age 81, and Kimberly Shastal, now age 65 (together, the "Shastals" or "Debtors"), owned and resided in a three-bedroom, two-bath residence located at 4228 Mill St, North Branch, MI 48461 ("Residence"). The Shastals' then 26-year-old son, his fiancé, and their 3-year-old granddaughter lived with them at their Residence. The Shastals sought legal assistance from Recovery Law Group on how to best handle collection efforts on a state court judgment issued against them. Upon retaining Recovery Law Group, the Shastals became "assisted persons" as that term is defined by 11 U.S.C. § 101(3). (Dkt. Nos. 229, 230, ¶ 161).

Samuel Sweet ("Sweet") is the chapter 7 trustee for this case.

## B. **The Retainer Agreement**

The Shastals initially sought assistance from Recovery Law Group by communicating by telephone and email with Karen Kisch ("Kisch"). (Dkt. Nos. 229, 230, ¶ 62).[4] Kisch advised the Shastals that Recovery Law Group could aid them with debt relief.

---

[4] Karen Kisch is also known as Karen Kealy.

The Shastals hired Recovery Law Group by executing a Retainer Agreement on August 19, 2020, via Ms. Shastal's electronic signature. (Dkt. No. 205, Ex. 1, "Retainer Agreement"). The Retainer Agreement sets forth the fees as a "fully-earned, non-refundable flat fee of $1,835, which includes your filing fee of $335." The flat fee includes:

> the preparation of the bankruptcy petition and schedules and the handling of creditor communication . . . [and] all usual, ordinary and necessary services in a bankruptcy case such as yours, such as filing of the Petition, contact with the Chapter 7 Trustee, monitoring of the Court docket, and appearing with you at one 341(a) Meeting of Creditors hearing.

*Id.* at p.1, ¶ 3.

The Retainer Agreement excludes the following from the nonrefundable flat fee paid:

> litigation brought by a creditor or trustee to determine the dischargeable nature of a debt, objections to discharge, objections to claimed exemptions, representation in adversary proceedings, or other motions or hearings of any type, including, but not limited to, those to avoid liens on exempt property, actions undertaken by the Trustee with regard to your claimed exemptions or nonexempt assets, or examinations pursuant to Bankruptcy Rule 2004, unless said Motion or Hearing is being brought or scheduled directly as a result of an error or omission of this firm. Our representation of you in any said extraordinary matter will [be] done [] pursuant to a separately agreed upon fee arrangement between you and this firm.

*Id*. at ¶ 4.

The Retainer Agreement provides that any assistance with reaffirmation agreements will result in an extra charge, stating:

6

If we assist in the preparation of a reaffirmation agreement, which does not change the terms of your underlying security agreement with the creditor and there is no court appearance required for the approval of that agreement, our fee will be $150. If the Court requires a hearing on the issue, the fee is $250. If we assist in the preparation of a reaffirmation agreement on a personal property (not real estate) and we negotiate a better deal for you, our fee is $400.

*Id*. at p. 2 , ¶ 5.

The Retainer Agreement also requires that all of Recovery Law Group's fees must be paid in full before the case will be filed  (*Id*. at p. 1, ¶ 3) and provides the option for debtors to pay the attorneys' fees by debit or credit card.  *Id*. at p. 12.

### C. Information Collected Prior to and Events Leading Up to the Bankruptcy Filing

The Shastals sought help from Recovery Law Group on how best to respond to the collection efforts of New Home Plate Lounge, Inc. ("New Home Plate") on a state court judgment it obtained against the Shastals in the amount of $99,950.  The state court judgment provided in part:

. . . [the Judgment] is in the **total amount of $99,950**, with 50% percent assessed against each of the Counter-Defendant [John Shastal] and Third-Party Defendant [Kimberly Shastal];

IT IS HEREBY ORDERED that in accordance with the Jury Verdict of $99,950.00, in total, a Judgment in favor of the Counter-Plaintiffs and Third-Party Plaintiffs, The New Home Plate Lounge, Inc and Home Plate Softball Center, Inc, shall be entered against the Counter-Defendant, John Shastal, and Third-Party Defendant Kim Shastal:

7

***

Total Judgment through Date of Verdict          $134,749.98

And as assessed to each Defendant per Jury Verdict to date of Verdict

John Shastal                                    $67,374.99
Kim Shastal                                     $67,374.99

(Adv. Dkt. No. 110, Ex. 4D, bold in original).  The state court judgment is not a joint judgment.

Shortly after the Shastals signed the Retainer Agreement, Kisch apparently gathered intake information from the Shastals and prepared drafts of the Shastals' chapter 7 petition, schedules, and motion to extend the deadline to file schedules. (Dkt. Nos. 229, 230, ¶ 64). The drafts prepared by Kisch contained the following relevant entries:

-the Debtors live at 9228 Mill Street, North Branch, MI 48461 (Petition, Question 5);

-the value of Debtors' assets total "$0-$50,000" (Petition, Question 19);

-the value of Debtors' Mill Street Residence is $146,000 (Schedule A/B, question 1);

-the Debtors claim an exemption of $60,725 for their Residence (Schedule C, question 2);

-the Debtors' mortgage of $23,241 is held by ELGA Credit Union (Schedule D, question 2.1); and

-the Debtors had $122,759 in equity in the Mill Street Residence as of the petition date (Schedule D).

Kisch also obtained a credit report on behalf of the Debtors on August 21, 2020. (Dkt. Nos. 229, 230, ¶ 67). The credit report listed the Debtors' Mill Street address and their mortgage with Elga Credit Union. (Dkt. Nos. 229, 230, ¶ 69). According to the credit report, the mortgage had a current balance of $23,241, a high balance of $30,000, and a monthly payment of $605 with no monies past due. (Dkt. Nos. 229, 230, ¶ 70).

Recovery Law Group then assigned the Shastals' case to Recovery Law Group's Michigan-based counsel, Majors, who had been hired approximately one month prior. Recovery Law Group also provided Majors with the documents drafted by Kisch so that Majors could file the Shastals' bankruptcy petition. (Dkt. Nos. 229, 230, ¶ 65, 82).[5] The Shastals, however, testified that they did not see or review the bankruptcy petition and schedules, among other documents, prior to their being filed with the Court. (Dkt. No. 61, Hearing Recording at 23:43- 24:50).

### D. <u>Recovery Law Group's Relationship with Sheena Majors</u>

As previously noted, on July 24, 2020, Majors entered into an employment agreement with Recovery Law Group. (Dkt. No. 205, Ex. 1, "Employment Agreement"). The Employment Agreement states that "[t]he Employee [Majors] will serve as a *non-equity, non-voting partner/member* of [Recovery Law Group]"

---

[5] See footnote 7, *infra*.

(Employment Agreement, ¶ 2, emphasis added) in "a part-time, contract position" (Employment Agreement, ¶ 3). Majors agreed "to be subject to the general supervision of and report to [a]ttorney, Nicholas Wajda, Owner and Managing Partner of the Los Angeles office" and "receive case direction from [a]ttorneys, Lindsay Kyser (LA); Michael Reid (Managing Partner of the San Diego Office); and Travis Davis (SD)" (collectively, with Nicholas Wajda, "Supervising Attorneys").(Dkt. No. 205, Ex. 1, Employment Agreement, ¶ 9).[6] According to Recovery Law Group, Majors "acknowledged and understood she was an employee of the firm serving as a non-voting partner/member of Recovery Law Group and not an independent contractor, appearance counsel or outside counsel and her employment with Recovery Law Group commenced upon the execution of the Employment Agreement." (Doc. No. 79, p.2).

As specified in the Employment Agreement, Majors' duties included:

- Final preparation of Bankruptcy petitions, preparing and filing motions and managing Chapter 7 and Chapter 13 client cases;

- Working collaboratively with Managing Attorney and staff;

-Managing client caseload, while producing high quality work product;

- Managing deadlines and overseeing client cases independently;

---

[6] At this point in time, none of Recovery Law Group's Supervising Attorneys were licensed to practice in Michigan or admitted to practice before the United States District Court for the Eastern District of Michigan (Dkt. No. 229, 230, ¶ 32).
.

- Acclimating quickly to company software and technology;

-Communicating with clients via telephone, email and in-person meetings;

- Appearing, or scheduling reliable appearance counsel, at all required meeting of creditors, motion hearings, and/or confirmation hearings on cases Employee files;

- Communicating with trustees and court officials via court-call, email, phone conferences and in-person;

- Other duties as required by the managing attorney;

- Maintain admission to all districts where Employee will be practicing law in Michigan, and maintain an active ECF filing account within each district.

(Dkt. No. 205, Ex. 1, Employment Agreement, ¶ 11)(capitalization and punctuation as in original).

The Employment Agreement provided that Majors was to be paid $300 for each chapter 7 case filed, $350 for each chapter 13 case filed, $350 for chapter 13 cases subsequently confirmed, 75% of any supplemental and/or additional fees awarded in a chapter 7 or chapter 13 case, and $700 for any personal referral of a client to Recovery Law Group upon the filing of a bankruptcy case. (Dkt. No. 205, Ex. 1, Employment Agreement, ¶ 14).

### E. Debtors' Chapter 7 Filing

### 1. Petition and Schedules

On August 24, 2020, Recovery Law Group, using Majors' log in information, filed the Shastals' chapter 7 bankruptcy petition but did not include all of the

required documents and schedules. (Dkt. No. 1).[7] The Debtors' petition affirmed that:

> I, the attorney for the debtor(s) named in this petition, declare that I have informed the debtor(s) about eligibility to proceed under Chapter 7, 11, 12, or 13 of title 11, United States Code, and have explained the relief available under each chapter for which the person is eligible. I also certify that I have delivered to the debtor(s) the notice required by 11 U.S.C. § 342(b) and, in a case in which § 707(b)(4)(D) applies, certify that I have no knowledge after an inquiry that the information in the schedules filed with the petition is incorrect.

(Dkt. No. 1).

Majors signed all of the pleadings she filed in the Shastals' bankruptcy case as "Sheena Majors, Majors Law PLLC."[8]  Recovery Law Group was not listed as a

---

[7] There seems to be some dispute as to who prepared the Shastals' 'initial paperwork and who filed that paperwork.  Majors states that she did not file the Shastals' bankruptcy case.  Instead, Majors alleges that Kisch prepared their petition and used Majors' login-in information to file it and that the case was filed while Majors was out of town.  Majors further states that she neither spoke with the Shastals, nor reviewed their bankruptcy petition, prior to its filing. (Adv. Dkt. Nos. 110, Ex. A, pp. 1, 14-16, 44, 84). Kisch described a different series of events, stating that she gave Majors the Shastals' information and Majors prepared the bankruptcy petition and filed the case.  (Adv. Dkt. Nos. 110, Ex. B, 47, 103).  Both attorneys were employed by Recovery Law Group at this time and as discussed *infra*, IV. B. §2(a), Recovery Law Group bears responsibility for both of its employees.

