# UNITED STATES BANKRUPTCY COURT
# EASTERN DISTRICT OF MICHIGAN
# SOUTHERN DIVISION

In re:

| | |
|---|---|
| John Frederick Shastal, Jr. | Case No. 20-31468-jda |
| Kimberly Ann Shastal, | Chapter 7 |
| | Hon. Joel D. Applebaum |

    Debtors.
_____/

SAMUEL D. SWEET, Chapter 7
Trustee for the Estate of Debtors,
John Frederick Shastal Jr. and
Kimberly Ann Shastal, and
JOHN FREDERICK SHASTAL,
an individual, and KIMBERLY
ANN SHASTAL, an individual,

    Plaintiffs,

v.                                                                    Adv. No. 24-3033

MAJORS LAW, PLLC,
a Professional Limited Liability
Company, SHEENA L. MAJORS,
an individual, DESIRAE BEDFORD,
an individual and RECOVERY LAW GROUP,
a Professional Corporation,

    Defendants.
_____/

ANDREW R. VARA, United States Trustee,

    Plaintiff,

v.                                                                    Adv. No. 24-3076

RECOVERY LAW GROUP, APC and
SHEENA MAJORS,

    Defendants.

_____/

## <u>OPINION AWARDING DAMAGES TO PLAINTIFFS AND AGAINST RECOVERY LAW GROUP PURSUANT TO 11 U.S.C. § 526(c)(2)</u>

### <u>INTRODUCTION</u>

On September 17, 2025, this Court issued its Opinion Granting Motion for Partial Summary Judgment With Respect to 11 U.S.C. § 526 Filed by John and Kimberly Shastal and the Chapter 7 Trustee (the "September 17th Opinion," Dkt. No. 204) and corresponding Order (the "September 17th Order," Dkt. No. 205). In its September 17th Opinion, the Court determined that Recovery Law Group was liable to the Shastals for Recovery Law Group's violations of 11 U.S.C. §§ 526(a)(1) and (2) (failing to perform promised services and for making untrue or misleading statements). As a result of that determination, Recovery Law Group is liable to the Shastals "in the amount of any fees or charges in connection with providing bankruptcy assistance to [the Shastals] that [Recovery Law Group] received, for actual damages, and for reasonable attorneys' fees and costs . . . ." 11 U.S.C. § 526(c)(2).

In its September 17th Order, the Court set an in-person evidentiary hearing for October 20, 2025 to determine damages and ordered the parties to exchange witness lists and proposed evidentiary hearing exhibits no later than October 13, 2025. The Court's September 17th Order cautioned that "[f]ailure to timely file and exchange witness lists and exhibits may result in witnesses or exhibits being stricken." The September 17th Order further provided that "no adjournments or modification of *any* of the dates set forth in this Order will be permitted except on written motion for good cause shown." (emphasis in original). The Court held an evidentiary hearing on October 27, 2025 and this opinion constitutes the Court's findings of fact and conclusions of law under Fed. R. Bankr. P. 7052.

## I.

## PRELIMINARY STATEMENT REGARGING EVIDENTIARY HEARING AND RECOVERY LAW GROUP'S FAILURE TO APPEAR

As discussed below, the evidentiary hearing was adjourned from October 20, 2025 to October 27, 2025 solely to accommodate Recovery Law Group. Although well aware of the date and time of the hearing, no one from or on behalf of Recovery Law Group appeared at the October 27, 2025 evidentiary hearing.[1] For the reasons

---

[1] Nate Reznick, who identified himself as Recovery Law Group's appellate counsel, was present in the courtroom during the hearing but did not put his appearance on the record.

placed on the record at the inception of the evidentiary hearing, the Court concluded that it should proceed with the evidentiary hearing notwithstanding Recovery Law Group's unexplained absence. The Court's reasons are reiterated below.