[8] Recovery Law Group stated that filing the petition as "Sheena Majors, Majors Law PLLC" was improper and that Majors was not authorized the file the petition under her own name and firm. (Dkt. Nos. 229, 230, ¶ 46, 52). Majors, however, testified that Kisch filed the petition using Majors' filing information.  Moreover, according to Majors, Recovery Law Group did not allow her access to their Best Case software so she had to use her own software which did not allow the use of outside attorneys or firm names.  Her software defaulted to the authorized user

signatory on these pleadings. Because Debtors' bankruptcy case was filed with incomplete documents, Debtors were given a deadline of September 8, 2020 to file schedules and other missing documents. (Dkt. No. 1).

On September 7, 2020, Majors for Recovery Law Group filed a Motion to Extend Deadline to File Schedules or Provide Required Information. However, Recovery Law Group never filed a Certificate of Non-Response and, as a result, no order was entered granting this motion (Dkt. No. 14). *See,* L.B.R. 9006-1 (E.D.M.).

On September 10, 2020, more than two weeks after the bankruptcy petition was filed, Kisch emailed Debtors asking if they could get a broker's price opinion for their Residence, advising "[w]e need it to come in as low as possible, right now it looks like you have to file a chapter 13[.]" In response, Mr. Shastal advised that "the value [of the Residence] is around $165k per the appraisal I had when I applied for an equity loan." Kisch responded, "Ok, we're going to have to go the Chapter 13 route . . . You have too much equity in your house." (Dkt. Nos. 229, 230, ¶ 87-90).[9]  Recovery Law Group never amended the $146,000 value of Debtors' Residence on Debtors' Schedules A and D.

---

(herself). (Dkt. No. 54, hearing at 11:52-12:59).  Majors states that she was not immediately aware of this issue but notified Recovery Law Group of this problem when she became aware of it.

[9] While most of the emails referenced in this Opinion are not in the record, these emails are described in Dkt. No. 229 and admitted in Dkt. No. 330, ¶¶ 107, 108.

Albeit untimely, on September 30, 2020, Recovery Law Group filed Debtors' Schedules A-J (with the incorrect house valuation), Statement of Financial Affairs, Statement Pursuant to Rule 2016(b) (discussed further *infra*, p.13), Statement of Intention, and Means Test Calculation Form 122A-2. (Dkt No. 15). Notably, Debtor John Shastal's Schedule C lists an exemption of $60,725 for the Residence under Mich. Comp. Laws 600.5451(m), but Debtor Kimberly Shastal does not list an exemption for the Residence. In addition, the Means Test Calculation Form was stricken by the Court on December 18, 2020 because an incorrect event code was used. (Dkt Nos. 16, 35). No new Means Test Calculation Form was ever filed with the Court. The Shastals also testified that they were not provided these documents for review before filing. (Dkt. No. 61, Hearing Recording at 23:43- 24:50).

## 2. **2016(b) Statement**

The Statement of Attorneys for Debtor(s) Pursuant to Fed. R. Bankr. P 2016(b) disclosed a flat fee of $3,810 for legal services. (Dkt. No. 15, "2016(b) Statement"). It indicated that Majors received $1,500 before the case was filed, leaving an unpaid balance of $2,310. Despite this assertion on the 2016(b) Statement, Debtors' Statement of Financial Affairs, ¶ 16, states that the Debtors

paid Recovery Law Group $1,835 for attorney's fees and the bankruptcy filing fee in August 2020. Recovery Law Group indicates that it received this payment from Debtors and, consequently, paid Majors for her work on the file (Dkt. Nos. 229, 230, ¶ 50, 51).

The 2016(b) Statement further provided that the legal services for the disclosed fee include:

A.   Analysis of the debtor's financial situation, and rendering advice to the debtor in determining whether to file a petition in bankruptcy;

B.   Preparation and filing of any petition, schedules, statement of affairs and plan which may be required;

C.   Representation of the debtor at the meeting of creditors and confirmation hearing, and any adjourned hearings thereof;

D.   ~~Representation of the debtor in adversary proceedings and other contested bankruptcy matters;~~

E.   Reaffirmations;[10]

F.   Redemptions; and

G.   Other.

(Dkt. No. 15)(language stricken in original).

The 2016(b) Statement, ¶ 7, inaccurately states "[t]he undersigned has not shared or agreed to share, with any other person, other than with members of the undersigned's law firm or corporation, any compensation paid or to be paid . . . ."

---

[10] The inclusion of "Reaffirmations" in the Flat Fee services contradicts the Retention Agreement, at p. 2, which states that there is an extra charge for reaffirmations. *See*, *supra* at 5-6.

Sheena L. Majors of Majors Law, PLLC signed the 2016(b) Statement directly below the affirmation set forth in ¶ 7. The 2016(b) Statement does not mention Recovery Law Group.

### F. <u>Important Events in the Bankruptcy Case</u>

#### 1. Recovery Law Group's Failure to Convert the Debtors' Case from Chapter 7 to Chapter 13

Having concluded after the bankruptcy petition was filed that Debtors had significant equity in their home, and that they wished to continue residing there, Recovery Law Group determined that Debtors would be best served by converting their chapter 7 case to a case under chapter 13. Kisch prepared the Motion to Convert and sent it to Majors for filing (Dkt. Nos. 229, 230, ¶ 97). On October 1, 2020, Majors filed a Motion to Convert Case to Chapter 13 (Dkt. No. 18).

On October 16, 2020, Trustee Sweet filed an objection to the Motion to Convert Case to Chapter 13 (Dkt No. 22), and the Motion to Convert was set for hearing on November 4, 2020 ("Conversion Hearing"). The Court held the Conversion Hearing on November 4, 2024, but had to adjourn that hearing, first to November 25, 2020 and then to December 16, 2020, because Trustee Sweet had

not yet been able to conduct the Debtors' 341 Meeting of Creditors. (Dkt. No. 26).[11]

On December 16, 2020, Debtors' Motion to Convert Case from Chapter 7 to Chapter 13 was denied without prejudice because Recovery Law Group failed to appear at both the continued meeting of creditors and the adjourned Conversion Hearing (Dkt No. 31). Recovery Law Group never filed a renewed motion to convert.

## 2. Recovery Law Group's failure to timely file Certificate of Financial Management

On October 10, 2020, the Court issued a Notice of Requirement to File Financial Management Course Certificate requiring the Debtors to file Form 423 by November 30, 2020 (Dkt. No. 20). The Form 423 Notice states, "[f]ailure to file the certification will result in the case being closed without an entry of discharge."

---

[11] Debtors' 341 Meeting of Creditors ("341 Hearing"), initially scheduled for October 1, 2020, was continued to October 15, October 29, November 12, November 24, and eventually held on December 16, 2020. Plaintiffs allege that continuations were necessary because Recovery Law Group failed to appear at these hearings. Although the Court has no reason to doubt Plaintiffs' allegation, because 341 Hearings are held by the chapter 7 trustee, the Court does not have independent knowledge regarding whether, or when, Recovery Law Group appeared on behalf of Debtors.

On October 27, 2020, Ms. Shastal sent an email to Kisch and Majors, respectively, requesting a link to allow her and her husband to obtain their financial management course certifications. (Dkt. Nos. 229, 230, ¶ 107). She was concerned that they be completed prior to the deadline set forth on the form.

On October 28, 2020, Ms. Shastal sent a second email again asking for a link to their financial management course certificates. No one responded to Ms. Shastal's questions regarding the financial management course completion. (Dkt. Nos. 229, 230, ¶ 108).[12]

Fourteen months later, on December 26, 2021, Recovery Law Group finally filed the Personal Financial Management Course Certificates for Debtors (Dkt. No. 83). Debtors' discharge was thereby delayed because, only after the Certificates were filed, could Debtors receive their discharge. Debtors' discharge was issued the very next day, December 27, 2021. (Dkt. No. 84).

### 3. Sale of Debtors' Residence and Debtors' Homestead Exemption

At this point in the proceedings, it was clear that Debtors had equity in their Residence well in excess of their claimed exemption. Recovery Law Group and the Trustee negotiated a payment plan for Debtors' non-exempt equity so that Debtors could stay in their Residence. A deal was reached as a result of these

---

[12] In the October 27, 2022 and October 28, 2022 emails, Ms. Shastal also inquired whether Recovery Law Group would appear at her upcoming 341 meeting.

negotiations and, on May 26, 2021, Trustee Sweet filed a Motion to Approve Compromise of the Estate's Claim with the Debtors. (Dkt. No. 42).

The Court held a hearing on that proposed settlement on July 21, 2021. Majors failed to appear at this hearing although both Debtors appeared. It was at this hearing that the Court first learned that there was an undisclosed fee sharing agreement between Sheena Majors/Majors Law and Recovery Law Group in apparent violation of Fed. R. Bankr. P. 2016(b).

On July 23, 2021, the Court issued an Order to Show Cause Why Debtors' Counsel Should Not Be Sanctioned For Failing To Appear At Hearing On Trustee's Motion to Approve Compromise and for Violating Fed. R. Bankr. P. 2016(b). (Dkt. No. 52; violations of Fed. R. Bankr. P. 2016(b) are discussed in detail, *infra*, I., F. § 4).

On September 8, 2021, Trustee Sweet withdrew his offer of compromise because he did not think that the Shastals could meet their obligations under the settlement.

Because Trustee Sweet and the Debtors were unable to effectuate a settlement, Trustee Sweet filed a Motion to Sell Debtors' Residence Free and Clear of Liens under Section 363(f) on November 12, 2021. (Dkt. No. 67).

On November 20, 2021, Mr. Shastal, in response to the Trustee's Motion to Sell *and without the assistance of counsel*, wrote a personal letter to the Court

asking that he and his wife be given until the end of December to pack their belongings and find a new home. Mr. Shastal explained that they could not afford to hire movers and, due to their advanced age, "our days of speed and strength are behind us." (Dkt. No. 73).[13]

On December 15, 2021, the Court granted Trustee Sweet's Motion to Sell Property Free and Clear of Liens under Section 363(f) ("Sale Order"). (Dkt. No.