Recovery Law Group has been represented in this adversary proceeding since or near its inception by Peter Mulcahy, Recovery Law Group's General Counsel. At a May 14, 2025 final pretrial conference and hearing on the United States Trustee's Motion to Approve Compromise (*See* Case No. 20-31468, Dkt. No. 268), Mr. Mulcahy disclosed that he was suffering from an aggressive form of cancer and he would not be able to continue as lead litigation counsel in this adversary proceeding. Instead, he indicated that Recovery Law Group would need to engage successor counsel (Dkt. No. 190, Transcript of May 14, 2025 Final Pre-Trial Conference, page 9, line 19-21; the entire exchange is set forth in endnote 1).[i]

At the conclusion of the hearing, the Court denied the United States Trustee's Motion to Compromise and, on May 19, 2025, issued an Order: (1) directing Plaintiffs to file a motion for partial summary judgment to address the effect of the Court's Order granting summary judgment on Plaintiffs' legal malpractice claim on Plaintiffs' claims under § 526; and (2) *requiring Recovery Law Group to advise the Court by July 11, 2025 whether Recovery Law Group was going to retain successor counsel* (Dkt. No. 160; full text at endnote 2).[ii] Notwithstanding this unambiguous

Order, neither Mr. Mulcahy nor anyone at Recovery Law Group advised the Court whether successor counsel would be retained and, if so, by when.

In compliance with the Court's May 19, 2025 Order, Plaintiffs filed their Motion for Partial Summary Judgment on June 12, 2025 (Dkt. No. 162), and Recovery Law Group, through Mr. Mulcahy, filed its response on July 10, 2025 (Dkt. No. 183). A hearing on the motion for partial summary judgment was scheduled for August 13, 2025, *three months after* the May 14, 2025 hearings, thereby giving Recovery Law Group more than adequate time to find replacement counsel. To the Court's surprise, having received no written or telephonic request or motion to adjourn, Mr. Mulcahy did not appear at the August 13, 2025 summary judgment hearing. Instead, Morrie Lefkowitz, one of Recovery Law Group's "local attorneys/partners," appeared on behalf of Recovery Law Group as one-time "special counsel." According to Mr. Lefkowitz, Mr. Mulcahy was unable to travel due to health issues (Dkt. No. 200, recording at 1:55 – 4:55 of the August 13, 2025 hearing on Motions for Partial Summary Judgment; full transcript at endnote 3).[iii] Mr. Lefkowitz did not know why Recovery Law Group failed to comply with this Court's Order, but nevertheless indicated that Mr. Mulcahy remained attorney of record for the case. *Id.*

Following the hearing, the Court issued its September 17th Opinion holding Recovery Law Group liable to the Shastals under 11 U.S.C. § 526 and ordered the case to proceed to trial on the amount of damages only.[2]

On October 3, 2025, Recovery Law Group filed a Corrected Emergency Motion to Extend Pretrial Deadlines At Least 30 Days. In that motion, Recovery Law Group referenced four reasons for the requested emergency extension, *none* of which reference Mr. Mulcahy's health issues or the need to retain substitute counsel.[3]

---

[2] Recovery Law Group had filed a motion for reconsideration of this Court's September 17, 2025 Opinion and Order. On October 6, 2025, this Court denied the motion for reconsideration in a 16-page opinion (Dkt. No. 220).

[3] The four reasons set forth in Recovery Law Group's motion were:

(1) Recovery Law Group has a motion for reconsideration pending before the Court which could eliminate the need for trial or materially change the scope of proof, witnesses, and exhibits;

(2) due to the present government shutdown, the Court may be limited in resources and the United States Trustee may not be able to attend the hearing;

(3) the District Court has not yet ruled on Recovery Law Group's motion to withdraw the reference which, if granted in whole or in part, could impact the pre-trial and trial schedule or obviate the trial entirely; and

(4) the parties are preparing to mediate in good faith. With respect to this last reason, the Court had previously ordered mediation and required that it to occur no later than August 30, 2025. Due to Recovery Law Group's inaction, the mediation did not occur notwithstanding the

6

On October 6, 2025, the Court denied Recovery Law Group's motion in a written Order (Dkt. No. 221).