---

[13] At this time, there was some confusion regarding which attorney from Recovery Law Group was representing the Shastals. Majors stated that, sometime in the Spring of 2021, Recovery Law Group terminated her employment agreement. (Dkt. No. 55). Despite this alleged termination, Majors appeared before this Court or filed documents with this Court multiple times until September 8, 2021. On November 17, 2021, Desirae Bedford appeared for Recovery Law Group on behalf of the Shastals in this Court on this Court's Revised Amended Order to Show Cause. (Dkt. No. 64). As part of the resolution of the Show Cause Order, Bedford agreed to file an appearance as Recovery Law Group's attorney representing the Shastals. This, however, did not go smoothly. On November 18, 2021, Bedford filed a Notice of Substitution of Counsel. (Dkt. No. 70). This Notice of Substitution was stricken from the record by an order entered on November 19, 2021 because "the PDF does not match the docket text." (Dkt. No. 71). On December 9, 2021, the Court issued a Second Order to Show Cause Why Debtors' Counsel Should Not Be Sanctioned For Failing To Comply With Court Orders and/or Commitments Made On The Record In Open Court on November 17, 2021 because Recovery Law Group had not yet filed a valid substitution of counsel. On December 30, 2021, Recovery Law Group, again by Bedford, filed a Notice of Appearance and Request for Notice. (Dkt. No. 86). Recovery Law Group received another Notice of Deficient Pleading regarding the Notice of Appearance on January 3, 2022 due to a missing signature. (Dkt. No. 88). Recovery Law Group, by Bedford, refiled a Certificate of Service for the original Notice of Appearance on January 5, 2022, thus finally effectuating her appearance as counsel. (Dkt. No. 89).

80).  Under the Sale Order, the judgment lien of New Home Plate in the amount of $99,950 transferred to the proceeds of the sale. [14]

On January 5, 2022, Trustee Sweet filed the Report of Sale of Debtors' Residence. (Dkt. No. 90).  Debtors' Residence had sold for $168,000.

On January 14, 2022, Trustee Sweet filed the Trustee's Motion to Disburse Funds, requesting authority to distribute $156,086.80 in funds remaining from the sale of the Residence but without payment of Debtors' $60,725 claimed exemption. ("Disbursement Motion") (Dkt. No. 95).

As of January 28, 2022, the final day of the original 14-day objection period for the Disbursement Motion, Recovery Law Group had not yet filed a response. (Dkt. Nos. 229, 230, ¶121). Out of concern that Debtors were not being adequately represented, the United States Trustee laudably asked Trustee Sweet to amend his Disbursement Motion to disclose information regarding the effect of the Disbursement Motion on Debtors' homestead exemption, thereby restarting the 14-day objection period so that Debtors could preserve their right to an exemption in their Residence. (Dkt. Nos. 229, 230, ¶ 120).

---

[14] Had Debtors received their discharge *prior* to the entry of the Sale Order, which was entered on January 5, 2022, New Home Plate's judgment lien could have been extinguished under Mich. Comp. Laws § 600.2809(6)(d) and its lien would not have transferred to the proceeds of the sale.  The delay was due to Debtors' counsel's failure to timely file Personal Financial Management Course Certificates (Form 423) which Ms. Shastal had twice requested 14 months earlier.

On January 28, 2022, the Trustee filed an Amended Motion to Disburse Remaining Funds; Allow Surcharge Under 506(c) of the Bankruptcy Code; and Resolve Claims of Debtor. (Dkt. No. 98, "Amended Disbursement Motion"). The Amended Disbursement Motion, like the original Disbursement Motion, requested authority to disburse all remaining funds from the sale without payment of Debtors' $60,725 exemption. (Dkt. No. 98).

At the hearing held on February 2, 2022, the Court raised the Amended Disbursement Motion *sua sponte* to draw Recovery Law Group's attention to Debtors' need for competent and active representation to protect their $60,725 exemption. In response to the Court's inquiry, Recovery Law Group reassured the Court on the record that they would respond immediately to the Amended Disbursement Motion and also mentioned filing a motion to avoid the lien. However, Recovery Law Group failed to object to the Amended Disbursement Motion to preserve the Debtors' exemption of $60,725.

On February 6, 2022, Recovery Law Group filed a Motion to Extend Time to File a Response to the Amended [Disbursement] Motion. ("Motion to Extend") (Dkt No. 100). However, Recovery Law Group erroneously stated that the Amended Disbursement Motion provided 21-day notice although the actual response time for this type of motion is 14-days. Recovery Law Group did not

request an expedited hearing on this matter, and the Court did not enter an order extending the time.

On February 11, 2022, the final day of the actual notice period for the Amended Disbursement Motion, the United States Trustee again filed an objection to preserve Debtors' $60,725 exemption because Recovery Law Group failed to timely respond to the Amended Disbursement Motion.[15] The Court set the Amended Disbursement Motion for hearing on March 9, 2022.

On March 8, 2022, the day before the hearing on the Amended Disbursement Motion, Recovery Law Group filed the Debtors' Motion to Avoid Lien and Allow Homestead Exemption ("Lien Avoidance Motion"). (Dkt. No. 113). The Lien Avoidance Motion incorrectly identified Debtors' exemption as $60,000 even though Debtors listed their homestead exemption on Schedule C at $60,725 (Dkt. No. 15).

On March 22, 2022, Recovery Law Group and the United States Trustee stipulated to extend the time for the United States Trustee to file a response to Debtors' Lien Avoidance Motion to April 13, 2022. (Dkt. No. 119).

On April 13, 2022, New Home Plate objected to the Lien Avoidance Motion ("Objection"). (Dkt. No. 127). New Home Plate's Objection raised numerous

---

[15] While Recovery Law Group did make some efforts to extend the time to file their Response to the Amended Disbursement Motion, these efforts were ineffective due to its failure to timely obtain an order granting their Motion to Extend.

issues under 11 U.S.C. § 727 that the Court, the United States Trustee, Trustee Sweet and Recovery Law Group all agreed created a direct conflict of interest between the Debtors and Recovery Law Group. That same day, Recovery Law Group (by Desirae Bedford and Peter Mulcahy), New Home Plate Lounge, the United States Trustee, and Trustee Sweet stipulated to extend the time for the United States Trustee and Trustee Sweet to file their responses to the Lien Avoidance Motion to May 11, 2022 and to adjourn the Debtors' Lien Avoidance Motion to May 18, 2022. (Dkt. No. 130).

On April 27, 2022, Recovery Law Group filed a notice of Debtors' change of address and, later that day, an amended notice of Debtors' change of address. (Dkt. Nos. 134, 135).

On May 11, 2022, the United States Trustee filed an objection to the Lien Avoidance Motion with the purpose of delaying any settlement of the issues raised until the Debtors had the benefit of unconflicted counsel to advise them in any negotiations impacting their homestead exemption in the Residence. (Dkt. No. 136).[16]

---

[16] Also, around this time, on May 13, 2022, New Home Plate filed an Adversary Complaint seeking the revocation of Debtors' discharge under 11 U.S.C. § 727 based on numerous errors in Debtors' pleadings (Adv. No. 22-3013, Dkt. No. 1)(Dkt. No. 138).

On May 18, 2022, the Court entered an order substituting David Brown as Debtors' attorney of record, replacing Recovery Law Group. (Dkt. No. 140).

On August 10, 2022, New Home Plate, Trustee Sweet, and Debtors agreed, and the Court entered an Order finding, that Debtors were entitled to the exemption in their former marital Residence in the amount of $60,725.00 to be paid to Debtors from the remaining funds being held in trust by Trustee Sweet, and New Home Plate was entitled to its lien against the proceeds of the sale of the Residence in the amount of $145,784.12 to be paid from the assets of the estate. (Dkt. No. 160).

### 4. Motion for Sanctions by United States' Trustee

On July 23, 2021, the Court issued an Order to Show Cause seeking, among other things, information regarding the undisclosed fee sharing agreement between Sheena Majors/Majors Law PLLC and Recovery Law Group which had come to light at the July 21, 2021 hearing on a failed settlement attempt. (Dkt. No. 52). The Court Order stated, in part:

> IT IS HEREBY ORDERED that, AT A HEARING TO BE HELD ON AUGUST 18, 2021 AT 9:30 am (ET), Debtors' counsel, Sheena L. Majors, shall appear and be prepared to respond specifically and in detail as to (i) why she failed to appear at the July 21st hearing, (ii) the existence and the terms of any referral agreement or compensation sharing agreement, (iii) the permissibility of the bifurcated fee arrangement in this case, and (iv) whether sanctions should be assessed and in what amount.

At the August 18, 2021 hearing, Majors appeared and requested an adjournment so that she could adequately respond; she indicated to the Court that she thought she had withdrawn as counsel sometime between April 12, 2021 and April 26, 2021. The Court adjourned this hearing to September 8, 2021.

On September 1, 2021, Majors filed a Response to the Court's Order to Show Cause which included a list of the cases in the Eastern District of Michigan for which she received payment by Recovery Law Group. (Dkt. No. 55, Ex. E).

On September 8, 2021, the Court held the adjourned August 18, 2021 hearing. Recovery Law Group did not appear at the hearing because Majors did not notify Recovery Law Group of the hearing, despite having been asked specifically by the Court at the August 18, 2021 hearing to notify them; because Majors had not withdrawn as counsel, Recovery Law Group was currently being served by the Court through her.

During the September 8, 2021 hearing, the United States Trustee sought information regarding all of the cases handled by Recovery Law Group including, but not limited to, the list of cases listed in Majors' Response. (Dkt. No. 55, Ex. E). At the conclusion of the hearing, the Court reiterated its interest in Recovery Law Group's response to the issues raised in the Court's initial Order to Show Cause and also sought the answers to the following questions and/or the following information:

(i)    why Recovery Law Group's representation was not disclosed in this case or the other cases identified on Exhibit E to Ms. Majors' Response,

(ii)   the existence and terms of any engagement agreements with the debtors identified on Exhibit E to Ms. Majors' Response,

(iii)  the payment histories for each of the cases identified on Exhibit E to Ms. Majors' Response, and the amount of fees shared between Recovery Law Group and Ms. Majors,

(iv)   why notices of withdrawal or substitution of counsel were not filed,

(v)    whether the clients identified on Exhibit E to Ms. Majors' Response were notified of the contractual relationship between Ms. Majors and Recovery Law Group or notified of the fee sharing arrangements in these cases, and

(vi)   whether sanctions should be assessed against Ms. Majors and/or Recovery Law Group and, if so, in what amount.