On October 8, 2025, less than a week after Recovery Law Group filed its Emergency Motion to Extend Pretrial Deadlines, the Court held a telephonic status conference requested by Plaintiffs' counsel solely to discuss whether proofs would be required on attorneys' fees at the October 20, 2025 evidentiary hearing or whether attorneys' fees would be addressed at the conclusion of the litigation through the submission of fee applications. Mr. Mulcahy appeared by telephone on behalf of Recovery Law Group. During this status conference, Mr. Mulcahy unexpectedly asked the Court to delay the trial date for at least 30 days. Although unmentioned in Recovery Law Group's motion filed just 5 days earlier, Mr. Mulcahy now claimed that he had experienced two conditions unrelated to his cancer which necessitated an adjournment: (i) he previously had sepsis, which put him in the hospital at the time of the August 13, 2025 hearing (Dkt. No. 222, October 8, 2025 hearing at 9:20-

_____

Court's Order. Recovery Law Group's sudden willingness to mediation was therefore "too little, too late."

(Dkt. No. 218). It was only at the October 8 status conference that Mr. Mulchay had represented that he suffered from a collapsed lung and was prohibited from travel for 30 days (Dkt. No. 222, October 8, 2025 status conference at 4:22).

9:40);[4] and (ii) on October 3, 2025, he suffered from collapsed left lung (*Id.* at 4:22).[5]

According to Mr. Mulcahy, he was not permitted to travel by air for a month and, moreover, would need *at least* 30 days to bring in successor counsel (*Id.* at 4:43).[6] He also indicated that, while the hearing was only on damages, it was not simple matter, and it would take successor counsel time to prepare. (*Id.* at 14:45-15:48).

Although opposing counsel was not unsympathetic to Mr. Mulcahy's health issues, he indicated that he had other trials scheduled in November and December. If the evidentiary hearing was significantly delayed, he would not be available to try the case until sometime in 2026 (*Id.* at 14:10-14:38).

Because this adversary proceeding has already suffered its fair share of delays, the Court was loathe to again delay proceedings. Mr. Mulcahy knew he was ill and had acknowledged *as early as May 14, 2025* that he needed to seek replacement counsel. He then failed to comply with the Court's May 19, 2025 Order requiring him to advise whether he was going to continue to represent his client or obtain

---

[4] This contradicts Mr. Lefkowitz's statements on the record that Mr. Mulcahy was available appear by telephone at that hearing. (Dkt. No. 200, recording at 1:55 – 4:55 of the August 13, 2025 hearing on Motions for Summary Judgment).

[5] Neither of these assertions were corroborated.

[6] Later during the status conference, Mr. Mulcahy asks for all of the dates to be pushed out 30 days and suggests that he might appear as counsel himself. (Dkt. No. 222, October 8, 2025 status conference at 11:15-11:45).

successor counsel. He raised these new health concerns suddenly, not in writing as the Court's previous Order required, but orally at a status conference intended solely to address proofs regarding Plaintiffs' attorneys' fees.

Moreover, the October 20, 2025 evidentiary hearing was for the purposes of determining "actual damages" only under § 526(c)(2) -- not a complicated matter. Discovery had long since concluded and, notwithstanding this Court's September 17th Order and October 8, 2025 Order Adjourning Evidentiary Hearing (Dkt. No. 223), Recovery Law Group did not file witness or exhibit lists. Thus, Recovery Law Group's presentation would be limited to cross-examining Plaintiffs' witnesses and closing argument. Nevertheless, the Court adjourned the evidentiary hearing to October 27, 2025 in an effort to accommodate Mr. Mulcahy and Recovery Law Group. This provided sufficient time to allow Mr. Mulcahy to travel by air or for Recovery Law Group obtain replacement counsel, as it had committed to do in May 2025, while at the same time avoiding the need to push the evidentiary hearing into the next calendar year.

Mr. Mulchay disagreed that replacement counsel could be brought up to speed in three weeks but stated on the record with respect to the retention of successor counsel, "I think that's probably what's going to have to happen" (*Id.* at 20:40-20:51).

On October 27, 2025, the Court held the adjourned evidentiary hearing. Plaintiffs' counsel appeared at the hearing along with their clients and witnesses. No one appeared at the hearing on behalf of Recovery Law Group. Moreover, no one on behalf of Recovery Law Group alerted the Court -- by telephone or in writing -- that no one would be appearing at the hearing on behalf of Recovery Law Group. Not coincidentally, only Recovery Law Group's appellate counsel was present in the courtroom, although he did not place his appearance on the record or participate in the hearing.