(Dkt. No. 60)(spaced for clarity). The United States Trustee agreed to serve Recovery Law Group with this Show Cause Order so that it would be aware of the adjourned hearing. The adjourned hearing on these matters was set for October 13, 2021 and then adjourned to November 17, 2021.

On November 17, 2021, the Court held a hearing on the Revised Amended Order to Show Cause. (Dkt. No. 64). Majors did not appear at this hearing. However, Desirae Bedford appeared on behalf of Recovery Law Group and assured the Court that Recovery Law Group would: (1) produce documents requested by the United States Trustee ostensibly relating to allegations that

27

Recovery Law Group did not comply with Fed. R. Bankr. P. 2016(b) and regarding Major's alleged withdrawal of from her Employment Agreement with Recovery Law Group, by December 8, 2021; (2) file a response to the Revised Amended Order to Show Cause by December 15, 2021; and (3) file an appearance as counsel of record for Debtors. This hearing was adjourned to January 26, 2022 to give Recovery Law Group an opportunity to provide all the documents previously requested and to file a written response to the Revised Amended Order.

On December 14, 2021, Recovery Law Group finally filed a Response to the Order to Show Cause for violations of Rule 2016(b), which was initially served six months earlier on July 23, 2021 and amended multiple times. (Dkt. No. 79).

On January 26, 2022, the Court continued the November 17, 2021 hearing on the Revised Amended Order to Show Cause so that Recovery Law Group could provide certain documents to the United States Trustee. There was a question regarding whether Recovery Law Group, in response to the United States Trustee's request, had provided a complete list of its cases which were filed in the Eastern District of Michigan. The January 26, 2022 hearing was adjourned another week, to February 2, 2022, to allow Recovery Law Group to provide any further information that it had in its possession.

On August 23, 2022, the United States Trustee, Debtors, Recovery Law Group, Majors, New Home Plate, and Trustee Sweet entered into a stipulation

setting dates for 2004 examinations. (Dkt. No. 164). By agreement of the parties, the 2004 examinations were rescheduled to December 2022 (Dkt. No. 169), February 2023 (Dkt. No. 173), April 2023 (Dkt. No. 176) and were finally held on June 7, 2023.[17] Between August 2022 and August 2023, there were also numerous issues regarding the turnover of documents.[18]

On December 26, 2023, the United States Trustee filed a Motion to Review the Conduct of Sheena Majors and Recovery Law Group, to Cancel the Retention Agreement, to Disallow and Return Funds Paid, and for Other Relief as May Be Appropriate, Including Monetary Sanctions. (Dkt. No. 205)("Motion for Sanctions"). In this Motion for Sanctions, the United States Trustee sought to cancel Recovery Law Group's retention agreement, to disallow and require the return of fees paid to Recovery Law Group, and to grant other relief as may be

---

[17] The June 7, 2023 date is not indicated in the record, but Plaintiffs allege that this was the actual date of the 2004 examinations.

[18] On August 4, 2022, Plaintiff's counsel Brown filed a motion for turnover of client file. (Dkt. No. 150). On August 18, 2022, Peter Mulcahy, General Counsel for Recovery Law Group, submitted an affidavit regarding Debtors motion for turnover of documents stating that all documents in his possession had been turned over to Debtors' new attorney. (Dkt. No. 162). On May 25, 2023, Majors filed an affidavit attesting that she had turned over all documents pertaining to this matter to both Peter Mulcahy for Recovery Law Group and Thomas Beadle, the attorney for New Home Plate. (Dkt. No. 184). On June 14, 2023, Majors filed an amended affidavit stating that she had forwarded all text messages concerning the Shastals to Mr. Beadle. (Dkt. No. 191). On July 25, 2023, Mulcahy filed a declaration stating that he had turned over all documents relevant to this matter. (Dkt. No. 201).

appropriate under 11 U.S.C. §§ 105(a), 329(b), and 526, Fed. R. Bankr. P. ("Rules") 2016 and 2017, including monetary sanctions.

On January 10, 2024, Recovery Law Group filed an Objection to the Motion for Sanctions. This pleading, however, was stricken because the electronic signature did not match the attorney's login information. (Dkt. No. 212). On January 11, 2024, Recovery Law Group successfully filed an Objection to Motion for Sanctions. (Dkt. No. 215). That same day, the Court set a hearing on the Motion for Sanctions for January 17, 2024. That hearing was held and continued to April 3, 2024. (Dkt. No. 218).

On January 26, 2024, the Court entered a procedural order to treat the United States Trustee's Motion for Sanctions as an Adversary Proceeding under Fed. R. Bankr. P. 7001. (Dkt. No. 227).

On February 20, 2024, the United States Trustee filed its *Complaint* to Review the Conduct of Sheena Majors and Recovery Law Group to Void the Retention Agreement, to Order the Return of Funds Paid, and for Other Appropriate Relief Including Injunctive Relief and Monetary Sanctions. (Dkt. No. 229)("Complaint for Sanctions") which, in essence, mirrored the Motion of the same name. (Dkt. No. 205).

On March 18, 2024, Recovery Law Group filed its *Answer* to the United States Trustee's Complaint for Sanctions and filed a Cross-Claim against Sheena

Majors a/k/a Sheena L. Majors d/b/a Majors Law Center, PLLC for Damages and Other Appropriate Relief. (Dkt. No. 230).

On April 3, 2024, the Court held the adjourned hearing on the Motion (now Complaint) for Sanctions. Despite proper notice, Recovery Law Group did not appear at the April 3rd hearing and, as a result of Recovery Law Group's failure to appear, on April 4, 2024, this Court entered an order imposing sanctions on Recovery Law Group in the amount of $1,000. (Dkt. No. 234).

On April 25, 2024, Majors filed an untimely Response to Complaint for Sanctions (which had been filed on February 20, 2024). (Dkt. No. 242). This Response did not address the Cross-Claim alleged in the Answer filed by Recovery Law Group. (Dkt. No. 230). [19]

On August 13, 2024, the Court issued an Order to Show Cause why Recovery Law Group should not be further sanctioned for failing to comply with this Court's April 4, 2024 order imposing sanctions of $1,000 for failing to appear at the April 3, 2024 hearing. (Dkt. No. 246).

On August 26, 2024, Recovery Law Group finally paid the sanctions ordered by the Court on April 4, 2024. The following day, Recovery Law Group submitted a brief seeking the cancellation of the hearing set in the Court's Order to Show

---

[19] While Majors was properly served with Recovery Law Group Group's Answer and Cross-claim against her, Majors has not responded to the Cross-claim, and Recovery Law Group has not sought to default her.

Cause based on its payment of the $1,000 sanction and on Recovery Law Group's written "commitment to the matters of this case." (Dkt. No. 248, p. 2).

### 5. Order Approving Compromise

On December 5, 2023, Trustee Sweet filed a Motion to Approve Compromise which would allow his office and the Debtors to pursue a legal malpractice action, among other possible claims, against Recovery Law Group and others. Under the terms of the Compromise Agreement, Trustee Sweet and Debtors agreed to share any net recoveries equally. (Dkt. No. 203). That same day, the Court entered an order approving the retention of special counsel to prosecute the Plaintiffs' malpractice claims against Recovery Law Group in a forthcoming adversary proceeding (Dkt. No. 226).

On December 29, 2023, Recovery Law Group, by Mulcahy,[20] filed an Objection to the Motion to Approve Compromise (Dkt. No. 206),[21] denying any malpractice occurred and asserting that Trustee Sweet lacked standing to pursue recovery on a post-petition claim.

On January 17, 2024, the Court held a hearing on Trustee Sweet's Motion to Approve Compromise, at which time the Court read into the record a lengthy

---

[20] On June 7, 2023, Peter J. Mulcahy filed a Notice of Appearance and Request for Notice as counsel for Recovery Law Group. (Dkt. No. 188).

[21] This objection is docketed as a Response to the Motion for Sanctions but is actually an Objection to the Motion to Approve Compromise.

bench opinion granting Trustee Sweet's Motion. (Dkt. No. 218, Opinion beginning

at 28:52).

On January 26, 2024, this Court entered its Order Approving Compromise

(Dkt. No. 221) which stated, in part:

> IT IS HEREBY ORDERED that Trustee is authorized to settle with the Debtors wherein the Debtors and Trustee will bring forth an action against Recovery Law Group for attorney malpractice and any other potential claim naming Mr. and Mrs. Shastal first and foremost and then naming the Bankruptcy Estate as a tangential interest. The Bankruptcy Estate shall have standing to bring this malpractice and any other potential suit in Bankruptcy Court and name both the Estate and the Debtor as Plaintiffs.

> IT IS FURTHER ORDERED that should funds be awarded to the Debtors and Trustee from the malpractice and any other potential action then the costs of litigating this action will be paid in full first and any remaining proceeds shall be divided equally between the Debtor and the Bankruptcy Estate.

> IT IS FURTHER ORDERED that as part of this agreement, the Trustee acknowledges his previous determination that the Bankruptcy Estate holds no claims against the Debtors for denial of discharge.

Notwithstanding its Objection to the Motion, Recovery Law Group did not

appeal this order.