As detailed in this Court's prior opinions (*See, e.g.*, Dkt. Nos. 44, 202, and 204), this was not the first time Recovery Law Group failed to appear at a scheduled hearing, failed to comply with Court orders, failed to properly file papers or pleadings, or failed to timely file papers or pleadings. In light of the delays in this case, Recovery Law Group's history of non-compliance or poor compliance, its failure to obtain replacement counsel notwithstanding its repeated promises to the contrary, the inconsistent and unsubstantiated excuses proffered by Recovery Law Group for additional adjournments, and the adjournment granted notwithstanding the unexpected oral request at a status conference utterly unrelated to scheduling, the Court elected to go forward with the evidentiary hearing. And, contrary to Mr. Mulcahy's assertion at the October 8th status conference, this evidentiary hearing, albeit heart wrenching, was a "simple matter."

# II.

## ANALYSIS

Bankruptcy Code § 526(a) was established to curb abuse of the bankruptcy system, including misconduct by attorneys. Once misconduct has been established, the party in violation is liable for "any fees or charges in connection with providing bankruptcy assistance to such person that such debt relief agency has received, for actual damages, and for reasonable attorneys' fees and costs. . . ." 11 U.S.C. §526(c)(2).

Actual damages consist of both economic damages and non-economic damages. Non-economic damages include damages for emotional distress. *Grimm v GPG Processing, LLC*, No. 2:18-CV-1522, 2019 WL 4508921, at *2 (S.D. Ohio, September 19, 2019), *report and recommendation adopted* No. 2:18-CV-1522, 2019 WL 4958073 (S.D. Ohio, October 8, 2019)(actual damages include out-of-pocket expenses along with emotional distress damages under the FDCPA); *In re Tapp*, No. 19-62481, 2020 WL 4810074 at *3 (Bankr. E.D. Mich., July 10, 2020) (emotional damages qualify as "actual damages" under § 362(h)); *In re Weaver*, No. 17-32042, 2023 WL 3362064, at *7–8 (Bankr. E.D. Mich., May 10, 2023)(emotional distress damages awarded for violation of the discharge injunction based on debtor's testimony and documentary evidence).

At the evidentiary hearing, Plaintiffs' offered into evidence five exhibits: (i) a summary of economic damages totaling $199,322.15; (ii) Summary of Assets and Liabilities and Certain Statistical Information and the Statement of Attorney for Debtor(s) Pursuant to F.R.Bankr.P. 2016(b) forms, both of which were filed in the main bankruptcy case; (iii) copies of cashier checks showing payments to Lapeer Meadows, where the Shastals' mobile home trailer was situated and to Michael Conley, the previous owner of the mobile home trailer; (iv) Customer Account Record of Pod Enterprises, from whom the Shastals rented storage pods to store their belongings after their eviction; and (v) the Chapter 7 Trustee's Cash Receipts and Disbursements Record. The Court carefully scrutinized each of these exhibits before admitting them into evidence. Plaintiffs also called four witnesses to the stand: (i) Samuel Sweet, the chapter 7 Trustee; (ii) Debtor/Plaintiff Kimberly Shastal; (iii) Shannon Dockery, Ms. Shastal's closest friend for over 40 years; and (iv) the Shastals' son, Zach Shastal.

## A. ECONOMIC DAMAGES

In support of Plaintiffs' claim for economic damages, Plaintiffs relied on Sam Sweet, the Chapter 7 Trustee and Plaintiffs' Exhibits 1 through 5. Mr. Sweet first explained why, in the first place, the Shastals' bankruptcy filing was unnecessary. According to Mr. Sweet, and later corroborated by Ms. Shastal, the genesis of the

Shastals seeking bankruptcy advice was their fear about needing to protect their marital home against a judgment by New Home Plate Lounge against Mr. Shastal only and collection actions undertaken by New Home Plate Lounge. The Shastals' home, however, was held as tenants by the entirety and, as Mr. Sweet explained, the home was thereby protected from the claims of Mr. Shastal's *individual* creditors.[7] Mr. Sweet also testified about his efforts to engage with the Shastals' counsel about the case and a possible conversion of the case to chapter 13 so that a plan to save the home could be proposed, among other issues. Although Mr. Sweet opined that the bankruptcy case was unnecessary to protect the home from the start, and that conversion to chapter 13 would have allowed the Shastals to propose a chapter 13 bankruptcy plan to save their home, the inaction of the Shastals' counsel left him no choice but to move forward with a sale of the home to monetize the considerable non-exempt value for the benefit of creditors.