### 6. Malpractice Action Filed by the Trustee and Debtors Against Recovery Law Group

On April 2, 2024, Debtors and Trustee Sweet ("Plaintiffs"), by their

malpractice counsel, filed this adversary proceeding (Adv. Proc. No. 24-3033)

against Majors Law, PLLC, Sheena Majors, Desirae Bedford, and Recovery Law

Group ("Defendants").  After two deficiency notices resulting from non-matching signatures, an Amended Complaint was filed on April 5, 2024. (Adv. Dkt. No. 9). The Amended Complaint alleges two counts:  Count I – Legal Malpractice and Count II – Violations of 11 U.S.C. § 526.  With respect to the legal malpractice count, the Adversary Complaint as amended listed the alleged negligence of Recovery Law Group as follows:

89. The Defendants breached the above duties to Plaintiffs, in the following ways:

a. Failing to advise that the Debtors should not file bankruptcy, but instead pursue remedies under state law to manage the large judgment with the one creditor, New Home Plate,

b. Failing to file Debtors' bankruptcy case under Chapter 13 instead of Chapter 7,

c. Failing to reasonably investigate the financial circumstances of the Debtors', including their home equity, to determine whether they should file bankruptcy at all or which type of bankruptcy they should file,

d. Failing to advise the Debtors that they would be risking over $120,000 in equity in their Residence if they filed the Bankruptcy Case under Chapter 7 of the Code,

e. Failing to inform "the debtor(s) [sic] about eligibility to proceed under Chapter 7, 11, 12, or 13 of title 11, United States Code" and failing to explain "the relief available under each chapter for which the person is eligible" despite Majors certifying the statement as true via electronic signature on Debtors' petition,

f. Failing to warn and communicate adequate information and explanation to the Debtors about the material risks of and reasonable

available alternatives to filing bankruptcy, including the reasonable available alternative of not filing bankruptcy,

g. Failing to exercise reasonable care in preparing Debtor's bankruptcy documents,

h. Failing to ensure accurate statements in Debtors' bankruptcy documents filed with the Court,

i. Failing to prepare the Debtors' bankruptcy documents without inaccuracies, errors, and omissions,

j. Failing to attend 341 Hearings as counsel for Debtors,

k. Failing to attend the hearing on the Motion to Convert to Chapter 13, which led to a denial of the motion without prejudice,

l. Failing to file a timely renewed motion to convert to avoid the sale of the Debtors' Residence,

m. Failing to appear at numerous hearings, including meetings of creditors, motion hearings, show cause hearings, and status hearings on the multiple show cause orders entered by the Court,

n. Failing to communicate with Debtors and assist Debtors with the second financial management course after Debtors received Form 423,

o. Failing to object to the Amended Motion to Disburse Remaining Funds; Allow Surcharge Under 506(c) of the Bankruptcy Code; and Resolve Claims of Debtor to preserve the Debtors' $60,725 exemption,

p. Failing to file the Debtors' financial management course in a reasonable time to avoid a delay in Debtors receiving discharges, which caused the $99,950 judgment lien of New Home Plate Lounge to transfer to the proceeds of sale, and

q. Other violations of the duties of care [as] may become apparent through discovery.

(Adv. Dkt. 9, Amended Complaint, ¶ 89).

On April 23, 2024, Recovery Law Group and Desirae Bedford filed a Motion to Dismiss this Adversary Proceeding (Adv. Dkt. No. 17), arguing: (1) this Court lacked subject matter jurisdiction; (2) Debtors failed to state a claim because Debtors, by virtue of receiving their discharges, were not damaged by any alleged malpractice; and (3) Debtors failed to timely file their malpractice claim. While Recovery Law Group and Desirae Bedford sought the dismissal of the entire adversary proceeding, they only presented arguments relating to the legal malpractice claim in their Motion to Dismiss and did not present any arguments for dismissal of Plaintiffs' § 526 claim.

On June 12, 2024, the Court heard lengthy oral argument on the Motion to Dismiss. During oral argument, Recovery Law Group and Desirae Bedford stated on the record that they were dropping their argument that the Complaint failed to state a claim with respect to damages, acknowledging that Debtors' discharges did not entirely obviate Debtors' damage claim. (Adv. Dkt. No. 29, Hearing Recording at 44:50-45:15). At the conclusion of the hearing, the Court took this matter under advisement and authorized the parties to file supplemental briefs. (Adv. Dkt. No. 33).

On July 2, 2024, a Clerk's Entry of Default was entered against Sheena Majors and Majors Law, PLLC for her failure to file an answer to Plaintiffs'

Complaint (Adv. Dkt. No. 39). Plaintiffs filed their Application for Default Judgment on July 15, 2024, and a Default Judgment was entered against Majors on July 16, 2024 in adversary proceeding 24-3033 (Adv. Dkt. Nos. 41, 42).

On August 9, 2024, this Court issued its 54 page Opinion and Order Denying Recovery Law Group's and Desirae Bedford's Motion to Dismiss Adversary Proceeding. (Adv. No. 24-3033, Dkt. Nos. 44, 45).

On August 19, 2024, Recovery Law Group and Desirae Bedford filed a motion for reconsideration of the Court's Opinion and Order Denying the Motion to Dismiss Adversary Proceeding. The Clerk's Office issued a Notice of Deficient Pleading with respect to the motion for reconsideration because Recovery Law Group and Desirae Bedford failed to include a brief, a defect which was subsequently remedied. (Adv. Dkt. Nos. 54, 55). On September 3, 2024, this Court issued its Opinion and Order Denying the Motion for Reconsideration of the Order Denying their Motion to Dismiss Adversary Proceeding. (Adv. Dkt. No. 60).

### 7. Recovery Law Group and Bedford's Appeal of the Motion to Dismiss and Recovery Law Group's Motion to Set Aside Order Approving Compromise

On September 17, 2024, Recovery Law Group and Desirae Bedford appealed the Court's Opinion and Order Denying the Motion to Dismiss Adversary Proceeding. (Adv. Dkt. No. 62). Between September 17, 2024 and September 24,

2024, the Clerk of the Bankruptcy Court issued four notices of deficient pleadings and Recovery Law Group and Bedford filed five "Corrected" pleadings. (Adv. Dkt. Nos. 64, 74, 75, 76 (deficiency notices); Adv. Dkt. Nos. 71, 72, 73, 77, 78 (corrections)).

On September 26, 2024, Defendants filed their Motion for Stay Pending Appeal (Adv. Dkt. No. 82) which this Court denied on October 7, 2024 (Adv. Dkt. No. 98).

During this same time period, Recovery Law Group, by another counsel, James C. Warr & Associates, filed a motion to vacate or set aside the Order Approving Compromise that was entered by the Court on January 26, 2024, almost ten months earlier. (Dkt. No. 251). The Court notified Recovery Law Group, through counsel, that its proof of service was either missing or non-compliant. That same day, Recovery Law Group remedied this deficiency. (Dkt. No. 253). On October 28, 2024, this Court issued its Opinion and Order denying Recovery Law Group's motion to set aside the Order Approving Compromise. (Dkt. No. 264).

**8.    Combined Adversary Proceeding – Malpractice Action and Sanctions for Violating 11 U.S.C. 526**

As of October 10, 2024, this Court now had before it the adversary proceeding wherein Plaintiffs sought relief against Recovery Law Group for legal malpractice and violations of 11 U.S.C. § 526 (Adv. Proc. No. 24-3033) *and* the

United States Trustee's complaint/motion for sanctions against Recovery Law Group for violations of 11 U.S.C. § 526 filed in the main case. To ensure that Defendants in the United States Trustee's action in the main case enjoyed all of the due process protections afforded defendants in adversary proceedings under the Federal Rules of Bankruptcy Procedure, incorporating the Federal Rules of Civil Procedure, the Court entered an order requiring the Clerk of the Bankruptcy Court to assign the United States Trustee's Complaint for Sanctions (Dkt. No. 229) its own adversary proceeding number (Adv. Proc. No. 24-3076) and transfer docket numbers 230, 235, 242, and 254 to that new adversary proceeding. (Dkt. No. 257).

On October 15, 2024, this Court entered an Order Directing Joint Administration of Adversary Proceedings 24-3076 and 24-3033 in adversary proceeding 24-3033. (Adv. Dkt. No. 100). That Order states, in part:

> … on October 9, 2024, the Court entered its Order Directing Clerk of the Court to Establish New Adversary Proceeding and transfer Documents and for Joint Administration. The new Adversary Proceeding has now been established (AP No. 24-03076) and the documents transferred into that Adversary Proceeding. Accordingly, pursuant to 11 U.S.C. § 105(a) and (d)(2),
>
> IT IS HEREBY ORDERED that Adversary Proceeding Case Nos. 24-03033 and 24-03076 shall be jointly administered by the Court for discovery and pre-trial purposes only. The Court will determine whether these Adversary Proceedings shall be tried separately or together at a later date.
>
> IT IS FURTHER ORDERED that the Clerk of the Court shall maintain one file and one docket for these jointly administered

Adversary Proceedings which docket shall be Case Number 24-03033-jda.

### 9. The Instant Motion for Partial Summary Judgment with respect to Liability

On December 19, 2024, Plaintiffs filed a Motion for Partial Summary Judgment as to Liability with respect to the malpractice claim against Recovery Law Group. (Adv. Dkt. No. 110). Plaintiffs attached numerous exhibits to their Motion including excerpts of transcripts of deposition testimony of Majors and Kisch (Adv. Dkt. No. 110, Ex. 4A and 4B); Majors' Retainer Agreement with Recovery Law Group (*Id*. at Ex. 4C); New Home Plate Lounge's proof of claim with attached Judgment (*Id*. at Ex. 4D); and the Affidavit of Stuart Gold, an expert retained by Plaintiffs to opine on the standard of care and duties owed to clients with respect to bankruptcy matters (*Id.* at Ex. 4E). Stuart Gold's Expert Report was filed as a separate pleading. (Adv. Dkt. No. 111).

On December 30, 2024, Defendant filed an *Ex Parte* Statement Regarding Deadline to Respond to Plaintiffs' Motion for Summary Judgment . (Adv. Dkt. No. 112). In it, Defendant asserted that the response deadline of January 2, 2025 provided by the Court was incorrect and that the correct response deadline was January 9, 2025, referencing the local *district* court rules.

Defendant's assertion of a January 9, 2025 due date for the Response, however, was incorrect because it was based on the District Court's local rules and not the Bankruptcy Court's local rules. Local Bankruptcy Rule 9014-1(b) states:

> Rule 9014-1 Motion Procedure Generally
>
>        *     *     *
>
> (b) Deadline for Response. Except as otherwise ordered by the court or applicable rule, the deadline to respond to any motion is 14 days after service (21 days after service for matters covered by F.R.Bankr.P. 2002(a)).

Fed. R. Bankr. P. 2002(a) does not include motions for summary judgment. Therefore, the 14-day time period for the filing of a response as noticed by the Court was correct. The local district court rules cited by Defendant in its *Ex Parte* Statement ¶1 are applicable to bankruptcy proceedings only if they are not expressly superseded by a specific bankruptcy rule or local bankruptcy rule. Fed. R. Bankr. P. 9029. In this case, it appears that Defendants were unaware of E.D. Mich. LBR 9014-1(b). Notwithstanding Defendant's mistaken belief that it was entitled to 21-days to respond to the Motion for Partial Summary Judgment as to Liability, the Court treated the *Ex Parte* Statement as a request for more time and allowed the same.