Mr. Sweet then testified concerning the economic damages suffered by the Shastals as itemized in the Summary of Damages, Exhibit 1 (Dkt. No. 225). These damages included the attorney's fees paid to Recovery Law Group, the case filing fee, the conservatively estimated loss of the increased value in the home over the last several years, the amount paid to purchase a mobile home trailer and the trailer

---

[7] Mr. Sweet's opinion is consistent with the Expert Report of Stuart Gold filed on December 19, 2024 (Dkt. No. 111).

lot rent, Ms. Shastal's rent for alternative quarters prior to acquisition of the trailer, a home cleaning fee, home sale closing costs, Trustee fees and fees for his counsel in connection with sale, and payment of sale proceeds totaling $43,751.81 to New Home Plate. All of these damages were adequately documented and supported in Exhibits 2 through 5 and by Mr. Sweet's testimony. Accordingly, the Court finds that an award of economic damages to the Shastals in the amount of $199,332.15 is warranted and appropriate.

## B. NON-ECONOMIC DAMAGES

In determining the amount of non-economic damages for emotional distress, there must be proof that there is emotional harm that qualifies for an award of actual damages and that there is a causal link between the violation and the resulting injury. *In re Weaver*, No. 17-32042, 2023 WL 3362064, at *7–8 (Bankr. E.D. Mich., May 10, 2023)(addressing emotional distress damages arising from repeated violations of discharge injunction); *Perviz*, 302 B.R. at 371. Courts have allowed compensatory damages for emotional distress, absent any demonstrable out-of-pocket expenses, if two conditions are met: (1) the debtor clearly suffered some appreciable emotional and/or psychological harm; and (2) the actions giving rise to the distress were severe in nature. *Id*. The two factors are balanced: the greater the extent of the creditor's violations, the less corroborating evidence will be needed to establish compensable

emotional distress. *Id*. Conversely, the less severe the creditor's conduct, the more important corroborating evidence will become to sustain a request for compensatory damages for emotional/mental distress. *Id*. Corroborating evidence is helpful but not always needed. *Id., citing In re Poole*, 242 B.R. 104, 112 (Bankr. N.D. Ga. 1999). In other words, if the creditor's conduct is so egregious and extreme that one would normally expect emotional distress to occur, then a court may allow such damages without requiring additional evidence if it finds the debtor's testimony to be credible. *See, In re Jones*, 603 B.R. 325, 331-332, 335 (Bankr. E.D. Ky. 2019) (emotional distress damages awarded based solely on Debtor's testimony regarding how creditor's actions post-discharge caused her "tremendous stress and embarrassment ... as well as the erosion of her familial relationships.")

Here, there was ample evidence that the Shastals suffered demonstrable economic damage so the Shastals' emotional distress is compensable. Even in the absence of economic injury, however, the Shastals would be entitled to recovery for their emotional distress because, as described below, they clearly suffered appreciable emotional and/or psychological harm. And, as detailed in this Court's prior opinions, Recovery Law Group's actions giving rise to the distress were very severe in nature.

The Shastals' emotional distress damages were the subject of testimony by Ms. Shastal, and corroborated by the testimony of her close friend, Shannon

Dockery, and by Ms. Shastal's son, Zach Shastal. The Shastals have been married for over 30 years and have three children, Zach being the youngest. For the seven years prior to the bankruptcy filing, they lived in a 100 year old Victorian home in North Branch, Michigan. The home, as described by Ms. Dockery, was beautiful with amazing woodwork. Zach testified that it was the nicest home in a nice neighborhood and his parents' dream home. The backyard had an in-ground pool and a fenced yard "perfect for their 5 dogs." There was a park down the street where Ms. Shastal would regularly take her grandchildren. In addition to Mr. and Mrs. Shastal, their son Zach, then in his early 20's lived with them. Because Zach shared custody of his daughter, she too lived part time in the home. Ms. Dockery, her closest friend for over 40 years, lived one street over and she would see Ms. Shastal every day.