On January 9, 2025, Defendant filed its Objection to Plaintiff's Motion for Summary Judgment as to Liability (hereinafter "Response"). Defendant's Response adopted the factual recitation set forth in this Court's Opinion Denying Defendant's Motion to Dismiss found in Adv. Dkt. No. 44, pp.1-32. (Dkt. No. 113,

Brief, p.2, ¶1 "Plaintiff has foregone a narration of the procedural history of this case, and accordingly, Defendants will do the same and proceed directly to the issues at hand."). Defendant's Objection does not contain any further evidence (e.g., documents, deposition testimony, affidavits, etc.), nor does it contest any of the factual findings set forth in the Court's Opinion Denying Motion to Dismiss. On January 10, 2025, the Clerk of the Court issued a notice of deficient pleading with respect to Defendant's Response on the grounds that the proof of service was either missing or non-compliant, directing that a compliant proof of service be filed by January 17, 2025. Defendant filed a corrected proof of service, albeit untimely, on January 20, 2025.

On January 21, 2025, Plaintiffs filed their Reply Brief.

## II. JURISDICTION

This Court has "arising in" jurisdiction[22] over Plaintiffs' legal malpractice claim arising from Recovery Law Group's representation during this bankruptcy proceeding because, among other reasons, this claim arises only because of the

---

[22] Civil proceedings "arising in" a case under title 11 means proceedings that, by their very nature, could arise only in bankruptcy cases. These "arising in" proceedings "are not based on any right expressly created by title 11, but nevertheless, would have no existence outside of the bankruptcy." *In re Nu-Cast Step & Supply, Inc.*, 639 B.R. 440, 446 (Bankr. E.D. Mich. 2021)(internal citations omitted).

bankruptcy, it involves attorneys appointed by or under the supervision of the Court, and it invokes Debtors' right to have their bankruptcy estate administered properly. *See, e.g., Murray v. Willkie Farr & Gallagher LLP (In re Murray Energy Holdings)*, 654 B.R. 469, 476 (Bankr. S.D. Ohio 2023)("Court has arising-in jurisdiction to hear and determine this matter under 28 U.S.C. § 1334(b). . . . Given that the Court has arising-in jurisdiction, this is a core proceeding. And because this dispute 'stems from the bankruptcy itself,' the Court has the constitutional authority to enter a final order."); *Galloway v Bond, Botes & Stover, P.C.*, 597 F. Supp. 2d 676 (S.D. Miss. 2008)(legal malpractice claim against bankruptcy attorney for failing to amend bankruptcy schedules to include a personal injury suit that was an asset of the estate was a "core" proceeding "arising in" a case under title 11); *Tanamor v. Chang Law Group LLC (In re Tanamor)*, No. 13-00202, 2013 WL 3938978 (Bankr. D. Md., July 31, 2013)(court has "arising in" jurisdiction to hear legal malpractice claim); *Jackson v. Wessel (In re Jackson)*, 118 B.R. 243, 244–245 (E.D. Pa. 1990) (concluding that claim of malpractice against debtor's bankruptcy attorneys for advising the debtors to file bankruptcy when they had sufficient assets to cure the defaults, and for various additional acts of negligence in the course of the bankruptcy, qualified as "arising in" the bankruptcy case).

Moreover, in its original motion to dismiss signed by its counsel of record, Recovery Law Group admitted that *"[t]his is a core proceeding* under 28 U.S.C §

157(B)(2)(A) and (O) *as it arises in a case under title 11* and concerns the administration of the estate." (Adv. Dkt. No. 17, ¶ 1) (emphasis added). Recovery Law Group's supplemental brief also contains this same assertion. (Adv. Dkt. No. 34, ¶ 1). These admissions further establish this Court's "arising in" jurisdiction over Plaintiffs' legal malpractice claim. *See* Fed. R. Bankr. P. 9011 adopting Fed. R. Civ. P. 11(b)(a signature is a certification that to the best of the signor's knowledge, information, and belief, formed after a reasonable inquiry, the factual contentions have factual support); *Epixtar Corp. v. McClain & Co.* (*In Re Epixtar Corp.*), 414 B.R. 813, 817-18 (S.D. Fla. 2009) ("Having taken the position at earlier stages of the bankruptcy that this is a core proceeding, the Defendants are hard-pressed to argue otherwise at this juncture. Accordingly, the Court concludes this is a core proceeding.")

## III. STANDARD FOR SUMMARY JUDGMENT

The party seeking summary judgment under Fed. R. Civ. P. 56(c), incorporated into adversary proceedings by Fed. R. Bankr. P. 7056, bears the initial burden identifying the portions of the record which establish the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1996).

Once the plaintiff meets his or her initial burden, the burden then shifts to the non-moving party who must show some material fact as to which a genuine dispute exists. Rule 56 (e) (2) states that, when a motion for summary judgment is properly made and supported, the non-moving party may not rely on mere allegations in its pleadings or simple denials but must produce specific facts showing a genuine issue for trial. The failure to present any evidence to counter a well-supported motion is alone grounds to grant the motion. *Everson v. Leis*, 556 F 3rd 484, 496 (6th Cir. 2009), *citing Skousen v. Brighton High School*, 305 F.3rd 520, 528 (6th Cir. 2002).

While a court must proceed cautiously in considering subjective issues, the Supreme Court has instructed that the existence of subjective issues does not necessarily foreclose summary judgment disposition. *Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1479 (6th Cir. 1989) (synthesizing *Anderson v. Liberty Lobby*, 477 U.S. 242 (1986), *Celotex v. Catrett*, 47 U.S. 317 (1986), and *Matsushita Electric Industrial Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574 (1986)). Thus, a nonmoving party may not avoid a properly supported motion for summary judgment by arguing that it relies solely or in part upon credibility considerations or subjective evidence. Instead, the nonmoving party must present affirmative evidence to defeat a properly supported motion for summary judgment. *Id.*

Finally, the Sixth Circuit has concluded that, in the "new era" of summary judgments that has evolved from the teachings of the Supreme Court in *Anderson*, *Celotex*, and *Matsushita*, trial courts have been afforded considerably more discretion in evaluating the weight of the nonmoving party's evidence. *Street*, 886 F.2d at 1480. The nonmoving party must "do more than simply show that there is some metaphysical doubt as to the material facts." *Id*. If the record taken in its entirety could not convince a rational trier of fact to return a verdict in favor of the nonmoving party, the motion should be granted. *Id*.; *Cox v. Kentucky Dept. of Transp.*, 53 F.3d 146, 149-50 (6th Cir. 1995).

## IV. ANALYSIS

In this case, Plaintiffs move for partial summary judgment on the grounds that, based on the undisputed and acknowledged facts, Defendant is, as a matter of law, liable for legal malpractice. Under applicable Michigan law, a plaintiff in a legal malpractice case must prove four elements: (1) existence of an attorney-client relationship; (2) negligence in the representation; (3) that such negligence was a proximate cause of an injury; and (4) the fact and extent of the injury. *Simko v. Blake*, 532 N.W. 2d. 842, 846 (Mich. 1995).

Here, the undisputed and acknowledged facts establish each of these essential elements.

## A. Legal Malpractice

### 1. The Shastals and Recovery Law Group had an Attorney-Client Relationship

The Shastals entered into a written Retainer Agreement with Recovery Law Group dated August 19, 2020. (Adv. Dkt. No. 110, Ex. 4C). Recovery Law Group's employee filed the bankruptcy (Adv. Dkt. No. 110, Ex. 4A, 4B), and the Debtors' Summary of Assets and Liabilities shows a $1,835 payment from Debtors to Recovery Law Group for attorney fees. (Adv. Dkt. No. 15, Item 16).

Moreover, Recovery Law Group, in its Answer to the Complaint, admitted that it was the Shastals' lawyer stating both, "… Sheena Majors was assigned to the Shastals' case as part of her role as Plaintiff's Michigan attorney employed by Recovery Law Group" and "… Sheena Majors, in her capacity as an attorney for Recovery Law Group, filed the Debtors' Chapter 7 Voluntary Petition on August 24, 2020." (Adv. Dkt. No. 79, Answer, ¶¶ 30, 31).

### 2. Recovery Law Group was Negligent in the Representation

An attorney owes a client a duty of care and "must only act as would an attorney of ordinary learning, judgment, or skill under the same or similar circumstances." *Patel v. FisherBroyles, LLP*, 1 N.W.3d 308, 313 (Mich. Ct. App. 2022) *citing Simko v. Blake*, 532 N.W. 2d. 842, 844 (Mich. 1995).

47

The general rule in legal malpractice actions is that expert testimony is required to establish the applicable standard of conduct, the breach of that standard, and causation except in limited instances in which the malpractice is so obvious that no expert is needed. *Law Offices of Lawrence J. Stockler, P.C. v. Rose*, 436 N.W.2d 70, 87 (Mich. Ct. App. 1989); *Joos v. Auto Owners Ins. Co.*, 288 N.W.2d 443, 445 (Mich. Ct. App. 1979); *Reesor v. Norman Yatooma & Assocs.*, Nos. 289400, 289427, 2010 WL 1924838, *4 (Mich Ct. App., May 13, 2010).

Given this Court's long history and extensive work on the case, this Court both takes judicial notice of the facts which establish obvious malpractice and also relies on the expert report of Stuart Gold concerning the standard of care required in a bankruptcy case. Having considered both, this Court finds that the Defendant utterly failed to meet its duty of care to the Shastals.

The list of Recovery Law Group's breaches of its duty of care is lengthy but bears summarizing. Recovery Law Group did not make a reasonable investigation of the Shastals' financial circumstances. The motivation for the Shastals to seek legal counsel was aggressive collection efforts by a single creditor named New Home Plate Lounge. That creditor had a judgment, a copy of which was attached to their proof of claim. (Adv. Dkt. No. 110, Ex. 4D, Claim 10-3). Neither Majors nor Kisch saw the judgment before filing the bankruptcy case and, therefore, did not analyze it or understand its significance. Had they done so, they would have

realized the judgment was not joint against Mr. and Mrs. Shastal. The Shastals' home was owned by them as tenants by the entireties and, accordingly, the Shastals' home was not subject to execution by New Home Plate Lounge. Mich. Comp. Laws § 600.2807(1). *Accord, In re Holler*, 463 B.R. 733 (Bankr. E.D. Pa. 2011).

As evidenced in the Expert Report, an attorney representing the best interests of the Shastals should have at least explored, and likely pursued, available remedies under state law to obtain a manageable payment plan, thereby avoiding a bankruptcy filing completely. (See, e.g. Mich. Comp. Laws § 600.6201). The failure to do so was an obvious violation of the standard of care. (Adv. Dkt. No. 110, Ex 4E, Affidavit of Stuart A. Gold, ¶¶ 8 and 9).