Ms. Shastal described the house as a "home," a joyous place, the center of their family life, a place for all of the children and grandchildren to gather on holidays, and regularly for pool parties, cook outs and other celebrations.

The Shastals reached out to Recovery Law Group because of the judgment obtained by New Home Plate Lounge and subsequent collection action taken by it. Mr. Shastal located Recovery Law Group through the internet. When asked what they hoped to accomplish, Ms. Shastal said "don't take our stuff, don't take our home

. . . . . We didn't have much, but what we had was ours."  Protecting the home was everything.

Recovery Law Group's violations of § 526(a) have been thoroughly described in this Court's previous opinions (*See*, Dkt. Nos. 124, 202 and 203), and so it is unnecessary to belabor them here.  Recovery Law Group's violations, and the impact these violations have had on the Shastals, inform this Court's award of non-economic damages.  These violations resulted in the Shastals learning they were being evicted from their dream home during Christmas 2021, packing over the holiday season and with the eviction occurring in early January 2022.  As Ms. Shastal described, they were scared and confused, not understanding what had happened to cause this sudden eviction.  They were forced to move their belonging into storage pods because they could not find storage facilities.  Ms. Shastal was forced to find living arrangements for her three remaining dogs (two had died prior to the eviction). Because they didn't have sufficient savings, Mr. and Mrs. Shastal were forced to live apart after 30 years of marriage.  Ms. Shastal moved in with her sister-in-law, to whom she paid rent, and Mr. Shastal moved to Wisconsin to find work.  Their son and granddaughter also had to make alternative living arrangements.  Ultimately, the Shastals moved into a used trailer in a mobile home park, spending what little equity they received from the sale of their home to make needed repairs.

Ms. Shastal, who previously worked part-time for enjoyment, not economic necessity, now needs to work full time at Walmart. She described herself as often feeling depressed and numb, simply going to work and coming home and going right to sleep. She frequently skips meals, suffers severe anxiety attacks, and was placed on anti-depressant medication. She further testified that, while she is grateful to have a roof over her head, she hates living in a cramped trailer with no space for her children and grandchildren to gather as a family.

Prior to the bankruptcy filing, Mr. Shastal was described by Ms. Shastal and their son Zach as being compassionate and caring, fun and outgoing, enjoying life, someone who took care of himself, and a lover of the outdoors who enjoyed fishing and hunting. Since losing the home, Ms. Shastal says she no longer recognizes him and their once close relationship has suffered. She describes him as being severely depressed and inactive, sitting on the couch all day watching television. Zach describes his father as "a shell of himself," a description corroborated by Ms. Dockery.

Ms. Dockery testified that Ms. Shastal no longer cares if she eats, and Ms. Dockery often comes over to cook for them because Ms. Shastal no longer has the energy or will to cook for herself. Zach Shastal and Ms. Dockery both testified that Ms. Shastal has lost a lot of weight and cries frequently, and Ms. Dockery described how she would lie in bed next to Ms. Shastal and try to comfort her while she cried.

The Court also noticed how gaunt Ms. Shastal appeared and how difficult it was for her get through her testimony without crying.

The Court found all of the witnesses to be extremely credible. It is abundantly clear from the testimony of Ms. Shastal, as corroborated by the testimony of Ms. Dockery and Zach Shastal and the Court's own observations, that the Shastals' lives were shattered by Recovery Law Group, and the sting of loss was made all the more painful because it was unnecessarily caused by the very people in whom they placed their trust and who, in turn, promised to help them. Moreover, given Mr. Shastal's advanced age, he is now 78, an economic recovery is unlikely.