Recovery Law Group's lack of investigation is further evident from the Schedules and Statement of Financial Affairs prepared by Recovery Law Group which were incomplete and grossly erroneous. The most glaring example is Recovery Law Group's failure to adequately investigate the value of the Shastals' residence. That failure led to a chain of events, exacerbated by Recovery Law Group's further errors and omissions, resulting in the loss of the Shastals' home and constituted a further violation of the applicable standard of care. (*Id*. at ¶¶ 7 and 13).

Irrespective of whether the bankruptcy should have been filed at all, Recovery Law Group improperly chose to file the Shastals' case under chapter 7, failing to analyze whether the Shastals had substantial equity in their home. Only after filing did Recovery Law Group realize its mistake and move to convert Debtors' chapter 7 case to a case under Chapter 13. Recovery Law Group then failed to adequately represent Debtors on that seminal motion. The original hearing date on the motion to convert was adjourned *twice* because Recovery Law Group failed to appear for the 341 hearing even though the Retainer Agreement required Recovery Law Group to do so. Even after the 341 hearing was eventually conducted, Recovery Law Group failed to appear for the adjourned date of the conversion motion, resulting in that motion being denied without prejudice. Recovery Law Group never renewed the motion to convert, and subsequent events resulted in that opportunity being lost. These critical errors led directly to the Shastals losing their and losing a substantial portion of their home equity. Again, this was an obvious violation of the applicable standard of care. (*Id.* at ¶13).

Recovery Law Group made yet another consequential mistake by failing to aid and counsel the Shastals in fulfilling their obligation to complete their financial management course (Form 423), even after Ms. Shastal twice asked Recovery Law Group for help on this matter, thereby delaying the Shastals' discharge and impeding their ability to set aside New Home Plate Lounge's judgment lien with

disastrous consequences (see footnote 14, *supra*). This was yet another obvious and deeply injurious violation of the standard of care. (*Id.* at ¶14).

The litany of significant errors goes on and on. The original schedules prepared by Recovery Law Group were incomplete and contained wrong information. Despite having clear communication from the Shastals as to the value of their house, for example, the incorrect valuation in the schedules was never corrected. Additionally, Recovery Law Group failed to safeguard the Shastals' homestead exemption of $60,725. But for the actions of the United States Trustee, described *supra*, pp. 21-22, the Shastals' would not have obtained the proper (or any) homestead exemption. On several occasions, Majors simply did not show up for hearings and many times failed to timely comply with promises to correct her errors. Not appearing at hearings up was not limited to Majors, however. On April 4, 2024, the Court sanctioned Recovery Law Group because Mr. Mulcahy failed to appear at a motion hearing. (Dkt. No. 234).

As a result of the various missteps by Recovery Law Group, New Home Plate Lounge filed a complaint seeking to revoke the Shastals' discharge under 11 U.S.C. § 727 based on the errors in their Schedules and Statement of Financial Affairs which the Shastals testified they "had not seen or reviewed prior to being filed with the Court." (Adv. Dkt. No. 44, p. 24 citing Dkt. No. 61, Hearing Recording at 23:43-24:50). The fact of Debtors' malpractice claim against

Recovery Law Group led this Court to conclude that there was "a direct conflict of interest between the Debtors and Recovery Law Group." (Adv. Dkt. No. 44, p. 23). Accordingly, the Shastals were forced to hire new counsel and incur additional attorney fees. As reflected in the report of Plaintiffs' expert, each of these events were violations of the applicable standard of care. (Adv. Dkt. No. 110, Ex. 4E, Gold Aff. ¶16).

The consequence of Recovery law Group's litany of errors was that the Shastals' bankruptcy case should never have been filed in the first place. And even if it had to be filed, with proper attention and care the Shastals would never have lost their home and the transfer of New Home Plate's lien to the sale proceeds would not have occurred. (*Id*. at ¶13).[23]   In sum, this entire bankruptcy was a steady stream of lapses, poor performance, and gross negligence.

### 3. Recovery Law Group's Negligence Was a Proximate Cause of The Shastals' Damages

To prove proximate cause in malpractice actions, an attorney's negligence must be the direct cause of the harm (cause-in-fact) and that harm must have been

---

[23] Plaintiffs argue that Defendant admitted its negligence in its Answer to the Amended Complaint ¶ 89. In its Answer, Recovery Law Group addresses these allegations stating that all of these allegations "constitutes a conclusion of law . . . to which no response is required. To the extent a response is deemed necessary, Recovery Law Group denies the allegation in its entirety." (Adv. Pro. Dkt. No. 79, ¶ 89 p. 13). Based on Defendant's Answer, this Court does not find that Defendant admitted to the alleged negligence but acknowledges its conclusions of law do not create a factual issue in dispute.

a foreseeable result of the defendant's actions (proximate cause). *Law Offices of Lawrence J. Stockler, P.C. v. Rose*, 436 N.W.2d 70, 81 (Mich. Ct. App. 1989) (citations omitted); *Charles Reinhart Co. v. Winiemko*, 513 N.W.2d 773, 776 (Mich. 1994).

Recovery Law Group's failure to recognize state court as the most effective venue for Shastals' legal issue was the cause-in-fact and the proximate cause of this whole bankruptcy debacle. Even assuming a bankruptcy case was necessary or appropriate, the filing of the wrong chapter proceeding coupled with multitudinous errors along the way was the cause-in-fact and proximate cause of the Shastals, their children and grandchild being evicted from their home at Christmastime, losing a significant portion of their home equity, and suffering emotional damages as well. (Adv. Dkt. Nos. 110, Ex 4E, Gold Aff.; 111, Expert Report).

Recovery Law Group's failure to properly advise the Shastals as to their financial management obligations was a cause-in-fact and the proximate cause of their discharge being delayed, causing continuing losses to the Shastals. *See* footnote 15, *supra*. Recovery Law Group's conflict of interest *vis a vis* the Shastals was a cause-in-fact and the proximate cause of Debtors having to hire a new attorney and engage in further protracted proceedings. (Adv. Dkt. Nos. 110, Ex 4E; 111).

4. **The Fact and Extent of the Injury**

There is no issue as to the fact of the injury. During the oral argument on the Defendants' Motion to Dismiss held on June 12, 2024, Recovery Law Group stated on the record that it was dropping its argument that the Complaint failed to state a claim with respect to damages, acknowledging that Debtors' discharges did not entirely obviate Debtors' damage claim. (Adv. Dkt. No. 29, Hearing Recording at 44:50-45:15). Even if this Court were to disregard that admission, the Shastals' damages consisted of, but was not limited to, the loss of their home, the delay of their discharge and loss of home equity, and the costs incurred because they had to hire new counsel to pursue this malpractice action. (Adv. Dkt. Nos. 110, Ex 4E; 111). The full extent of the Shastals' injuries resulting from Recovery Law Group's malpractice is yet to be determined. Moreover, damages, sanctions, or other relief may be available under § 526 of the Bankruptcy Code (Count II of the Amended Complaint) and is not addressed here.

**B. Defendant's Arguments in Opposition of Plaintiffs' Motion for Partial Summary Judgment**

**1. There Are Issues of Fact to Be Litigated**

Defendant argues that there are issues of fact "with respect to disputes regarding proximate cause, vicarious liability, claim assignability, timing and occurrence, the extent and calculation of damages, and the administrative handling

of filing and the roles of involved parties." (Adv. Dkt. No. 113, Defendant's Response, p. 2). These questions, however, are not factual questions. All of the material facts of this case are undisputed,[24] and Defendant has not provided any exhibits, deposition testimony, affidavits or expert reports to the contrary. Accordingly, this Court may decide this matter on Plaintiffs' Motion for Partial Summary Judgment.

### 2. Defendant's Legal Arguments Do Not Preclude Granting Partial Summary Judgment to Plaintiffs

Defendant raises seven legal arguments that it believes preclude partial summary judgment as a matter of law.[25] Defendant argues that Plaintiffs' Complaint must be dismissed because, as a matter of law: (1) malpractice claims are unassignable; (2) the statute of limitations for legal malpractice in Michigan has expired; (3) the malpractice claim is not property of the estate; (4) there is no showing that Plaintiff has suffered damages due to the actions of Recovery Law

---

[24] As previously noted, both Plaintiffs and Defendants adopted the facts set forth in this Court's Opinion Denying Defendants' Motion to Dismiss issued on August 9, 2024. (Dkt. No. 110, p.2; Dkt. No. 113, ¶1).

[25] An objection to a motion for summary judgment based on an interpretation of law is more appropriately viewed as a cross-motion for summary judgment on that same legal issue. Without any further facts to add to the record, and because discovery is closed, the legal issues are all that remain and may be decided by this Court.

Group; (5) Recovery Law Group is not vicariously liable for the actions or inaction of Sheena Majors; (6) the Trustee's actions during the chapter 7 case severed any proximate causal link between the Defendant's alleged negligence and Plaintiffs' losses; and (7) the Trustee has improperly engaged in champerty. The Court will address each of these legal arguments, in turn, below.

Defendant's first four arguments have already been litigated and determined by this Court. In several lengthy opinions, this Court has already ruled that: (1) litigation of the legal malpractice claims against Recovery Law Group by the Debtors and the Trustee is permissible and does not constitute an improper assignment of claims;[26] (2) the legal malpractice claim is not barred by the statute of limitations;[27] (3) the malpractice claim is property of the estate;[28] and (4)

---

[26] *See*, Dkt. No. 221, Order Approving Compromise; Dkt. No. 264, Opinion and Order Denying Motion to Vacate Order Approving Compromise.

[27] *See*, Adv. Dkt. No. 44, Opinion Denying Motion to Dismiss Adversary Proceeding, pp. 48-54; Adv. Dkt. No. 60, Opinion Denying Amended Motion for Reconsideration; Adv. Dkt. No. 98, Opinion and Order Denying Stay Pending Appeal.

[28] *See*, Dkt. No. 264; Adv. Dkt. No. 44, Opinion Denying Motion to Dismiss Adversary Proceeding, pp. 48-54; Adv. Dkt. No. 60, Opinion Denying Amended Motion for Reconsideration; Adv. Dkt. No. 98, Opinion and Order Denying Stay Pending Appeal.