At the conclusion of the evidentiary hearing, the Shastals' counsel asked for non-economic damages of (i) $250,000 for the pain and trauma suffered by the Shastals in connection with the loss of their home and family life, plus (ii) $250 per day for the continued stress of the bankruptcy case over the past 5 years, the scattering of the family, and being forced to wake up in a "hated" trailer, among other considerations, which counsel calculated at $250 x 940 days or $235,000, plus (iii) $250 per day for another two years, or $182,000, to account for Recovery Law Group's "proclivity for delay" and until appeals are decided and it becomes more likely that the Shastals will finally see some compensation, for a grand total of non-economic damages of $667,500.

While the Court understands how this amount was calculated and appreciates the severe emotional and physical toll this case has had on the Shastals and, indeed, their entire family, the Court concludes that the amount requested for non-economic damages is, in part, duplicative and excessive and, with respect to the two year per diem request, unduly speculative. The Court, therefore, rejects the per diem requests and awards the Shastals non-economic damages in the amount of $250,000, for a combined award for economic and non-economic damages totaling $449,332.15. Plaintiffs' counsel shall file fee applications as permitted under § 526(c) within 21 days of the date of Judgment entered in connection with this Opinion, and Recovery Law Group shall have 14 days thereafter to review and respond. Fees which are finally determined and awarded will be added to the Judgment amount. The Court will prepare a separate Judgment in accordance with this Opinion.

Signed on November 6, 2025



/s/ Joel D. Applebaum

Joel D. Applebaum
United States Bankruptcy Judge

---

[1] **THE COURT**:

 . . . But let me ask this question without prying too deeply: Do either of you [Assistant United States Trustee Ronna Jackson and Peter Mulcahy, General Counsel of and attorney representing Recovery Law Group] have health issues currently that's going to -- that I need to take into consideration in terms of when we set trial dates, or next hearing dates, or deadlines for additional filings? I'd like to take that into

consideration and respect your situations now without – and I know, Mr. Mulcahy, you've had health issues now that you're undergoing treatment for and so let me start with you.

Do you know, or have a sense of what's going on?

**MR. MULCAHY**:

Thank you, Your Honor. Unfortunately, I've had -- the kind of cancer that I have is very aggressive, and it's highly dangerous. And we had a surgery that occurred on May 1st, and we're hoping we're able to remove it. What happened is right after the surgery, the wound itself became infected. It aggravated the cancer, which has now spread.

And so I'm going to have to start tomorrow starting with more chemotherapy in the hopes that maybe we can arrest some of the spread here, and just to plainly say, it takes my life. That tends to be what happens with this type of cancer. It's very aggressive and moves very fast.

As of right now, I have to be honest with the Court. I do not know that I could actually do the trial. We would have to seek other trial counsel to come into this. I know that is not what the Court wants to hear, or the other parties that we have been doing this so long.

But unfortunately that is the state of affairs as it is. I apologize to all of the other parties, but this is something I wish I could control more than anybody knows. But it's just doing what it's going to do.

And so we're hopeful that starting chemo again will be able to arrest this, but in the way I'm looking at it, it's probably not something I can really do, and it's unfair to the position of Recovery Law Group or to Bedford to say that I can do a trial. I'm not sure that I can, so we're probably going to have to -- not probably. **I'm going to have to look for alternate counsel to take over and to step in.** (emphasis added).

**THE COURT**:

I understand, and I'm really sorry to hear that. Not for myself, obviously, but for you. I'm sorry you're going through this, and we will do our best to accommodate your schedule and treatment.

**MR. MULCAHY**:

I appreciate that, Your Honor.

**THE COURT**:

But it sounds like -- I've honestly never had to confront this issue as a judge, so help me. It sounds like you are going to have to transition.

And so I guess the question I have is: How are you going to do that, and will it be someone in Recovery Law Group, or outside counsel, and when do you think that process -- it sounds like that's a foregone conclusion, regardless of how your health comes out.

We, of course, wish for a speedy recovery. And even if it is a complete and speedy recovery, as we all hope, it sounds like you're saying there is going to be a transition. How do you view it?

**MR. MULCAHY**:

I appreciate that, Your Honor, that you understand.