Plaintiff has suffered damages due to the actions and/or inactions of Recovery Law Group.[29]

This Court now turns to Defendant's remaining arguments concerning vicarious liability, proximate cause, and champerty.

### a. Recovery Law Group is Vicariously Liable for the Actions of Sheena Majors and Other Attorneys it Employs

Under well-established Michigan law, the doctrine of *respondeat superior* provides that "[a]n employer is generally liable for the torts its employees commit within the scope of their employment." *Hamed v. Wayne Co.*, 803 N.W.2d 237, 244-246 (Mich. 2011); *Zsigo v. Hurley Med. Ctr*, 716 N.W.2d 220, 223 (Mich. 2006). The term "within the scope of employment" means acts of a servant while "engaged in the service of his master, or while about his master's business." *Barnes v. L.D. Mitchell*, 67 N.W.2d 208, 211 (Mich. 1954); *Hamed*, 803 N.W.2d at 244.

In this case, the Shastals retained Recovery Law Group to provide them with legal services relative to a bankruptcy proceeding. (Adv. Dkt. No. 9, Amended Complaint, ¶ 25). Pursuant to the Shastals' contract, Recovery Law Group provided the Plaintiffs with the services of Majors, who was a contract employee of Recovery Law Group. (Adv. Dkt. No. 9, ¶ 30; Dkt. No. 215, ¶ 28). There is no

---

[29] Recovery Law Group withdrew its argument that Plaintiffs did not suffer damages at the initial hearing on its Motion to Dismiss. (Adv. Dkt. No. 29, Hearing Recording at 44:50-45:15; Adv. Dkt. No. 44, Opinion Denying Motion to Dismiss Adversary Proceeding p. 31).

question that Majors' acts of negligence, starting with the initial filing,[30] took place during the course of her representation of the Plaintiffs in their bankruptcy proceedings pursuant to her employment by Recovery Law Group. Accordingly, under the doctrine of *respondeat superior* under Michigan law and as interpreted by Michigan courts, Recovery Law Group is vicariously liable for Majors' malpractice.

Recovery Law Group argues it should not be held vicariously liable for. Majors' negligent representation because her actions (or inactions) violated her employment duties because they were outside of the terms of her employment agreement and were not performed for the benefit of her employer. However, an employee is not acting outside the scope of his or her employment simply because his or her actions were contrary to the employer's orders or policies or standard of care. *Barnes*, 67 N.W.2d at 210; *Hamed*, 803 N.W.2d at 244. More importantly, Recovery Law Group's argument would eviscerate the doctrine of *respondeat superior*. Any employer could completely avoid liability by adopting a policy that

---

[30] Recovery Law Group had a number of its lawyers work on this bankruptcy case, but that is irrelevant to Recovery Law Group's liability. While the parties dispute whether it was Majors or Kisch who filed the Petition, Schedules, and Statement of Financial Affairs, (Adv. Dkt. No. 110, Ex. 4A and 4B), it is undisputed that both were employed by Recovery Law Group. Regardless of which of Recovery Law Group attorney committed the negligence, the liability remains with Recovery Law Group.

requires its employees not to make mistakes. *Barnes*, 67 N.W.2d at 212.  As the

*Barnes* court stated:

> If it were true that a servant is outside the scope of his employment
> whenever he disobeys the orders of his master, the doctrine of
> respondeat superior would have but scant application, for the master
> could always instruct his servant to use ordinary care under all
> circumstances. The servant's negligence would therefore always be
> contrary to orders and the nonliability of the master would follow. But
> such is not the law.

*Id.*  The law is that, even if an act is contrary to an employer's instruction, liability

will attach as long as the employee accomplished the act in furtherance of, or in the

interest of, the employer's business. *Hamed*, 803 N.W.2d at 244 ("Although an act

may be contrary to an employer's instructions, liability will nonetheless attach if

the employee accomplished the act in furtherance, or the interest, of the employer's

business." citation omitted).

This is precisely what Majors was doing.  She was a contract employee of

Recovery Law Group providing services for its benefit and getting paid by

Recovery Law Group for these services.

Recovery Law Group also argues that it is not vicariously liable for any of

Majors' negligent actions or inactions because Majors was not acting for the

benefit of Recovery Law Group.  Recovery Law Group bases this assertion on the

fact that none of the pleadings that Majors filed in the Shastals' case indicated that

she was an attorney for Recovery Law Group.  Instead, each of the pleadings she

59

filed were either filed by Sheena Majors individually or by Sheena Majors, Majors Law PLLC. Majors, however, explains that she filed the pleadings in the Shastals' case under her own name because Recovery Law Group did not allow her access to their Best Case software so she had to use her own software which did not allow the use of outside attorney or firm names. Her software defaulted to the authorized user (herself). (Dkt. No. 54, hearing at 11:52-12:59). Majors states that she was not immediately aware of this issue but notified Recovery Law Group of this problem when she became aware of it. *Id.*

Moreover, even without Majors' explanation, there is more than ample evidence in the record that Majors was acting on behalf of Recovery Law Group. Majors signed an employment agreement with Recovery Law Group (Dkt. No. 205, Ex. 1), the Shastals paid Recovery Law Group for representation and Recovery Law Group paid Majors for her work on the Shastals' file (Dkt. Nos. 229, 230, ¶¶ 50, 51), and Majors turned the Shastals' file back to Recovery Law Group at some point in the Spring of 2021 when her employment agreement was terminated (Dkt. No. 55, Ex. C). Recovery Law Group has not provided any evidence to the contrary. Indeed, it was this undisclosed relationship between Majors and Recovery Law Group in violation of Fed. R. Bankr. P. 2016(b) that caused the Court to issue its first order to show cause.

### b. Defendant's Negligence Was the Proximate Cause of Plaintiffs' Injuries

Recovery Law Group argues that Plaintiffs have not shown that its alleged actions were the proximate cause of Plaintiffs' loss. Recovery Law Group argues that, even if it is found that Recovery Law Group is responsible for the negligent acts alleged, there are intervening causes which break the causal connection between the Defendant's alleged negligent conduct and the Plaintiffs' injury. An intervening cause is "one which actively operates to produce harm to another after the negligence of a Defendant." *Meek v. Dep't of Transp.*, 610 N.W.2d 250, 258-259 (Mich. Ct. App. 2000), *overruled on other grounds by Grimes v. Michigan DOT*, 715 N.W.2d 275 (Mich. Ct. App. 2006). A superseding cause is one that breaks the causal connection between the defendant's negligent conduct and the plaintiff's injury, and itself becomes the direct, immediate cause of the injury. An intervening cause is a superseding cause only if it is unforeseeable. *People v. Schaefer*, 703 N.W.2d 744, 785-786 (Mich. 2005), *overruled in part on other grounds by People v. Derror*, 715 N.W.2d 822 (Mich. 2006); *Heitsch v. Hampton*, 423 N.W.2d 297, 298-299 (Mich. Ct. App. 1988).

Recovery Law Group argues that Plaintiffs' damages were not caused by its acts of negligence but were, instead, caused by the intervening superseding conduct of the chapter 7 trustee who opposed the motion to convert the matter to

chapter 13 and who ultimately filed a motion to sell the Shastals' home under §
363 of the Bankruptcy Code.

The Bankruptcy Code sets forth the duties required of a chapter 7 trustee. 11
U.S.C. § 701 *et seq*. These required duties are numerous and include marshalling
a debtor's assets for the benefit of creditors. In this case, the Trustee was acting
within his mandate when he opposed the Debtors' motion to convert and pursued a
motion to sell the Debtors' Residence. Had he not done so, the Trustee would have
been liable for dereliction of duty.

Moreover, there is no question that the loss of the Shastals' home was a
direct foreseeable result of the Defendant's negligence in failing to recognize that a
bankruptcy filing was unnecessary. It was further a direct foreseeable result of
filing a chapter 7 petition that requires the liquidation of non-exempt assets while
of a chapter 13 petition could have avoided the sale of the Debtors' home by way
of a wage earner payment plan. There is no question that once a chapter 7 petition
was improperly filed that it was foreseeable that the chapter 7 Trustee, who owed a
duty to protect and preserve the property of the estate to maximize the distribution
to the creditors, would oppose a motion to convert the bankruptcy to a chapter 13
proceedings because Recovery Law Group repeatedly failed to attend the § 341
meeting of creditors so the Trustee was without information necessary to address
the conversion request. There is also no question that it was foreseeable that the

Trustee would succeed in his efforts to bar conversion because Recovery Law Group failed to appear at scheduled Court hearings on the Motion to Convert and failed to refile the Motion to Convert before the Shastals' home was sold. Given that the actions of the Trustee were in complete conformity with his duties under the Bankruptcy Code and entirely foreseeable, the Trustee's conduct cannot constitute an intervening superseding cause that would cut off Defendant's liability for its negligent conduct.

### c. The Trustee did not engage in Champerty

Champerty is "an agreement in which a person without interest in another's suit undertakes to carry it on at its own expense, in whole or in part, in consideration of receiving, in the event of success, a part of the proceeds of the litigation." 14 C.J.S. Champerty and Maintenance § 1.  More simply, champerty is the practice of an uninterested third-party funding litigation in exchange for a share of the proceeds.  However, the Order Approving Compromise entered by this Court in accordance with Fed. R. Bankr. P. 9019 does not raise any concerns about champerty.  The Trustee is not a disinterested party.  He is a pivotal player in the chapter 7 bankruptcy case.  Moreover, the malpractice action is colorable and, if successful, will benefit both the Shastals and the Trustee acting on behalf of Shastals' creditors.  Equally important, the Order Approving Compromise

specifically addressed the benefit of the agreement between the Debtors and the Trustee and was approved by this Court after proper notice and hearing. Recovery Law Group did not appeal the Order Approving Compromise (although it did seek to have the Court vacate this order ten months after it was entered). (Dkt. No. 251). In short, this argument is simply another thinly disguised attempt to relitigate the validity of the Order Approving Compromise and the Court's Opinion and Order Denying Recovery Law Group's Motion to Vacate Order Approving Compromise. (Dkt. No. 264).

## V.

## CONCLUSION

For the reasons set forth in this Opinion, Plaintiffs' Motion for Partial Summary Judgment is GRANTED on Plaintiffs' legal malpractice claim as to liability only. A determination of damages on Plaintiffs' legal malpractice claim and a determination of liability and damages on Plaintiffs' § 526 claim await further proceedings.

**Signed on February 7, 2025**



/s/ Joel D. Applebaum

**Joel D. Applebaum**
**United States Bankruptcy Judge**