First of all, I have to say Desirae Bedford has left Recovery Law Group, so she's no longer even employed by the company. Not that she would take over as trial counsel. I don't think she's qualified nor prepared to do that.

As I sit with the general counsel and also the lead litigation attorney within Recovery Law Group, this has been going on, as everybody knows, for more than five years. The issues are complex.

I do not feel there's anybody within Recovery Law Group who is a litigator able to handle this.

I do have some contacts within the Eastern District of Michigan, separate trial counsel. I don't know how long it would take to get them up to speed.

But to answer your question, it would be from outside of the firm. It would be separate counsel would be representing it.

And to be fair, you know, I would ask that they would have to be given some leeway to get caught up to speed as to everything that's going on here.

Of course, for whatever reason that the compromise doesn't happen in the first case, in the main case, that would take even longer, I would think.

**THE COURT**:

All right. Thank you. I appreciate that.

(Dkt. No. 190, Transcript of May 14, 2025 Final Pre-Trial Conference, page 8, line 10 through p. 11, line 14).

[ii] The Order stated:

IT IS HEREBY ORDERED that on or before June 13, 2025, the Adversary Proceeding Plaintiffs shall file a motion for partial summary judgment and supporting brief addressing the sole issue of what effect the Court's granting of partial summary judgment on the legal malpractice claim in Count 1 of Plaintiffs' Complaint has on Count 2, alleged violation of 11 USC Sec 526.

IT IS HEREBY ORDERED that Defendants shall have until July 11, 2025, to file a response and Plaintiffs shall have until July 18, 2025, to file an optional reply.

**IT IS HEREBY ORDERED that contemporaneous with Defendants' filing they shall advise the Court whether they will be retaining successor counsel as a result of current counsel's illness.**

(emphasis added).

iii   The relevant exchange follows:

> **COURT**: In my order regarding 526, Mr. Mulcahy was supposed to file by July 18th, a statement as to who successor counsel, if there was going to be successor counsel, and who. Are you now successor counsel, Mr. Lefkowitz?
>
> **LEFKOWITZ**: I am not Judge.  I am here for this particular hearing only . . .
>
> **COURT**: Well, what does it take to get Recovery Law Group to comply with an order?
>
> **LEFKOWITZ:** My understanding of that order was that, in the event there was going to be replacement counsel, that he would inform the Court.  That was Mr. Mulchay's interpretation of it.  At this point in time, he is still able to handle the matters before the Court, other than appear in person before the Court, because of his illness.
>
> **COURT**: The order says: it is hereby ordered that, contemporaneous with defendants filing, in response to the motion we are going to be arguing today, they shall advise the Court whether they will be retaining successor counsel as a result of current counsel's illness, right? They are to advise the Court. One way or the other.  Do you know whether or not Mr. Mulcahy is intending on continuing as counsel.
>
> **LEFKOWITZ**: In this matter yes.  His indication to me was that, if there was an adversary proceeding, if the adversary proceeding continued, then they may hire outside counsel for the adversary proceeding.
>
> **COURT**: That is exactly what he was supposed to tell us on the 18th. And we need to wait now again for him to decide that?  Did he not give you any indication?

24

**LEFKOWITZ**: Any indication as to?

**COURT**: Whether or not there is going to be successor counsel?

**LEFKOWITZ**:  As of right now there is no successor counsel.

**COURT**: Are you planning on filing a notice of appearance on behalf of Recover Law Group in this adversary?

**LEFKOWITZ**: Only a special appearance for this hearing only.

**COURT**: So you are prepared to argue today on this hearing?

**LEFKOWITZ**: Best I can Judge.

**COURT**: And Mr. Mulcahy who is apparently still going to continue as counsel for Recovery Law Group is not here today because of his illness?

**LEFKOWITZ**: That is correct.

**COURT**: Could he have appeared by telephone?

**LEFKOWITZ**: Yes, he in fact indicated to me that if the Court…

**COURT**: Could he have reached out to the Court and said I would like to appear by telephone?

**LEFKOWITZ**: Once again Judge, he indicated to me that he had.

**COURT**: He has not.

(Dkt. No. 200, recording at 1:55 – 4:55 of the August 13, 2025 hearing on Motions for Summary Judgment).